IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DENNIS THORNTON, | CV 25–83–M–DWM |
| Plaintiff, | |
| vs. | OPINION<br>and ORDER |
| FLATHEAD COUNTY, et al., | |
| Defendants. | |

Plaintiff Dennis Thornton, proceeding without counsel, has filed a civil

rights complaint under 42 U.S.C. § 1983, alleging Defendant Flathead County and

Individual Defendants Flathead County Attorney Travis Ahner and Deputy County

Attorneys Ashley Frechette, Michael Noonan, and Angela Rolando (together,

"Defendants") violated his constitutional rights and state law in bringing a criminal

proceeding against him.  (Doc. 12.)  In 2022, Thornton was prosecuted in Flathead

County Justice Court for "criminal trespass to property."  (Doc. 12 at ¶ 13.)

According to Thornton, he was the lawful owner of that property and had been

since 1993.  (*Id.* ¶ 14.)  However, Whitefish Credit Union also claimed ownership

of the property and demanded Thornton be prosecuted. (*Id.* ¶ 18.) Thornton

maintains that the Flathead County Sheriff investigated the matter and confirmed

there was no probable cause for criminal charges, (*id.* ¶¶ 15–17), but he was

prosecuted anyway, (*id.* ¶¶ 18–20). The matter was dismissed in Thornton's favor

on June 15, 2024. (*Id.* ¶ 22.) Thornton alleges that Defendants prosecuted him

"despite actual notice of [his] ownership and the Sheriff's findings." (*Id.* ¶ 20.)

Thornton has brought nine causes of action: malicious prosecution (direct

liability), malicious prosecution (supervisory liability), fabrication of evidence,

unreasonable seizure of property, civil conspiracy under 42 U.S.C. § 1985(3), false

official certifications, *Monell*[1] liability, negligence, and abuse of process. (*See*

*generally id.*) He seeks $50 million in compensatory damages and additional

punitive damages. (*Id.* ¶ 63.) Defendants seek to dismiss Thornton's Second

Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

(Doc. 32.) Thornton opposes. (Doc. 34.) For the reasons stated below,

Defendants' motion is granted as to all but two of Thornton's claims: his

Fourteenth Amendment fabrication of evidence claim and his state law negligence

claim premised on the same conduct. Ironically, Thornton's filings show that he

has used artificial intelligence (AI) to generate false and misleading case citations;

the remedy for that misconduct is outlined below.

---

[1] *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure
12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
"A claim has facial plausibility when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged." *Id.* Dismissal is appropriate "where there is no cognizable
legal theory or an absence of sufficient facts alleged to support a cognizable legal
theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017)
(internal quotation marks omitted). Pro se complaints are construed liberally,
*Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), and a court should generally
permit pro se litigants an opportunity to amend their complaint, *see United States
v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) ("[D]ismissal without
leave to amend is improper unless it is clear, upon *de novo* review, that the
complaint could not be saved by any amendment." (internal quotation marks
omitted)). "Courts are not required to grant leave to amend if a complaint lacks
merit entirely," *Lopez v. Smith*, 203 F.3d 1122 , 1129 (9th Cir. 2000), or if there
has been a "repeated failure to cure deficiencies by previous amendment,"
*Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

ANALYSIS

Defendants argue that Thornton fails to state a claim upon which relief can be granted because the Individual Defendants are entitled to prosecutorial immunity and Thornton has failed to plausibly allege a *Monell* claim against Flathead County. (*See* Doc. 33.) Defendants further argue that Thornton's claims are also flawed on the merits. (*See* Docs. 33, 35.) These arguments are fatal to all but two of Thornton's claims.[2] Thornton's Fourteenth Amendment fabrication of evidence claim and his state law negligence claim based on the same conduct are permitted to proceed. Thornton's other claims are dismissed with prejudice.

## I.    Prosecutorial Immunity

"[A] prosecutor enjoys absolute immunity from [§] 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976); *see also id.* at 430–31. This is so even if the prosecutor has violated a plaintiff's constitutional rights or acts with malicious intent. *Broam v. Bogan*, 320 F.3d 1023, 1028–29 (9th Cir. 2003); *Genzler v. Longanbach*, 410 F.3d 630, 637 (9th Cir. 2005). Courts use a "functional approach" to "decide

---

[2] Defendants' initial motion was premised primarily on prosecutorial immunity and the absence of a viable *Monell* claim. (*See* Doc. 33.) And while that motion addressed a few potential merits issues related to Thornton's individual claims, (*see id.* at 15–20), Defendants expanded the grounds for those arguments in their reply, (*see* Doc. 35). Although Thornton's request to file a sur-reply was denied, (Docs. 36, 37), his putative filing was considered in resolving the present motion.

whether absolute immunity attaches to a particular kind of prosecutorial activity." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009); *see Burns v. Reed*, 500 U.S. 478, 486 (1991). The focus is therefore on "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988). "To qualify as advocacy, an act must be 'intimately associated with the judicial phase of the criminal process.'" *Genzler*, 410 F.3d at 637 (quoting *Imbler*, 424 U.S. at 430). Consistently, such immunity has been found "when a prosecutor prepares to initiate a judicial proceeding or appears in court to present evidence in support of a search warrant application." *Van de Kamp*, 555 U.S. at 343 (internal citations omitted). However, "[p]rosecutors are entitled to qualified immunity, rather than absolute immunity, when they perform administrative functions, or 'investigative functions normally performed by a detective or police officer.'" *Genzler*, 410 F.3d at 636 (quoting *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997)). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns*, 500 U.S. at 486. "[T]he Supreme Court has 'been quite sparing in its recognition of absolute immunity, and has refused to extend it any further than its justification would warrant.'" *Genzler*, 410 F.3d at 636–37 (quoting *Burns*, 500 U.S. at 487).

Here, Thornton has alleged that the Individual Defendants pursued criminal charges against him without probable cause and executed and relied on false

documentation in doing so. At this stage of the proceeding, Individual Defendants have succeeded in showing that most of this conduct is protected by absolute immunity. "The analysis of whether prosecutorial acts constitute advocacy or police-type investigation work is complicated by the fact that the Supreme Court has resisted any attempt to draw a bright-line between the two." *Genzler*, 410 F.3d at 637. "The question is whether a prosecutor's investigation is of the type normally done by police, in which case prosecutors enjoy only qualified immunity, or whether an investigation is bound up with the judicial process, thus affording prosecutors the heightened protection of absolute immunity." *Id.* The specific allegations against the Individual Defendants are assessed under this framework.

### A.    Defendant Ahner

Thornton alleges that Defendant Ahner, the County Attorney for Flathead County, (Doc. 12 at ¶ 8), "[p]ersonally initiated charges" against him "without probable cause," (*id.* ¶ 24), "[a]uthorized use of false ownership claims in charging documents," (*id.* ¶ 35), and "directed prosecution knowing no probable cause existed," (*id.* ¶ 46). These allegations are part of Thornton's claims for malicious prosecution, fabrication of evidence, and civil conspiracy. The Supreme Court has long recognized that the prosecutor's initiation of a criminal case is "intimately associated with the judicial phase of the criminal process" and is therefore a "function[] to which the reasons for absolute immunity apply with full force."

6

*Imbler*, 424 U.S. at 430. That is the case even if the prosecutor brings those charges in the absence of probable cause. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) ("[A] prosecutor would be entitled to absolute immunity for the malicious prosecution of someone whom he lacked probable cause to indict."). This immunity then flows to Thornton's claims attendant to the charging decision, such as his unlawful seizure claim, as he alleges no independent prosecutorial misconduct associated with those claims.

However, Thornton's claims regarding the disregard for the Sheriff's findings and the fabrication of evidence pose a closer question. In the immunity context, there is an important distinction between "[f]ormulating factual criteria sufficient to satisfy probable cause from the investigative materials" at issue and "personally investigating" the case or attesting to or "exercising judgment going to the truth or falsity of the evidence." *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021) (internal quotation marks omitted). Immunity attaches only in the first instance. *See Imbler*, 424 U.S. at 431 n.33 (recognizing "that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom"); *Broam*, 320 F.3d at 1029 ("In the course of preparing for the initiation of the criminal process and for trial, a prosecutor may be required to obtain, review, and evaluate evidence." (internal quotation marks omitted)).

The Second Amended Complaint does not make clear whether Defendant
Ahner allegedly fabricated documentation or merely relied on such documentation
in charging Thornton.  Thornton alleges that Defendant Ahner initiated the charges
against him by "relying on false statements from Sean Frampton and Commander
Buls," (*id.* ¶ 24), and merely "[a]uthorized use of false ownership claims in
charging documents," (*Id.* ¶ 35).  In that instance, Defendant Ahner's
characterization of those factual statements and his decision to include certain facts
in a charging document falls within the category of a "traditional function[] of an
advocate."  *See Kalina*, 522 U.S. at 130–31 (describing "drafting . . . [a]
certification," "determin[ing] that the evidence was sufficiently strong to justify a
probable-cause finding," and "present[ing] . . . the information and the motion to
the court" as "the work of an advocate . . . integral to the initiation of the
prosecution").  Indeed, "acts undertaken by a prosecutor in preparing for the
initiation of judicial proceedings or for trial, and which occur in the course of his
role as an advocate for the State, are entitled to the protections of absolute
immunity.  Those acts must include the professional evaluation of the evidence
assembled by the police and appropriate preparation for its presentation at
trial . . . ."  *Buckley*, 509 U.S. at 273.  Thus, to the extent Thornton claims that
Defendant Ahner merely relied on false information or documentation in charging
him, that claim is foreclosed by absolute immunity.

But Thornton also alleges that the Individual Defendants "created or approved false documents" "under [Defendant] Ahner's direct supervision and instruction," (Doc. 12 at ¶ 21), and that Defendants Ahner, Frechette, and Noonan "knowingly executed and used false property ownership certifications to support the prosecution," (*id.* ¶ 49). Considered together, these allegations raise a specter of "investigative" conduct prior to and independent of the charging decision and subsequent prosecution. *Buckley*, 509 U.S. at 273–74. Read as a whole, the Second Amended Complaint could be liberally construed to allege that Defendant Ahner ignored the Sheriff's findings and then brought charges based on an independent investigation and falsified evidence. Such conduct is not protected by absolute immunity. *See Milstein v. Cooley*, 257 F.3d 1004, 1011 (9th Cir. 2001) (explaining that because it is more akin to police work than advocacy, fabricating evidence by knowingly obtaining false statements prior to charging a defendant is not protected by absolute immunity); *Genzler*, 410 F.3d at 641 (explaining that "the process of acquiring or manufacturing evidence during [the] performance of policy-type investigative work" is not protected by absolute immunity).

Liberally construing the facts alleged in the Second Amended Complaint as true, Defendant Ahner may have been engaged in police-type investigative work, not advocacy, when he marshaled evidence against Thornton. At this stage of the proceedings, it is not clear that Defendant Ahner is immune for that conduct.

### B.    Defendant Frechette

Thornton alleges that "Defendant Frechette [d]rafted and/or signed the probable cause affidavit omitting proof of [Thornton]'s ownership and the Sheriff's findings," (*id.* ¶ 25), "[o]mitted exculpatory facts from affidavits and court filings," (*id.* ¶ 36), and "[f]iled an affidavit omitting exculpatory evidence," (*id.* ¶ 46). As discussed above, a prosecutor is immune for actions taken in "preparation" of "the initiation of the criminal process." *Imbler*, 424 U.S. at 431 n.33. Additionally, "[a] prosecutor is absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges," *Broam*, 320 F.3d at 1029, and for the "decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction," *id.* at 1030 (collecting cases). Thus, Defendant Frechette is immune from liability for the specific conduct alleged above. Nevertheless, Thornton's general allegations that the Individual Defendants, including Defendant Frechette, "created or approved false documents," (Doc. 12 at ¶ 21), and "knowingly executed and used false property ownership certifications to support the prosecution," (*id.* ¶ 49), prevents a finding of immunity as to conduct that occurred prior to the filing of charges. Once again, factually it is unclear at this pleadings stage whether Defendant Frechette engaged in police-type investigative activity prior to the leveling of charges.

### C.    Defendant Noonan

Thornton alleges that Defendant Noonan "[r]eviewed exculpatory records and the Sheriff's report [d]espite not having a signed complaint but took no action to halt prosecution," (*id.* ¶ 26), "[a]pproved filings despite knowledge they contained fabricated information," (*id.* ¶ 37), and "participated in malicious prosecution despite contrary evidence," (*id.* ¶ 46).  As discussed above, prosecutorial immunity extends the "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial," *Buckley*, 509 U.S. at 273, as well as to the discretion to not disclose exculpatory records and to maintain a prosecution despite exculpatory evidence, *see Broam*, 320 F.3d at 1029–30.  Thus, Defendant Noonan is immune from liability for the conduct outlined above.  But, akin to Defendants Ahner and Frechette, Thornton's bare general allegations that the Individual Defendants, including Defendant Noonan, "created or approved false documents," (Doc. 12 at ¶ 21), and "knowingly executed and used false property ownership certifications to support the prosecution," (*id.* ¶ 49), prevents a preliminary finding of immunity as to potential investigative activities.

### D.    Defendant Rolando

Thornton alleges that Defendant Rolando dismissed the charges against Thornton following a two-day investigation, (*id.* ¶ 27), and "[d]id not fabricate evidence or permit false certifications," (*id.* ¶ 38), but "participated in malicious

prosecution despite contrary evidence," (*id.* ¶ 46). The third allegation falls squarely within protected advocacy activity for which Defendant Rolando is immune, and the second allegation explicitly states that Defendant Rolando did not actually engage in the misconduct alleged. And while the allegation of investigative action likely falls outside the scope of absolute prosecutorial immunity, *see Genzler*, 410 F.3d at 639, there is no harm associated with it. To the contrary, Thornton alleges that Defendant Rolando's investigation led to the dismissal of the charges against him, (Doc. 12 at ¶ 27), and does not allege that Defendant Rolando "created or approved false documents," (*id.* ¶ 21). Accordingly, Defendant Rolando is dismissed from this action entirely.

## E.    Conclusion

Based on the foregoing, Defendants have shown that most of the alleged misconduct falls within the protections of absolute immunity. More specifically, the Individual Defendants' filing of criminal charges, failure to disclose exculpatory evidence related to those charges, and maintenance of the prosecution in the absence of probable cause qualifies as advocacy and is therefore protected by absolute immunity. However, the Second Amended Complaint leaves open the possibility that Defendants Ahner, Frechette, and Noonan engaged in police-like investigative activity or the fabrication of evidence. Absolute immunity does not extend to such conduct; but it may be insulated from liability by qualified

immunity or a more complete record.

Ultimately, of Thornton's federal claims against the Individual Defendants, only his alleged Fourteenth Amendment fabrication of evidence claim (Count III) and his alleged false official certifications claim (Count VI) survive the prosecutorial immunity analysis. And because immunity makes amendment of the dismissed claims futile, that dismissal is with prejudice.

## II.  Federal Claims

Thornton has brought nine causes of action against Defendants, including seven federal claims and two state law claims. Most of his federal claims are barred by prosecutorial immunity as discussed above. Those claims include malicious prosecution (Counts I and II), Fourth Amendment seizure (Count IV), and civil conspiracy (Count V).[3] His claim for false official certifications under 18 U.S.C. § 1018 (Count VI) and his *Monell* claim against the County (Count VII) fail on the merits. As a result, of Thornton's federal claims, only his Fourteenth Amendment fabrication of evidence claim (Count III) survives the present motion.

---

[3] These claims would also be subject to dismissal on the merits. Thornton has not alleged that he was seized, foreclosing his Fourth Amendment malicious prosecution claim under § 1983. *See Chiaverini v. City of Napolean, Ohio*, 602 U.S. 556, 558 (2024). Nor has he shown the government meaningfully interfered with his possessory interest in the real property at issue. *See- -Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992). Finally, Thornton has alleged no racial or otherwise class-based invidious discriminatory animus behind Defendants' conduct. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

###### A.    Fabrication Claim

"The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official." *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017). "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Id.* at 798. "To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the proximate cause or legal cause of the injury, meaning that the injury is of a type that a reasonable person would likely see as a result of the conduct in question." *Id.* (internal quotation marks omitted). Defendants argue that Thornton has failed to state a viable fabrication claim because "damage to reputation, standing alone, cannot state a claim for relief under § 1983." (Doc. 35 at 7.) Defendants miss the point. Damage to reputation aside, under § 1983, a "plaintiff need not be convicted on the basis of the fabricated evidence to have suffered a deprivation of liberty—being criminally charged is enough." *Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018). "[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false

evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001).

Defendants further argue that Thornton fails to allege facts showing that two of the Individual Defendants, Noonan and Rolando, fabricated any evidence. As discussed above, Defendants are correct regarding Defendant Rolando. As it relates to Defendant Noonan, however, Thornton specifically alleges that "Noonan . . . , under Ahner's direct supervision and instruction, created or approved false documents." (Doc. 12 at ¶ 21.)

Based on the foregoing, Defendants' motion to dismiss is denied as to Thornton's fabrication of evidence claim against Individual Defendants Ahner, Frechette, and Noonan.

## B.    False Certification – 18 U.S.C. § 1018

Thornton alleges that "Defendants knowingly executed and used false property ownership certifications to support the prosecution" in violation of 18 U.S.C. § 1018, which criminalizes false official certificates or writings. (Doc. 12 at ¶ 49.) Criminal statutes rarely create private causes of action. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone."). There is no statutory basis for inferring that a civil cause of action exists for Defendants' alleged violation of § 1018. *See Gonzaga Univ. v.*

*Doe*, 536 U.S. 273, 285 (2002) (reaffirming that § 1983 provides a mechanism for enforcing individual rights secured by the constitution or laws of the United States). This claim is dismissed without leave to amend.

### C.    *Monell* Claim

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 659, 694 (1978)). The Ninth Circuit recognizes four situations when local government conduct may be considered a policy: "(1) an official policy; (2) a pervasive custom or practice; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). A local government "may not, however, be sued under a *respondeat superior* theory." *Id.* And the "official policy must be the moving force of the constitutional violation." *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (internal quotation marks omitted).

Here, Thornton alleges that "Flathead County had policies/customs that allowed prosecutions without probable cause and with disregard for exculpatory law enforcement findings," (Doc. 12 at ¶ 52), and that "[s]uch policies/customs were the moving force behind the violations," (*id.* ¶ 53). Defendants persuasively

argue that this claim is woefully inadequate.  At the pleadings stage, a plaintiff's

*Monell* claim "may not simply recite the elements of a cause of action, but must

contain sufficient allegations of underlying facts" to provide the opposing party

with fair notice to defend itself.  *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d

631, 637 (9th Cir. 2012) (internal quotation marks omitted).  Thornton's

conclusory allegations fall far short of that requirement.  As a result, dismissal is

appropriate.  The remaining discussion therefore speaks to why Thornton will not

be given leave to amend.

 The Second Amended Complaint does not identify by which means

Thornton believes his prosecution amounts to a policy, custom, or practice.

However, in his briefing, Thornton appears to argue that the misconduct was by a

final policy-making official and that his mere filing of such charges made it policy

within Flathead County.  Neither argument states a plausible claim for *Monell*

liability.  First, Thornton argues that Defendant Ahner, as County Attorney, was a

final policy maker that "personally authorized, directed, and ratified the challenged

conduct."  (Doc. 34 at 10.)  "To hold a local government liable for an official's

conduct [under § 1983], a plaintiff must first establish that the official (1) had final

policymaking authority concerning the action alleged to have caused the particular

constitutional or statutory violation at issue and (2) was the policymaker for the

local governing body for the purposes of the particular act."  *Weiner v. San Diego*

*Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) (internal quotation marks omitted). "[W]hether a particular official has final policy-making authority is a question of state law." *Jett v. Dallas Independ. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotation marks and emphasis omitted).

Although the Montana Attorney General has the obligation "to exercise supervisory powers over county attorneys in all matters pertaining to the duties of their offices," Mont. Code Ann. § 2–15–501(5), Montana law vests county attorneys with broad discretion to determine whether to prosecute an offender and/or determine what offense to charge, *see* Mont. Code Ann. § 7–4–2716(1); *State v. Meeks*, 176 P.3d 1073, 1075 (Mont. 2008). Defendants do not present any legal authority for the proposition that Defendant Ahner, as County Attorney, did not have final policymaking authority for his conduct as the prosecuting attorney in this case. *Cf.* Mont. Code Ann. § 7–4–2716(2) (explaining that when ordered by the attorney general, county attorneys must "promptly institute and diligently prosecute . . . in the name of the state of Montana any criminal . . . proceeding.").

A more nuanced question, however, is whether Defendant Ahner was acting as a policymaker for the state or the county in this context. This inquiry is dispositive because "if the relevant officials were working on behalf of the State, then any practice or custom was a *State* practice or custom, not a *municipal*

18

practice or custom." *Taylor v. Cnty. of Pima*, 913 F.3d 930, 937 (9th Cir. 2019)

(Graber, J., concurring) (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781 (1997)).

The determination of whether an official is a state or local policymaker "is made

on a function-by-function approach by analyzing under state law the organizational

structure and control over the [relevant official]." *Goldstein v. City of Long Beach*,

715 F.3d 750, 753 (9th Cir. 2013). An officer may act for the state in one capacity

and for the county in another. *Weiner*, 210 F.3d at 1031 ("Although a California

district attorney is a state officer when deciding whether to prosecute an individual,

this is not to say that district attorneys in California are always state officers for all

purposes."). Under Montana law, while county attorneys are listed as "county

officers," Mont. Code Ann. § 7–4–2203(1)(a), their prosecutorial actions are taken

on behalf of the state. Indeed, county attorneys are obligated to "attend the district

court and conduct, *on behalf of the state*, all prosecutions for public offenses and

represent the state in all matters and proceedings to which it is a party or in which

it may be beneficially interested[.]" Mont. Code Ann. § 7–4–2716(1) (emphasis

added). This is distinguishable from other actions taken by Montana county

attorneys, such as "actions to recover money," which may be taken on behalf of

"the state *or* the county." Mont. Code Ann. § 7–4–2713 (emphasis added). This

can also be distinguished from other, non-prosecutorial roles taken by Montana

county attorneys, such as acting as "the legal adviser [for] the board of county

commissioners" or other local entities.  *See* Mont. Code Ann. § 7–4–2711.

Ultimately, in the present case, Defendant Ahner was acting as a state official in

prosecuting Thornton.  His § 1983 claim against the County based on Defendant

Ahner's policymaking authority therefore fails.  "The County was not the actor; the

state was." *Weiner*, 210 F.3d at 1031.

As to Thornton's second point, the mere fact that his prosecution was

allowed to proceed does not make it policy.  The very foundation of *Monell* is that

a plaintiff cannot establish municipal policy by fiat.  "Absent a formal

governmental policy, [a plaintiff] must show a longstanding practice or custom

which constitutes the standard operating procedure of the local government entity."

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotation marks

omitted).  "The custom must be so 'persistent and widespread' that it constitutes a

'permanent and well settled city policy.'"  *Id.* (quoting *Monell*, 436 U.S. at 691).

"[G]enerally, a single instance of unlawful conduct is insufficient to state a claim

for municipal liability under section [§] 1983." *Benavidez v. Cnty. of San Diego*,

993 F.3d 1134, 1154 (9th Cir. 2021).  "Single acts may trigger municipal liability

where fault and causation were clearly traceable to a municipality's legislative

body or some other authorized decisionmaker." *Id.* (internal quotation marks

omitted).  No such facts exist here.

Based on the foregoing, Defendants' motion to dismiss is granted as to Thornton's *Monell* claim.

## III.    State Law Claims

Having determined that one § 1983 claim survives at this stage (fabrication of evidence), it is appropriate to consider Thornton's pendant state law claims. With limited exception, these claims are dismissed with prejudice.

### A.    Negligence (Count 8)

Thornton alleges that the Individual Defendants were negligent by:

a. Failing to properly examine public records evidencing Plaintiff's ownership and lawful possession of the property;

b. Authorizing and continuing criminal prosecution against Plaintiff without probable cause, despite being presented with exculpatory findings by law enforcement;

c. Preparing, approving, or promulgating false or misleading documents, and omitting exculpatory information in official proceedings;

d. Failing to comply with clear professional standards and duties imposed by law for government officials and law enforcement; [and]

e. Supervising or ratifying actions that foreseeably resulted in injury to Plaintiff through neglect of established procedures and disregard for Plaintiff's rights.

(Doc. 12 at ¶ 56.)  As was the case with Thornton's federal claims, Individual Defendants are absolutely immune from liability for most of this alleged misconduct.  Montana, which also applies a functional test in the prosecutorial

21

immunity context, *see Renenger v. State*, 426 P.3d 559, 564 (Mont. 2018),

recognizes that "[f]iling and maintaining criminal charges are among the many

duties of a prosecutor and when a prosecutor acts within the scope of these duties,

that prosecutor is absolutely immune from civil liability, regardless of negligence

or lack of probable cause," *Rosenthal v. Cnty. of Madison*, 170 P.3d 493, 499

(Mont. 2007).  That is the case even if the Individual Defendants had "improper

motives," *id.*, or the prosecutor omitted exculpatory information from the charging

documents, *see Renenger*, 426 P.3d at 564 ("[A] county attorney's selection of

particular facts to include in a petition . . . [is a] traditional prosecutorial function[]

protected by absolute immunity.").  However, the Montana Supreme Court has

also distinguished between evaluating evidence assembled by law enforcement,

which would entitle the prosecutor to absolute immunity, *see id.*, and engaging in

investigative or administrative activities, which would entitle the prosecutor to

only qualified immunity, *Reinlasoder v. City of Billings*, 455 P.3d 477, at *1

(Mont. 2020).  Consistently, only Thornton's negligence allegation premised on

the preparation of false documents, (*see* Doc. 12 at ¶ 56(d)), can proceed at this

stage.  The remainder of this claim is dismissed without leave to amend.

## B.    Abuse of Process

Thornton alleges that the Individual Defendants abused process by

prosecuting him with criminal trespass to harass, coerce, and intimidate him and to

interfere with his "lawful property rights." (Doc. 12 at ¶¶ 60, 66.) Because this claim is based entirely on Thornton's criminal charges and prosecution, it is barred by prosecutorial immunity. *See Rupnow v. Mont. State Auditor & Comm'r of Ins.*, 542 P.3d 384, 391 (Mont. 2024) ("His complaint seeks civil liability from the State and its agents for traditional prosecutorial functions—bringing and pursuing criminal charges.")

## IV.    False or Misleading Case Citations

In their reply, Defendants highlight Thornton's citation to a nonexistent case: *Younger v. City of Seattle*, 70 F.4th 1099, 1107 (9th Cir. 2023). (*See* Doc. 35 at 9 (referencing Doc. 34 at 9).) As explained by Defendants, the citation "70 F.4th 1099" leads to an unrelated Eighth Circuit case, and there does not appear to be a Ninth Circuit case with that title. While Thornton does not respond directly to this imputation, he subsequently filed a "Verification of Case Citations" that lists several cases with a note that they have been "verified as legit." (Doc. 36-2.) This verification corresponds to his sur-reply, however, and does not address *Younger*.

Attorneys that have submitted briefs containing AI-generated or fabricated case citations may be found in violation of Rule 11(b) of the Federal Rules of Civil Procedure, which requires that legal contentions be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11(b); *see Mavy v. Comm'n of Soc. Security Admin.*, 2025 WL

2355222, at *7 (D. Ariz. Aug. 14, 2025).  Under Rule 11, a signature on a filing "certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Bus. Guides, Inc. v. Chromatic Commc'ns. Enters., Inc.*, 498 U.S. 533, 542 (1991). Consistently, "any party who signs a pleading, motion, or a paper" has "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Id.* at 551.  "[T]he applicable standard is one of reasonableness under the circumstances." *Id.*  If Rule 11 has been violated, sanctions may be imposed.  Fed. R. Civ. P. 11(c).  "Although Rule 11 applies to *pro se* plaintiffs, the court must take into account a plaintiff's *pro se* status when it determines whether the filing was reasonable." *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) (internal quotation marks omitted).  Thornton is no ordinary pro se litigant.  He has vast experience with pro se work and has been designated a vexatious litigant by the United States Bankruptcy Court and the state courts of Montana.

Here, while Defendants have identified only one false case citation used by Thornton, *Younger v. City of Seattle*, his briefing contains several more examples. Although the *Younger* citation is concerning, the underlying legal proposition—the initiation of criminal process without probable cause can result in a Fourth Amendment violation—is sound.  *See Chiaverini v. City of Napolean, Ohio*, 602

24

U.S. 556, 563 (2024) ("[I]f an invalid charge . . . causes a detention to either start or to continue, then the Fourth Amendment is violated."). However, Thornton cites at least two more nonexistent cases in his sur-reply. (*See* Doc. 36-1 at 4 (referencing *United States v. Craner*, 652 F. App'x 560, 562 (9th Cir. 2016),[4] and *United States v. Smith*, 629 F.3d 1082, 1084 (9th Cir. 2011)).) Thornton cites these cases to support the proposition that a citation mandating a court appearance by itself constitutes a significant restraint on liberty sufficient to qualify as a "seizure" under the Fourth Amendment. (*See id.*) This legal proposition is not sound. *See Karam v. City of Burbank*, 352 F.3d 1188, 1193–94 (9th Cir. 2003) (explicitly rejecting the argument that a compelled court appearance qualifies as a Fourth Amendment "seizure"). And while a subsequently cited case, *Odd v. Malone*, 538 F.3d 202 (3d Cir. 2008), exists, it does not contain the language quoted by Thornton and it was not authored by the judge referenced. (*See* Doc. 36-1 at 5.) As the Court performed only a limited survey of his citations, there may be more false cases or fabricated citations in Thornton's briefing.

At this early stage in the litigation, a remedy short of Rule 11 sanctions is appropriate. To be sure, the Court has serious concerns regarding Thornton's

---

[4] Thornton may have meant to refer to *United States v. Craner*, 652 F.2d 23 (9th Cir. 1981). (*See* Doc. 36-2 at 1 (listing this citation in his "Verification of Case Citations").) However, that case discusses the right to a jury in "serious" versus "petty" crimes; it does not address the Fourth Amendment.

conduct as this is neither his first federal court case nor the first time he has

falsified authority. To ensure that the information provided to the Court is

authentic and accurate, Thornton is required to conventionally file a hard copy of

the complete document for every source of authority cited in any of his filings,

including all cases and statutes. If this remedy is insufficient to prevent further

misconduct, a hearing will be set and Thornton will be given the opportunity to

respond before sanctions are levied.

CONCLUSION

Based on the foregoing, IT IS ORDERED that:

(1) Defendants' motion to dismiss, (Doc. 32), is GRANTED in PART and

DENIED in PART. The motion is DENIED as to Thornton's Fourteenth

Amendment fabrication of evidence claim (Count III) and his state law negligence

claim (Count VIII) premised on that same conduct insofar as those claims are

brought against Individual Defendants Ahner, Frechette, and Noonan. The

motion is GRANTED in all other respects. Defendant Rolando, Flathead County

and all Thornton's other claims (Counts I, II, IV, V, VI, VII, IX, and part of VIII)

are dismissed with prejudice. A trial schedule will be set by separate order.

(2) On or before February 6, 2026, Thornton must conventionally file a hard

copy of the complete source documents for every legal citation in Docs. 34 and 36-

1. The failure to do so, or an incomplete response, may result in Rule 11

26

proceedings, as discussed above.  Furthermore, for all future filings, Thornton must conventionally file a hard copy of the complete source documents for all cited authority.  The failure to do so may result in his filing being struck from the record with no further notice to him.

DATED this 23 day of January, 2026.

Donald W. Molloy, District Judge
United States District Court