Molenda L. McCarty
Dylan L. Gallagher
County Litigation Group
2715 Skyway Drive
Helena, MT 59604-6697
Phone (406) 441-5471
mmccarty@mtcounties.org
dgallagher@mtcounties.org
litigation@mtcounties.org

*Counsel for County Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DENNIS THORNTON, <br><br> Plaintiff, <br><br> v. <br><br> TRAVIS AHNER, in his official and individual capacities; ASHLEY FRECHETTE, in her official and individual capacities; MICHAEL NOONAN in his official and individual capacities; and JOHN and JANE DOES 1-10, <br><br> Defendants. | Cause No.: CV-25-83-M-DWM <br><br><br> STATEMENT OF UNDISPUTED FACTS |

Defendants, Travis Ahner, Ashley Frechette, and Michael Noonan, through

counsel of record, file this Statement of Undisputed Facts in support of their

Motion for Summary Judgment.

1.    At all times relevant, Defendant Travis Ahner was the Flathead County Attorney. (Doc. 12 at 2.)

2.    At all times relevant, Defendants Ashley Frechette and Michael Noonan were Deputy County Attorneys for Flathead County. (Doc. 12 at 2; Affidavit of Michael Noonan ¶ 1 (Apr. 24, 2026) (Ex. A).)

3.    On January 18, 2022, Frechette filed a criminal complaint against Plaintiff for trespass, a misdemeanor (Complaint, Nov. 29, 2021, filed January 18, 2022 (Ex. B)).

4.    Plaintiff has identified several disagreements with assertions of fact and law made by Defendants in the course of prosecuting the criminal trespass charge. (Pl's Responses to Defendants' First Set of Interrogatories, Requests for Production and Requests for Admission at 1-9, 14-15; 17-23[1] (Apr. 7, 2026) (Ex. C)).

5.    Plaintiff believes that the criminal trespass charge "constitutes a fabrication" because it relies on "the false premise" that Whitefish Credit Union is the owner of the property; there is no signed criminal

---

[1] These pages contain Plaintiff's response to Defendants' interrogatories asking him to identify fabricated records; to identify persons who fabricated, directed the fabrication of, assisted in fabricating, or knew of the fabrication of those records; and to describe each act of alleged fabrication. However, Plaintiff asserts issues with Defendant's conduct throughout his 97-page responses. So as not to misrepresent Plaintiff's positions in this matter, Defendants are providing the entire responses.

*Statement of Undisputed Facts*                                                    2

trespass complaint in the record; the charges were based "solely on a phone call from Sean Frampton" who had an interest in the outcome of the criminal matter; Defendant Ahner refused to conduct or permit a complete investigation before filing charges; and Ahner ignored the Flathead County Sheriff's findings that Whitefish Credit Union was not the property owner. (Ex. C at 8.)

6. Between May 17, 2022, and June 6, 2022, Defendant Noonan or someone acting under his direction engaged in a phone conversation with Sean Frampton to discuss the impact that a recorded "Satisfaction of Mortgage" may have on the criminal prosecution. (Ex. A at 3; Ex. C at 19.)

7. Following this phone call, Frampton, at the direction of Whitefish Credit Union, drafted a Corrected Release of Mortgage (Corrected Release). (Ex. C at 3-4.)

8. On June 6, 2022, James Kenyon, of Whitefish Credit Union, signed the Corrected Release, and it was recorded with the Flathead County Clerk and Recorder (Ex. B at 3.)

9. Defendant Noonan did not direct anyone at Whitefish Credit Union to draft or record the Corrected Release, nor did he participate in drafting or recording the Corrected Release. (Ex. A at ¶ 4.)

10. None of the Defendants conducted an investigation prior to or independent of the charging decision and subsequent prosecution. (Defs' Responses to Pl's First Discovery Requests to Def's at 5-6, 35 (March 10, 2026) (Ex. D).)

11. In other words, Defendants did not engage in any police-like investigative activity, nor did they fabricate or falsify evidence in support of the criminal prosecution of Thornton.

12. Plaintiff's contentions rely on the assertion, 'The fabrication at issue is not the creation of a forged physical document, but rather the knowing and deliberate false assertion of material facts – specifically, that [Whitefish Credit Union] held ownership of the subject property – in the course of investigating, charging, and prosecuting Plaintiff. This false narrative was advanced by Travis Ahner, Ashley Frechette, and Michael Noonan of the Flathead County Attorney's Office…" (Ex. C. at 16.)

13. On June 15, 2023, the criminal charge was dismissed without prejudice in the interest of justice. (Ex. D at 34.)

DATED this 27th day of April 2026.

County Litigation Group

*/s/ Dylan L. Gallagher*
Dylan L. Gallagher

*Statement of Undisputed Facts*                                      4

**CERTIFICATE OF SERVICE**

I certify that on the 27th day of April 2026, a true and correct copy of the

foregoing was sent to the Plaintiff by the following means:

David Thornton                                  [X] U.S. Mail, postage prepaid
151 Amatasia Lane                               [  ] Overnight Delivery
Kalispell, MT  59901                            [  ] Hand Delivery
*thorcoinc@outlook.com*                         [X] Email


County Litigation Group

*/s/ Dylan L. Gallagher*
Dylan L. Gallagher

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DENNIS THORNTON,<br><br>Plaintiff,<br><br>v.<br><br>TRAVIS AHNER, in his official and individual capacities; ASHLEY FRECHETTE, in her official and individual capacities; MICHAEL NOONAN in his official and individual capacities; and JOHN and JANE DOES 1-10,<br><br>Defendants. | Cause No.: CV-25-83-M-DWM<br><br><br>AFFIDAVIT OF<br>MICHAEL NOONAN |

I, Michael Noonan, being duly sworn upon my oath, depose and state as follows:

1.     I am currently employed as an Assistant Attorney General for the State of Montana.  At all times relevant to the above matter, I was a Deputy County Attorney for Flathead County.

2.     I am more than eighteen years of age and competent to testify in this matter.

3.     Between May 17, 2022, and June 6, 2022, I may have engaged in a phone conversation with Sean Frampton to discuss the impact that a recorded "Satisfaction of Mortgage" could have on the criminal prosecution.

*Affidavit of Michael Noonan*                                                                 1

**Exhibit A**

4.      I did not direct Sean Frampton or anyone at the Whitefish Credit

Union to draft or record a Corrected Release, nor did I participate in the drafting or

recording the Corrected Release.

5.      I did not engage in any other investigation prior to or independent of

the charging decision and subsequent prosecution of Mr. Thornton.

Further affiant sayeth naught.

DATED this 24th day of _____April_____ 2026.

_____
Michael Noonan


STATE OF MONTANA              )
                             : ss.
County of Flathead            )


This instrument was signed or acknowledged before me on the 24th day of

April_____ 2026, by ___Michael Noonan_____.


_____
(Notary Signature)

KEVIN DURKIN
NOTARY PUBLIC for the
State of Montana
Residing at Kalispell, Montana
My Commission Expires
February 6, 2028

KEVIN DURKIN
NOTARIAL
SEAL
STATE OF MONTANA


*Affidavit of Michael Noonan*                                                    2

F I L E D
01/18/2022
Flathead County
Justice Court

STATE OF MONTANA
By: Charity Townsend
CR-385-2022-0000061
Hummel, Eric

Ashley Frechette, Deputy
OFFICE OF THE COUNTY ATTORNEY
Flathead County, Montana
820 South Main,
Kalispell, MT 59901
        Telephone:  (406) 758-5630
        Attorneys for the State of Montana

IN THE JUSTICE COURT OF FLATHEAD COUNTY, STATE OF MONTANA

| | |
|---|---|
| **STATE OF MONTANA,** | ) Case No.: _____ |
| | ) |
| Plaintiff, | ) |
| | ) **COMPLAINT** |
| vs. | ) |
| | ) |
| **DENNIS THORNTON,** | ) |
| | ) |
| Defendant | ) |

Ashley Frechette is a Deputy County Attorney for Flathead County, Montana.  As such she is empowered to initiate and prosecute persons charged with crimes committed in the State of Montana and to initiate such prosecutions by Complaint filed in Justice Court.

The undersigned states that on or about the date(s) hereinafter set forth, in the County of Flathead, State of Montana, the above named Defendant did commit the offense of **Trespass, a Misdemeanor.** More specifically the charge would allege the following:

The Defendant, DENNIS DANIEL THORNTON, on or about September 29, 2021, in Flathead County, Montana, knowingly entered or remained unlawfully in or upon the premises of another, contrary to the provisions of §45-6-203(1), MCA, and punishable under §45-6-203(2), MCA by a maximum term in the county jail of six (6) months and/or a maximum fine of $500.

As reported by Commander Buls with the Flathead County Sheriffs Office in Flathead County Sheriff's Office report number 2021-35905, the facts establishing probable cause to

PAGE 1 OF 2

**Exhibit B**    FC000002

believe the Defendant had committed the foregoing offense are as follows:

1. On September 29, 2021, law enforcement was notified of a trespass complaint that took place at 890 Boon Rd. in Somers, MT. This property is owned by Whitefish Credit Union (WFCU).
2. WFCU provided law enforcement with a video that depicts DENNIS THORNTON cutting a lock and entering the 890 Bood Rd. Property.
3. Commander Buls personally spoke with THORNTON on August 26, 2021 and advised him he was not authorized to access the 890 property.

Witnesses:
Commander Buls
Sgt. Stahlberg
WFCU
Sean Framption

Any and all witnesses not listed herein will be provided to this Court prior to trial.

All of which is contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the State of Montana.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated this 29th day of November, 2021.

OFFICE OF THE COUNTY ATTORNEY
Flathead County, Montana

By: /s/ Ashley Frechette,
      Deputy

PAGE 2 OF 2

FC000003

## PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA MISSOULA

**Dennis Thornton,** Plaintiff,

v.

**Flathead County, et al.,** Defendants.

Case No.: 9:25-CV-00083

## PLAINTIFF DENNIS THORNTON'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION

Plaintiff Dennis Thornton, appearing pro se, hereby responds to Defendants' First Set of Interrogatories, Requests for Production, and Requests for Admission pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure. These responses are based upon information currently known and available to Plaintiff. Plaintiff reserves the right to supplement these responses as additional information becomes available.

## INTERROGATORY RESPONSES

## INTERROGATORY NO. 1

Identify any record you contend was fabricated in connection with the investigation, charging, or prosecution of you and for each record identify: (a) the record title and/or description; (b) date of the record; (c) purported author and/or creator of the record; (e) the portion(s) of the record you claim are fabricated; and (f) how you determined it was fabricated.

## ANSWER

## FABRICATED RECORD NO. 1



Exhibit C

**FABRICATED RECORD NO. 1**

**Request for Judicial Notice — CR-22-0061**

**(a) Title/Description:** Request for Judicial Notice filed by Michael J. Noonan, Deputy Flathead County Attorney, in the Justice Court of Flathead County, Case No. CR-22-0061, *State of Montana v. Dennis Daniel Thornton*, before the Honorable Eric Hummel.

**(b) Date:** Filed June 22, 2022.

**(c) Purported Author/Creator:** Michael J. Noonan, Deputy Flathead County Attorney.

**(e) Fabricated Portions:**

**False Statement No. 1 — Regarding DV-18-336D:** Noonan stated: *"In DV-18-336(D), summary judgment was granted to WCU and the Defendant lost his claim to the property in this matter. See Exhibit 2."*

This statement is false for the following reasons:

1. Judge Dan Wilson's binding Order (ROA 56, October 4, 2018) expressly found the property was "presently free of the recording of the Non-Merger Warranty Deeds conveying all of Thorco's right, title, and interest in the Property to WCU," confirming the deeds had never been recorded and the property was never legally conveyed to WCU. (Bates DT001018.)
2. The same Order explicitly recognized that the Thorntons/Thorco were "continuing to own the Property." (Bates DT001018.)
3. WCU's own Motion for Summary Judgment stated: "Thorco, Inc. holds title to the property." (Bates DT000944.)
4. WCU's own attorney admitted: "Thorco, who owns the property." (Bates DT000801.)

**False Statement No. 2 — Regarding the Montana Supreme Court Ruling:** Noonan stated: *"Since October 4, 2018, the date of summary judgment in DV-18-336(D), the Defendant has not owned the property involved in this case."*

This statement is false because the Montana Supreme Court ruling Noonan himself attached as Exhibit 3 directly contradicts this claim:

1. ¶8, Page 5: "The original mortgage is securing an unpaid debt and its recording is authorized by law" — confirming WCU holds a mortgage, not ownership. (Bates DT001130.)
2. ¶9, Page 6: "the original mortgage accurately reflected what the Thorntons owed and cannot be considered a cloud on the title" — confirming clear title in Thorco. (Bates DT001131.)
3. ¶10, Page 6: "the original loan amount remained due and owing" — confirming a loan and debt relationship, not an ownership transfer. (Bates DT001131.)

**(f) How Fabrication Was Determined:** The fabrication was determined by comparing Noonan's statements to the following:

1. The complete public court record in DV-18-336D, which was available to Noonan at all times.
2. The Montana Supreme Court ruling Noonan himself attached as Exhibit 3.
3. WCU's own repeated judicial admissions confirming Thorco's ownership.
4. Judge Wilson's binding findings confirming Thorco's continuing ownership.
5. The lawfully recorded Satisfaction of Mortgage, recorded May 17, 2022 — thirty-six days before Noonan's filing — confirming Thorco as Mortgagor/Owner and WCU as Mortgagee/Lender.
6. The Flathead County Clerk and Recorder's confirmation that no Power of Attorney was recorded for Frampton or Kenyon.

## FABRICATED RECORD NO. 2

**Corrected Release of Mortgage**

**(a) Title/Description:** Corrected Release of Mortgage, purporting to cancel and replace the lawfully recorded Satisfaction of Mortgage, Instrument No. 2022-000-17228, recorded in Flathead County.

**(b) Date:** Executed and recorded on or about June 2022.

**(c) Purported Author/Creator:** Sean Frampton (drafter); James Kenyon, WCU CEO (signatory and executing party).

**(e) Fabricated Portions:** The entire document constitutes a fabrication of the public record for the following reasons:

1. The false assertion that "the debt was not paid" is directly contradicted by the original Satisfaction of Mortgage, which expressly states the debt was "fully paid, satisfied, released and discharged." (Bates DT002389.)
2. The false assertion that "WCU was not quitclaiming the property to Thorco" is directly contradicted by the original Satisfaction stating WCU "does hereby release and quitclaim unto the said Mortgagor [Thorco] the premises thereby conveyed and mortgaged." (Bates DT002389.)
3. The false assertion that the mortgage was released only pursuant to the Settlement Agreement is contradicted by the statutory reconveyance process lawfully completed under Montana Code §§ 71-1-307 through 71-1-310.

## (f) How Fabrication Was Determined:

1. **No Legal Authority:** The Flathead County Clerk and Recorder confirmed on September 23, 2024: "The Flathead County Clerk and Recorder's office does not have record of a recorded power of attorney for Sean Frampton to record documents for Whitefish Credit Union." (Bates DT001070.)
2. **Lawful Reconveyance Already Completed:** TFSS followed Montana Code § 71-1-308 exactly. Donna Goodrich issued an order on February 10, 2022, giving WCU ninety days to object. WCU failed to object within the statutory ninety-day period, as confirmed by Shauna Romrell of TFSS. TFSS lawfully executed and recorded the Satisfaction on May 12–17, 2022. Under Montana Code § 71-1-308(5)(c)(ii), the recorded reconveyance is "valid regardless of any deficiency."
3. **Frampton's Own Admission:** In his October 25, 2023 statement to the Office of Disciplinary Counsel, Frampton admitted: "WCU discovered this erroneous filing when I received a call from the county attorney's office about its effect on ownership (vis a vis the criminal trespass charge). Per WCU's instructions, I immediately drafted and provided to WCU to execute and record a correction of the record."
4. **Frampton's ODC Statement, Page 10:** "When Mr. Frampton filed a Mortgage Correction, along with WCU CEO James Kenyon, he created a false entry and false alteration to the Public Record." Bates DT004503

## FABRICATED RECORD NO. 3

**Flathead County Sheriff's Case Report — False Supreme Court Characterization**

**(a) Title/Description:** Flathead County Sheriff's Case Report Summary, ORI Number MT9022200, regarding alleged Criminal Trespass and Criminal Mischief by Dennis Thornton, containing a false characterization of the Montana Supreme Court ruling as provided by Sean Frampton and/or WCU.

**(b) Date:** Report prepared on or about September/October 2021; Print Date: October 26, 2021, 11:48.

**(c) Purported Author/Creator:** Investigating officer, Flathead County Sheriff's Office; false information provided by Sean Frampton and/or WCU.

**(e) Fabricated Portions:**

1. The statement that "The Montana Supreme Court upheld a lower court's ruling that WCU is the rightful owner of the property" is directly contradicted by the actual Montana Supreme Court ruling in DA-18-0595, which confirmed WCU holds only "a mortgage securing an unpaid debt" and that the mortgage "cannot be considered a cloud on the title."
2. The entire premise that Thornton committed Criminal Trespass on property "owned by Whitefish Credit Union" is directly contradicted by seven judicial admissions, binding court findings, and the Montana Supreme Court ruling.
3. The characterization that WCU had authority to place locks on the gate is false; WCU held only a mortgage interest and had no legal authority to restrict the property owner's access to his own property.

**(f) How Fabrication Was Determined:** The false Supreme Court characterization is directly contradicted by the actual ruling in DA-18-0595 (June 27, 2019), which:

1. Confirmed WCU held "a mortgage securing an unpaid debt." (Bates DT001130.)
2. Confirmed the mortgage "cannot be considered a cloud on the title." (Bates DT001131.)
3. Never stated WCU was the "rightful owner" of the property.
4. Confirmed "the original loan amount remained due and owing." (Bates DT001131.)

The false ownership premise is further directly contradicted by:

1. WCU's own attorney's April 6, 2018 email: "Thorco owns the property and WCU holds a mortgage." (Bates DT000900.)

Page **5** of **97**

2. WCU's own Motion for Summary Judgment: "Thorco, Inc. holds title to the property." (Bates DT000944.)
3. Judge Wilson's binding findings: Thorco "continuing to own the Property." (Bates DT001018.)
4. The Satisfaction of Mortgage identifying Thorco as Mortgagor/Owner. (Bates DT002389.)

The false information was provided to law enforcement by Sean Frampton, who called the Sheriff's Office on September 28–29, 2021, to file the trespass complaint. Frampton personally admitted in his October 25, 2023 ODC statement that he coordinated with the County Attorney's Office regarding the criminal case.

## FABRICATED RECORD NO. 4

## WCU's Proof of Claim — U.S. Bankruptcy Court

(a) **Title/Description:** Proof of Claim No. 10, filed April 26, 2018, U.S. Bankruptcy Court, Case No. 17-61219-BPH, signed by Dean A. Stensland on behalf of WCU.

(b) **Date:** April 26, 2018.

(c) **Purported Author/Creator:** Dean A. Stensland, attorney for WCU.

(e) **Fabricated Portions:**

1. Page 2, Section 9 asserts "recorded mortgages" (plural) securing $1,400,000. These recorded mortgages cannot be located in the Flathead County public record.
2. Alliance Title Officer Suzanne Smith Jellison confirmed through email communications that these mortgages could not be found. Bates DT000687-DT000688
3. The original recorded mortgage was $3,360,000 (March 24, 2009) — not $1,400,000 as claimed in bankruptcy court, rendering the claim inconsistent with all other mortgage documentation in the record.

(f) **How Fabrication Was Determined:**

1. Dennis Thornton, as President of Thorco Inc., was unable to locate the claimed recorded mortgages in the Flathead County public records.

2. Alliance Title Officer Suzanne Smith Jellison confirmed through email communications that the mortgages could not be found.

3. Formal demand was made to WCU under Montana Code §§ 32-9-124 and 32-9-169 on September 3, 2021 — Flathead County Sheriff's Incident No. CR#2021-30528. Bates DT0002229- DT0002236

4. WCU failed to produce documentation of the claimed recorded mortgages in response to the statutory demand.

5. WCU's bankruptcy claim of $1,400,000 is inconsistent with all other mortgage documentation in the record.

The following individuals are identified in connection with this fabricated record:

| Person | Position | Role |
| --- | --- | --- |
| Dean A. Stensland | WCU Attorney | Filed Proof of Claim No. 10 in federal bankruptcy court asserting $1,400,000 in recorded mortgages that cannot be located in public records; signed under penalty of perjury. |
| Scott Bolster | WCU Chief Financial Officer | Named in Thorco's demand letter as the WCU officer responsible for producing mortgage documentation; failed to respond to statutory demands. |
| Brian Heino | Flathead County Sheriff | Assigned Incident No. CR#2021-30528 to Thorco's formal report of potential mortgage fraud by WCU; this report was available to the County Attorney's Office. |
| Suzanne Smith Jellison | Alliance Title Officer | Confirmed through email communications that the claimed $1,400,000 recorded mortgages could not be located in the public record. |

## FABRICATED RECORD NO. 5

**Criminal Trespass Charges — CR-22-0061**

**(a) Title/Description:** Criminal Trespass charges filed against Dennis Thornton, Case No. CR-22-0061, Justice Court of Flathead County.

**(b) Date:** On or about late 2021/early 2022.

**(c) Purported Author/Creator:** Travis Ahner, Flathead County Attorney.

**(e) Fabricated/Improper Basis:** The entire basis for the criminal charges constitutes a fabrication because:

1. The charges were predicated on the false premise that WCU owned the property.
2. The Flathead County Sheriff personally determined WCU was not the lawful owner after reviewing Thornton's documents on December 5, 2021.
3. There is no signed criminal trespass complaint in the record.
4. The charges were based solely on a phone call from Sean Frampton — WCU's attorney — who had a direct financial interest in the outcome and who was later found liable for malicious prosecution in Flathead County.
5. Ahner refused to conduct or permit a complete investigation before filing charges.
6. Ahner ignored the Sheriff's explicit finding and recommendation.

**(f) How Fabrication Was Determined:**

1. Sheriff Heino personally determined WCU was not the lawful owner following his review of Thornton's documents on December 5, 2021.
2. Sheriff sought a subpoena for WCU loan files; Frampton obstructed the investigation.
3. Sheriff explicitly told Ahner that no charges should be filed until the investigation was complete — Ahner ignored this direction.
4. No signed criminal complaint exists in the record, as required by Montana law.
5. The charges were based solely on a phone call from Frampton — an attorney representing the party making false ownership claims and who had a direct financial interest in the outcome.
6. The complete court record — comprising seven judicial admissions, two binding orders, and the Montana Supreme Court ruling — all confirmed Thorco's ownership.
7. The charges ultimately collapsed after a two-day investigation by Angela Rolando on June 15, 2023.
8. Defense counsel's May 3, 2023 letter demonstrated the charges were legally deficient on their face using only WCU's own documents.

**FABRICATED RECORD NO. 6**

**Continued Prosecution of CR-22-0061 Following McLean's May 3, 2023 Letter**

**(a) Title/Description:** The continued prosecution of *State v. Dennis Thornton*, Case No. CR-22-0061, after defense counsel's May 3, 2023 letter demonstrated the legal deficiency of all charges on their face.

**(b) Date:** May 3, 2023 through June 15, 2023.

**(c) Purported Author/Creator:** Michael J. Noonan, Flathead County Attorney's Office.

**(e) Fabricated/Improper Conduct:** Even after receiving defense counsel McLean's May 3, 2023 letter — which demonstrated using only WCU's own documents that:

1. WCU held only a mortgage, not ownership of the property;
2. WCU's own Satisfaction of Mortgage confirmed Thorco's ownership;
3. All trespass claims were legally deficient on their face; and
4. Key witness Sean Frampton had been found liable for malicious prosecution —

Noonan did not immediately dismiss the charges. The charges were ultimately dismissed only after Angela Rolando conducted a two-day investigation, confirming that no legal or factual basis for the prosecution had ever existed.

**(f) How Fabrication Was Determined:** McLean's letter established in a single page what Noonan had known — or should have known — for years:

1. WCU's own documents proved Thorco's ownership beyond dispute.
2. The trespass charges were legally deficient on their face.
3. The prosecution was based entirely on a false ownership narrative.
4. The key complaining witness had been found liable for malicious prosecution.

Angela Rolando's two-day investigation and the resulting dismissal of all charges on June 15, 2023 confirm that the charges should never have been brought and that the continued prosecution following McLean's May 3, 2023 letter was without legal or factual basis

*These responses are provided to the best of the respondent's current knowledge and belief, based upon the records, documents, and information presently available. Respondent reserves the right to supplement or amend these responses as additional information becomes available.*

## PLAINTIFF'S RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

**INTERROGATORY NO. 2:** Identify all persons with knowledge of facts supporting your answer to Interrogatory No. 1.

**ANSWER:**

1. **Sean Frampton** — Frampton Purdy Law Firm 530 W 19th St Suite #301, Whitefish, MT 59937 Attorney for WCU; made repeated judicial admissions in signed court filings confirming Thorco's ownership and WCU's mortgage-only interest; called Sheriff's Office September 28–29, 2021 to file false trespass complaint; provided false Supreme Court characterization to law enforcement; told Sheriff to "F off" when subpoena sought; admitted in October 25, 2023 ODC statement that he drafted fabricated Corrected Release after receiving call from County Attorney's Office; found liable for malicious prosecution in Flathead County.

2. **Travis Ahner** — Flathead County Attorney's Office, 920 South Main Street, Kalispell, MT 59901. Ignored Sheriff Heino's finding that WCU was not the lawful owner; refused to investigate Thornton's complaint; refused to pursue subpoena for WCU loan files; insisted on criminal charges based solely on Frampton's phone call; filed charges without signed criminal complaint; overrode Sheriff's professional law enforcement judgment; made false representations regarding WCU's ownership of the subject property despite the public court record establishing otherwise.

3. **Ashley Frechette** — Flathead County Attorney's Office, 920 South Main Street, Kalispell, MT 59901. Participated in prosecution based on false ownership narrative; made false representations regarding WCU's ownership of the subject property despite the public court record establishing otherwise.

4. **Michael Noonan** — Flathead County Attorney's Office, 920 South Main Street, Kalispell, MT 59901. Filed fabricated Request for Judicial Notice in CR-22-0061 containing two provably false statements; contacted

Frampton about Satisfaction of Mortgage precipitating fabrication of Corrected Release; continued prosecution after learning Thorco owned the property; received McLean's May 3, 2023 letter demonstrating legal deficiency of charges; made false representations regarding WCU's ownership despite public court record establishing otherwise.

5. **Brian Heino** — Flathead County Sheriff, 920 South Main Street, Kalispell, MT 59901. Key exculpatory witness; personally reviewed Thornton's documents December 5, 2021; determined WCU was not the lawful owner; sought subpoena for WCU loan files; told Ahner no charges should be filed until investigation was complete; assigned Incident No. CR#2021-30528 to Thorco's formal report of potential mortgage fraud by WCU; his findings were suppressed by Ahner.

6. **Angela Rolando** — Deputy County Attorney, Flathead County Attorney's Office, 920 South Main Street, Kalispell, MT 59901. Conducted two-day investigation and determined charges should be dismissed; her rapid dismissal after reviewing the same documents available to Ahner, Frechette and Noonan for years demonstrates the baselessness of the prosecution.

7. **James Kenyon** — WCU CEO, Whitefish Credit Union 300 Baker Ave, Whitefish, MT 59937 Co-executed the fabricated Corrected Release of Mortgage without Power of Attorney in coordination with the County Attorney's Office and Frampton.

8. **Shauna Romrell** — Title Financial Specialty Services 580 Jensen Grove Dr, Blackfoot, ID 83221Confirmed TFSS followed Montana Code § 71-1-308 exactly; confirmed WCU failed to object within the 90-day statutory period; confirmed the Satisfaction of Mortgage was lawfully recorded; confirmed no one objected so the document was recorded.

9. **Donna Goodrich** —300 Baker Ave, Whitefish, MT 59937Issued order on February 10, 2022 giving WCU 90 days to object to the reconveyance; her order initiated the statutory 90-day clock under Montana Code § 71-1-308.

10. **Tyson McLean** — McLean Law Firm, Email: tyson@krismcleanlaw.com. Defense attorney who wrote May 3, 2023 letter to Noonan demonstrating Thorco's ownership and legal deficiency of all trespass claims using only WCU's own documents; his letter precipitated the dismissal.

11. **Suzanne Smith Jellison** — Alliance Title Officer 1581 Baker Ave., Ste. A | Whitefish, MT | 59937  Confirmed through email communications that the claimed $1,400,000 recorded mortgages could not be located in the Flathead County public record.

12. **Dean A. Stensland** — Attorney for WCU Boon Karlberg PC 201 W Main St Suite 300, Missoula, MT 59802 Filed Proof of Claim No. 10 in federal bankruptcy court asserting $1,400,000 in recorded mortgages that cannot be located in public records; signed under penalty of perjury.

13. **Sheena Sterling** — Clerk & Recorder Manager, Flathead County Clerk and Recorder's Office, 800 S Main St, Room 105, Kalispell, MT 59901, (406) 758-5521. Confirmed in writing on September 23, 2024 that no recorded Power of Attorney exists for Sean Frampton to record documents for WCU (Bates DT001070).

14. **Judge Dan Wilson** — Flathead County District Court, 920 South Main Street, Kalispell, MT 59901. Issued binding findings on October 4, 2018 (ROA 56) confirming Thorco's continuing ownership and WCU's mortgage-only interest.

15. **Dennis Thornton** — 151 Amatasia Lane, Kalispell, MT 59901, (406) 261-6814 Plaintiff; President of Thorco Inc.; direct knowledge of all facts herein.

16. **Scott Bolster** — WCU Chief Financial Officer 300 Baker Ave, Whitefish, MT 59937 Named in Thorco's demand letter as the WCU officer responsible for producing mortgage documentation; failed to respond to statutory demands.

**REQUEST FOR PRODUCTION NO. 1:** Produce copies of all records identified in answer to Interrogatory No. 1.

**RESPONSE:**

Plaintiff will produce the following documents:

**Court Records — DV-18-336D:**

1. ROA 12 — WCU's Motion to Set Aside Default (May 10, 2018), containing multiple judicial admissions that Thorco owns the property (Bates DT000792–DT000819).

2. ROA 29 — WCU's Answer (July 5, 2018), containing formal admission that escrow was never opened (Bates DT000934–DT000937).

3. ROA 32.1 — WCU's Motion for Summary Judgment (July 24, 2018), containing admission that "Thorco, Inc. holds title to the property" (Bates DT000940–DT000955).

4. ROA 40 — WCU's Reply to MSJ (August 31, 2018) (Bates DT000957–DT001001).

5. ROA 56 — Judge Wilson's Order (October 4, 2018), binding findings confirming Thorco's ownership (Bates DT001006–DT001025).
6. ROA 61 — WCU's Motion to Amend Judgment (October 29, 2018) (Bates DT001075–DT001123).

**Montana Supreme Court:**

7. ROA 71, DA-18-0595 — Montana Supreme Court Opinion (June 27, 2019) (Bates DT001130–DT001131).

**Key Communications:**

8. April 6, 2018 Email from Sean Frampton stating "Thorco owns the property and WCU holds a mortgage," filed as Court Exhibit in ROA 12, pg. 112 (Bates DT000900).
9. Tyson McLean Letter to Noonan — May 3, 2023.

**Property Records:**

10. Non-Merger Warranty Deeds recorded October 25, 2018 by Sean Frampton (Bates DT001059–DT001067).
11. Satisfaction of Mortgage — Instrument No. 2022-000-17228, recorded May 17, 2022 (Bates DT002387–DT002391).
12. Cover Letter from TFSS accompanying Satisfaction of Mortgage (Bates DT002388).
13. Corrected Release of Mortgage — fabricated document recorded by Frampton/Kenyon without Power of Attorney.

**Government Records:**

14. Flathead County Public Records Request — September 20, 2024 (Bates DT001056).
15. Email from Sheena Sterling — Clerk & Recorder Manager, September 23, 2024 (Bates DT001070).
16. Flathead County Sheriff's Case Report — ORI Number MT9022200.
17. Sheriff's Incident Report — CR#2021-30528.

**Criminal Case Records:**

18. Request for Judicial Notice — CR-22-0061, filed June 22, 2022 by Michael J. Noonan.

19. Order to Dismiss — CR-22-0061, signed June 15, 2023, Hon. Judge Eric Hummel.

**Disciplinary Records:**

20. Sean Frampton's October 25, 2023 Statement to the Office of Disciplinary Counsel.

**Bankruptcy Records:**

21. US Bankruptcy Court Case 17-61219-BPH — Proof of Claim No. 10, filed April 26, 2018 by Dean A. Stensland.

**Demand Letters:**

22. September 3, 2021 Demand Letter — Dennis Thornton to WCU/Sheriff Heino/Representatives/Senator.

**Statutory Authority:**

23. Montana Code §§ 71-1-307, 71-1-308, 71-1-309, 71-1-310 — Reconveyance statutes.
24. Montana Code § 32-9-124 — Mortgage lender prohibitions.

**INTERROGATORY NO. 4:** Identify every person you contend fabricated, directed the fabrication of, assisted in fabricating, or knew of the fabrication of any record related to the investigation, charging, or prosecution of you.

**ANSWER:**

1. **Travis Ahner** — Flathead County Attorney. Personally insisted on criminal charges after Sheriff Heino determined WCU was not the lawful owner; refused to investigate Thornton's complaint; refused to pursue subpoena for WCU loan files; based charges solely on Frampton's phone call; filed charges without signed criminal complaint; overrode Sheriff's professional law enforcement judgment; suppressed Sheriff's exculpatory findings in violation of Brady; made and/or directed false representations asserting WCU owned the subject property, despite the public court record — including WCU's own judicial admissions — conclusively establishing that Thorco, Inc. was the lawful owner and WCU held only a mortgage interest.

2. **Michael Noonan** — Deputy County Attorney, Flathead County Attorney's Office. Filed fabricated Request for Judicial Notice in CR-22-0061 containing two provably false statements about the court record; contacted Frampton after Satisfaction of Mortgage was recorded about its "effect on ownership (vis a vis the criminal trespass charge)"; directly precipitated fabrication of Corrected Release; continued prosecution after knowing Thorco owned the property; misrepresented Montana Supreme Court ruling he personally attached as Exhibit 3; received McLean's May 3, 2023 letter demonstrating legal deficiency of charges; made false representations asserting WCU owned the subject property in direct contradiction of the established court record.

3. **Ashley Frechette** — Flathead County Attorney's Office. Participated in prosecution based on knowingly false ownership narrative; made false representations regarding WCU's ownership in direct contradiction of the established court record.

4. **Sean Frampton** — WCU Attorney, Frampton Purdy Law Firm. Called Sheriff's Office September 28–29, 2021 to initiate false trespass complaint; provided false characterization of Montana Supreme Court ruling to law enforcement; provided video evidence; directly initiated criminal investigation based on false ownership narrative; obstructed Sheriff's investigation by refusing to produce loan files and telling Sheriff to "F off"; admitted in October 25, 2023 ODC statement that he drafted fabricated Corrected Release of Mortgage after receiving call from County Attorney's Office; recorded Non-Merger Warranty Deeds without authorization on October 25, 2018; found liable for malicious prosecution in Flathead County.

5. **James Kenyon** — WCU CEO, Whitefish Credit Union. Co-executed and recorded fabricated Corrected Release of Mortgage without any recorded Power of Attorney, in coordination with the County Attorney's Office and Frampton, as confirmed by Frampton's October 25, 2023 ODC Statement and the Clerk & Recorder's confirmation (Bates DT001070).

6. **Dean A. Stensland** — WCU Attorney. Filed Proof of Claim No. 10 in federal bankruptcy court asserting $1,400,000 in recorded mortgages that cannot be located in public records; signed under penalty of perjury. Bates DT000766-DT000769

7. **Brian Heino** — Flathead County Sheriff. Assigned Incident No. CR#2021-30528 to Thorco's formal report of potential mortgage fraud by WCU; personally determined WCU was not the lawful owner; his exculpatory findings were available to and suppressed by the County Attorney's Office.

8. **Investigating Officer** — Flathead County Sheriff's Office commander Buls and Sgt. Stahlberg Recorded false Supreme Court characterization provided by WCU/Frampton without verification; recommended charges based on false ownership premise.
9. **Scott Bolster** — WCU Chief Financial Officer. Named in Thorco's demand letter as the WCU officer responsible for producing mortgage documentation; failed to respond to statutory demands.
10. **Suzanne Smith Jellison** — Alliance Title Officer. Confirmed through email communications that the claimed $1,400,000 recorded mortgages could not be located in the Flathead County public record, directly undermining the false ownership narrative used to prosecute Thornton.

*Additional documents will be produced on a rolling basis as they are identified and compiled. Plaintiff requests reciprocal production of all communications between the Flathead County Attorney's Office and Sean Frampton, James Kenyon, WCU, and Sheriff Brian Heino between January 2021 and June 2023*

## INTERROGATORY NO. 5 — CONSOLIDATED RESPONSE

### Description of Each Act of Alleged Fabrication

### PRELIMINARY STATEMENT

The fabrication at issue is not the creation of a forged physical document, but rather the knowing and deliberate false assertion of material facts — specifically, that WCU held ownership of the subject property — in the course of investigating, charging, and prosecuting Plaintiff. This false narrative was advanced by Travis Ahner, Ashley Frechette, and Michael Noonan of the Flathead County Attorney's Office, and was directly contradicted by the following:

1. WCU's own attorney's written admission (April 6, 2018): "Thorco owns the property and WCU holds a mortgage" (Bates DT000900)
2. WCU's own signed court filings (May–October 2018) stating no fewer than seven times that Thorco owns the property and WCU is a creditor/mortgage holder
3. Binding District Court findings (October 4, 2018) by Judge Dan Wilson confirming Thorco's continuing ownership and that the property had never been legally conveyed to WCU
4. The Flathead County Attorney's Office had access to the complete public court record in DV-18-336D at all relevant times, yet continued to advance WCU's false ownership claim as fact

Plaintiff does not currently possess all internal communications between the Flathead County Attorney's Office and WCU/Sean Frampton. Plaintiff requests that Defendants produce all such communications in discovery.

## ACT OF FABRICATION NO. 1

### Frampton's False Report to the Sheriff's Office and Resulting Case Report

**Date:** September 28–29, 2021

**Location:** Flathead County Sheriff's Office

**Participants:**

1. Sean Frampton (initiated complaint)
2. WCU (provided false information)
3. Investigating officer (recorded false information without verification)
4. County Attorney's Office (received and adopted false narrative)

**False Information Provided:**

1. That the Montana Supreme Court ruled WCU was the "rightful owner" — directly contradicted by the actual ruling
2. That Thornton was trespassing on WCU's property — directly contradicted by all court records
3. That WCU had authority to place locks on the property — contradicted by WCU's mortgage-only interest

**Chain of Events:**

1. Frampton calls the Sheriff's Office on September 28, 2021 to file a trespass complaint
2. Frampton provides video of Thornton cutting locks placed by WCU on Thorco's property
3. Frampton provides a false characterization of the Montana Supreme Court ruling
4. The investigating officer records false information in the case report without verification
5. The report is sent to the County Attorney's Office for review
6. Travis Ahner, Ashley Frechette, and Michael Noonan receives the report and initiates prosecution based on the false ownership narrative

7. Noonan later files a Request for Judicial Notice containing the same false Supreme Court characterization
8. Travis Ahner, Ashley Frechette, and Michael Noonan office contacts Frampton about the Satisfaction of Mortgage
9. Frampton drafts the fabricated Corrected Release of Mortgage
10. Criminal prosecution of Plaintiff continues based entirely on the fabricated ownership narrative

## ACT OF FABRICATION NO. 2

### Ahner's Override of Sheriff Heino's Findings and Improper Initiation of Criminal Charges

**Date:** December 2021 — Early 2022

**Participants:**

1. Travis Ahner (County Attorney)
2. Sheriff Brian Heino (opposing charges)
3. Sean Frampton (initiating complaint; obstructing investigation)

**What Sheriff Heino Found:** After personally reviewing Thornton's documents on December 5, 2021, Sheriff Heino determined that WCU was not the lawful owner of the property. This finding constituted exculpatory evidence that was never disclosed to the defense, in violation of Brady v. Maryland.

**What Ahner Did:**

1. Ignored the Sheriff's findings entirely
2. Refused to investigate Thornton's complaint
3. Refused to pursue a subpoena for WCU loan files when Frampton obstructed their production
4. Refused to defer to the Sheriff's professional judgment
5. Insisted on criminal charges based solely on Frampton's phone call
6. Filed charges without a signed criminal complaint

**Obstruction by Frampton:**

1. Told the Sheriff to "F off and get out of his office"
2. Refused to produce WCU loan files
3. Actively obstructed the Sheriff's independent investigation

**Result:** Thornton was criminally charged for being on property his company legally owned, based on:

1. A phone call from his adversary's attorney
2. A false characterization of the Montana Supreme Court ruling
3. No signed criminal complaint
4. No complete investigation
5. Direct contradiction of the Sheriff's own findings

**Brady Violation:** Sheriff Heino's exculpatory findings were never disclosed to the defense.

## ACT OF FABRICATION NO. 3

### The Phone Call from the County Attorney's Office to Frampton

**Date:** Between May 17, 2022 and June 22, 2022

**Participants:**

1. Michael Noonan (or County Attorney personnel acting under his direction)
2. Sean Frampton (WCU's attorney)

**Subject of Call:** The effect of the recorded Satisfaction of Mortgage on property ownership "vis a vis the criminal trespass charge"

**Significance:**

1. Demonstrates actual knowledge by the County Attorney's Office that the recorded public document confirmed Thorco's ownership
2. Directly precipitated the fabrication of the Corrected Release of Mortgage
3. Establishes that the prosecution knowingly continued despite documentary proof of Thorco's ownership

**Source:** Frampton's October 25, 2023 ODC statement can be found on pg.6 par. 12 Bates DT004503

## ACT OF FABRICATION NO. 4

### The Fabricated Corrected Release of Mortgage

**Date:** Executed and recorded on or about June 2022

**Location:** Flathead County Clerk and Recorder's Office, 800 S Main St, Kalispell, MT 59901

**Participants:**

1. Sean Frampton (drafted the document at WCU's instruction)
2. James Kenyon, WCU CEO (signed and executed without Power of Attorney)

**Authority:** NONE — confirmed in writing by the Flathead County Clerk and Recorder (Bates DT001070)

**Statutory Violation:** Montana Code § 71-1-308(5)(c)(ii) — a recorded reconveyance is "valid regardless of any deficiency." No statutory mechanism exists for a beneficiary to unilaterally reverse a lawfully completed reconveyance after the 90-day objection period has expired.

**False Statements Inserted into the Public Record:**

1. That the debt was not paid — directly contradicts the original Satisfaction of Mortgage (Bates DT002389)
2. That WCU was not quitclaiming the property to Thorco — directly contradicts the original Satisfaction of Mortgage (Bates DT002389)
3. That the mortgage was released per the Settlement Agreement only

**Chain of Custody:**

1. County Attorney's Office calls Frampton to discuss the Satisfaction of Mortgage's effect on the criminal case
2. Frampton "immediately drafts" a corrective document per WCU's instructions
3. Kenyon executes the document without a Power of Attorney
4. The document is recorded in Flathead County without legal authority
5. Noonan files a false Request for Judicial Notice using the falsified public record

**The Void Document Argument — Montana Law:**

1. The original Satisfaction of Mortgage was recorded by TFSS under a properly recorded Special Power of Attorney dated July 23, 2014 (Bates DT002392)
2. The "Corrected Release" was recorded by James Kenyon and Sean Frampton with NO recorded Power of Attorney — confirmed by the Flathead County Clerk and Recorder
3. Under Montana law, a document recorded without authority is void, not merely voidable — a void instrument cannot supersede a valid one
4. The original Satisfaction of Mortgage — Instrument No. 2022-000-17228 — remains the valid and controlling recorded instrument
5. As a result of the foregoing:
    1. The debt remains "fully paid, satisfied, released and discharged"
    2. WCU's quitclaim to Thorco remains in full effect
    3. Thorco's ownership is confirmed by the only validly recorded instrument

## ACT OF FABRICATION NO. 5

**Noonan's Request for Judicial Notice — CR-22-0061**

**Date:** June 22, 2022

**Location:** Justice Court of Flathead County

**Author:** Michael J. Noonan, Deputy Flathead County Attorney

**False Statement No. 1:** That summary judgment in DV-18-336D resulted in WCU winning ownership of the property — directly contradicted by Judge Wilson's binding findings and WCU's own judicial admissions.

**False Statement No. 2:** That Thornton had not owned the property since October 4, 2018 — directly contradicted by the Montana Supreme Court ruling that Noonan himself attached as Exhibit 3 to the same filing.

**Mechanism:** Noonan invoked Rules 201 and 202 of the Montana Rules of Evidence to ask the Justice Court to treat fabricated facts as established, indisputable, and beyond challenge.

**Evidence Suppressed in Connection with This Filing:**

1. All of WCU's judicial admissions

2. Judge Wilson's binding findings confirming Thorco's ownership
3. The lawfully recorded Satisfaction of Mortgage — Instrument No. 2022-000-17228
4. The Flathead County Clerk and Recorder's written confirmation that no Power of Attorney exists
5. Sheriff Heino's exculpatory findings from December 5, 2021

**Timing:** Filed 36 days after the Satisfaction of Mortgage was recorded — and after Noonan's office had already called Frampton specifically to discuss its effect on the criminal case.

## ACT OF FABRICATION NO. 6

**Continuation of Prosecution with Full Knowledge of Thorco's Ownership**

**Participants:**

1. Michael Noonan (Deputy County Attorney — lead prosecutor)
2. Travis Ahner (County Attorney — supervising authority)
3. Ashley Frechette (County Attorney personnel)
4. Sean Frampton (WCU attorney — outside collaborator)
5. James Kenyon (WCU CEO — executed void document)

**Summary of Conduct:** The Flathead County Attorney's Office contacted Sean Frampton after the Satisfaction of Mortgage was recorded, confirming Thorco's ownership. Rather than dismissing the prosecution, Travis Ahner, Ashley Frechette, and Michael Noonan office coordinated with Frampton to fabricate a "Corrected Release of Mortgage" — executed by WCU CEO James Kenyon without any Power of Attorney — and recorded it in Flathead County to create a false public record supporting the criminal prosecution. The continued prosecution of Plaintiff, with full knowledge of Thorco's ownership, constitutes:

1. Malicious prosecution
2. Fabrication of evidence in violation of Plaintiff's constitutional rights
3. A Brady violation for suppression of material exculpatory evidence, including Sheriff Heino's findings, WCU's judicial admissions, and Judge Wilson's binding findings

## SUMMARY OF FABRICATION EVIDENCE

The following timeline reflects the complete arc of fabrication underlying this prosecution:

1. September 28–29, 2021 — Frampton files false trespass complaint with Sheriff's Office based on fabricated ownership narrative
2. December 5, 2021 — Sheriff Heino independently determines WCU is not the lawful owner; findings suppressed and never disclosed to defense
3. December 2021 – Early 2022 — Ahner ignores Sheriff's findings, refuses full investigation, and files charges without a signed criminal complaint
4. May 17 – June 22, 2022 — Travis Ahner, Ashley Frechette, and Michael Noonan office contacts Frampton about the Satisfaction of Mortgage's "effect on ownership vis a vis the criminal trespass charge," demonstrating actual knowledge of Thorco's ownership
5. June 2022 — Frampton immediately drafts the fabricated Corrected Release of Mortgage; Kenyon executes it without authority; document recorded in Flathead County as a void instrument
6. June 22, 2022 — Noonan files Request for Judicial Notice in CR-22-0061 containing two materially false statements and suppressing all contradicting evidence
7. Prosecution continues — based entirely on a fabricated ownership narrative contradicted by WCU's own admissions, Judge Wilson's findings, the Montana Supreme Court ruling, and the only validly recorded instrument in the public record

The Flathead County Clerk and Recorder has confirmed in writing that no Power of Attorney exists authorizing either Frampton or Kenyon to record documents on behalf of WCU. The fabricated Corrected Release of Mortgage is therefore void ab initio, the original Satisfaction of Mortgage — Instrument No. 2022-000-17228 — stands as the controlling instrument, and Thorco's ownership has been continuously confirmed by every valid legal authority in this matter.

**INTERROGATORY NO. 6 — COMPLETE CONSOLIDATED RESPONSE**

**INTERROGATORY NO. 6:**

State all facts supporting your contention that any member of the Flathead County Attorney's Office fabricated any record related to the investigation, charging, or prosecution of you.

**ANSWER:**

The following facts support Plaintiff's contention:

**INITIAL SUPPORTING FACTS:**

**1. The Public Court Record Was Unambiguous and Available:** The entire court record in DV-18-336D was publicly available to the Flathead County Attorney's Office. That record contained:

1. Seven or more explicit admissions by WCU's own attorney that Thorco owns the property
2. Binding findings by Judge Dan Wilson confirming Thorco's continuing ownership
3. WCU's own admission that escrow was never opened and the deeds were never properly recorded

**2. WCU's Own Admissions Directly Contradicted the False Narrative:**

| Date | WCU's Admission | Bates |
|---|---|---|
| April 6, 2018 | "Thorco owns the property and WCU holds a mortgage" | DT000900 |
| May 10, 2018 | "Thorco, who owns the property" | DT000801 |
| May 10, 2018 | "the property is owned by Thorco, not Thorntons" | DT000803 |
| July 24, 2018 | "Thorco, Inc. holds title to the property" | DT000944 |
| July 24, 2018 | WCU describes itself as a "creditor" | DT000948 |
| October 29, 2018 | "the only way to release it is for Thorco to pay the debt" | DT001079 |

**3. Judge Wilson's Binding Findings Were Ignored:** On October 4, 2018, Judge Wilson entered binding findings that the property had never been legally conveyed to WCU and that Thorco was the continuing owner. (Bates DT001006– DT001025). The County Attorney's Office advanced a contrary position.

**4. The Deeds Were Recorded Without Authorization:** The Settlement Agreement's Non-Merger Warranty Deeds were not reserved in the dismissal with prejudice (Bates DT000214- DT000216). Sean Frampton recorded the Non-Merger Warranty Deeds on October 25, 2018 — in direct violation of dismissal with prejudice and the non-reserved Settlement Agreement's escrow requirements and in defiance of Judge Wilson's findings — creating a false appearance of ownership in

the public record that the County Attorney's Office then relied upon. (Bates DT001059–DT001067)

**Supporting Witnesses:** Sean Frampton, Travis Ahner, Ashley Frechette, Michael Noonan, Judge Dan Wilson

**Supporting Records:** All records identified and produced in response to Request for Production No. 1

## SUPPLEMENTAL RESPONSE — INTERROGATORY NO. 6:

**Additional Facts Supporting Fabrication by Flathead County Attorney's Office:**

The Frampton ODC statement of October 25, 2023 provides direct evidence that:

1. The County Attorney's Office initiated contact with WCU's attorney about the Satisfaction of Mortgage
2. The contact was specifically about the Satisfaction's "effect on ownership" in the criminal case — proving the County Attorney's Office knew the recorded document showed Thorco's ownership
3. Despite this knowledge, Noonan filed false statements with the Justice Court one month later
4. The County Attorney's contact with Frampton directly precipitated the fabrication of the "Corrected Release of Mortgage" — a false alteration of the public record
5. Noonan then used this falsified public record landscape to continue prosecuting Plaintiff
6. This constitutes not merely negligent misrepresentation but active participation in the fabrication of evidence used to prosecute Plaintiff

## BRADY VIOLATION — ADDITIONAL GROUNDS:

| Brady Element | How It Applies |
| --- | --- |
| Suppressed Evidence | Suppressed the Satisfaction of Mortgage confirming Thorco's ownership |
| Evidence Was Favorable to Defendant | The Satisfaction directly contradicted the ownership narrative underlying the prosecution |

| Brady Element | How It Applies |
|---|---|
| Evidence Was Material | Without the false ownership narrative, there was no basis for prosecution |
| Active Fabrication | Went further than suppression — actively coordinated with Frampton to create a false "correction" contradicting the lawfully recorded Satisfaction |

## SUMMARY — THE COMPLETE FABRICATION SCHEME:

The County Attorney's Office, led by Travis Ahner, Ashley Frechette, Michael Noonan, did not merely fail to investigate — they actively coordinated with WCU's attorney Sean Frampton to undermine a lawfully recorded public document that proved Thorco's ownership, then filed false statements with the Justice Court asking it to treat their fabricated narrative as established fact — all while prosecuting Plaintiff for trespass on property the recorded public record showed he owned.

## INTERROGATORY NO. 6 — ADDITIONAL SUPPORTING FACTS:

**FACT 8 — WCU Filed a Potentially Fraudulent Proof of Claim in Federal Bankruptcy Court:** WCU's attorney Dean A. Stensland filed Proof of Claim No. 10 in Case 17-61219-BPH, asserting $1,400,000 in "recorded mortgages" — under penalty of perjury — yet:

1. These mortgages cannot be located in Flathead County public records
2. Alliance Title confirmed the mortgages could not be found
3. The original recorded mortgage was $3,360,000 — not $1,400,000
4. WCU never produced documentation of these mortgages in response to Thorco's statutory demands

**FACT 9 — The County Attorney's Office Had Notice of Potential WCU Mortgage Fraud:** The September 3, 2021 demand letter was addressed to Flathead County Sheriff Brian Heino and assigned Incident No. CR#2021-30528. The County Attorney's Office, working directly with the Sheriff's Office, had access to this incident report and its contents, including:

1. WCU's unsubstantiated claim of $1,400,000 in recorded mortgages
2. Thorco's inability to locate these mortgages in the public record
3. Alliance Title's confirmation that the mortgages could not be found

4. WCU's failure to respond to statutory demands under Montana Code §§ 32-9-124 and 32-9-169

Despite this knowledge, the County Attorney's Office continued to prosecute Plaintiff based on WCU's claimed ownership interest — an interest that WCU's own documentation failed to support.

**FACT 10 — WCU's Bankruptcy Claim Is Inconsistent With All Other Documentation:**

| Document | WCU's Claimed Amount | Recorded? |
|---|---|---|
| Original Mortgage (March 24, 2009) | $3,360,000 | YES — ROA 32.1 (Bates DT000948) |
| Bankruptcy Proof of Claim No. 10 (April 26, 2018) | $1,400,000 | CLAIMED BUT NOT FOUND |
| Satisfaction of Mortgage (May 17, 2022) | Debt fully satisfied | YES — Instrument No. 2022-000-17228 |

The discrepancy between WCU's $3,360,000 recorded mortgage and its $1,400,000 bankruptcy claim — for mortgages that cannot be located — raises serious questions about the legitimacy of WCU's entire claimed interest in the property.

**FACT 11 — Sheriff Heino Personally Determined WCU Was Not the Lawful Owner:** On December 5, 2021, Flathead County Sheriff Brian Heino personally reviewed Dennis Thornton's documents at Thornton's home and determined that WCU was not the lawful owner of the subject property. This finding by the chief law enforcement officer of Flathead County is consistent with and corroborated by:

1. Seven judicial admissions by WCU's own attorney (Bates DT000800– DT000954)
2. Judge Wilson's binding findings (Bates DT001018)
3. The Montana Supreme Court ruling (Bates DT001130–DT001131)
4. The Satisfaction of Mortgage (Bates DT002389)

**FACT 12 — Ahner Suppressed the Sheriff's Exculpatory Findings:** Travis Ahner received Sheriff Heino's findings — that WCU was not the lawful owner — and:

1. Refused to investigate Thornton's complaint
2. Refused to pursue the subpoena for WCU's loan files
3. Insisted on criminal charges despite the Sheriff's findings
4. Filed charges based solely on Frampton's phone call
5. Suppressed the Sheriff's exculpatory determination from the prosecution record

This constitutes a Brady violation — the suppression of material exculpatory evidence known to the prosecution.

**FACT 13 — Frampton Obstructed the Sheriff's Investigation:** When Sheriff Heino sought a subpoena for WCU's loan files:

1. WCU directed the Sheriff to Frampton
2. Frampton told the Sheriff to "F off and get out of his office"
3. The loan files — which would have revealed the truth about WCU's claimed mortgage — were never produced
4. Ahner refused to pursue the subpoena, effectively aiding Frampton's obstruction

**FACT 14 — There Is No Signed Criminal Complaint:** The criminal trespass charges against Thornton lack a foundational legal requirement — a signed criminal complaint. The charges were initiated based solely on:

1. A phone call from Sean Frampton
2. Frampton's video of Thornton on Thorco's own property
3. Frampton's false characterization of the Montana Supreme Court ruling

A prosecution initiated without a signed complaint, based solely on a phone call from the opposing party's attorney, after the Sheriff determined the ownership premise was false, constitutes malicious prosecution.

**FACT 15 — The Charges Were Dismissed After a Two-Day Investigation:** Deputy County Attorney Angela Rolando was assigned to the case and dismissed the criminal trespass charges after a two-day investigation — confirming the prosecution was baseless from the beginning. What Rolando determined in two days was available to Travis Ahner, Ashley Frechette, Michael Noonan for years in the public court record.

**FACT 16 — McLean's Letter Demonstrated Charges Were Legally Deficient:**
Defense attorney Tyson McLean's May 3, 2023 letter to Noonan established —
using WCU's own documents — that:

1. WCU held only a mortgage on Thorco's property
2. WCU's own Satisfaction confirmed Thorco's ownership
3. All trespass claims before May 12, 2022 were legally deficient
4. "Prosecuting Mr. Thornton for trespass on land that even the complaining witness acknowledges was Thorco Inc.'s, during the time of the alleged trespass, is non-actionable"

**FACT 17 — The Key Witness Had Been Found Liable for Malicious Prosecution:** Sean Frampton — the sole initiator of the criminal complaint against Thornton — had been found liable for malicious prosecution in Flathead County prior to McLean's letter. The County Attorney's Office was aware of this verdict yet continued prosecution based primarily on Frampton's complaint.

**FACT 18 — The Dismissal Was Without Prejudice:** The Order to Dismiss entered June 15, 2023 dismissed the charges without prejudice — leaving open the possibility of refiling. This demonstrates the prosecution's continued unwillingness to fully acknowledge the baselessness of the charges even at dismissal.

**REQUESTS FOR ADMISSION — UPDATED DENIALS:**

**REQUEST FOR ADMISSION NO. 1 — UPDATED DENIAL (Travis Ahner):**

**RESPONSE: DENIED.**

Travis Ahner personally fabricated and directed the fabrication of material facts used to prosecute Plaintiff by:

1. Ignoring Sheriff Heino's personal determination — on December 5, 2021 — that WCU was not the lawful owner of the subject property
2. Refusing to investigate Thornton's complaint despite the Sheriff's findings
3. Refusing to pursue the subpoena for WCU's loan files that would have revealed the truth about WCU's claimed mortgage
4. Insisting on criminal charges based solely on a phone call from Sean Frampton — WCU's attorney — despite:
    1. The Sheriff's contrary findings
    2. The complete court record establishing Thorco's ownership
    3. Seven judicial admissions by WCU's own attorney

    4. Binding court orders confirming Thorco's ownership

    5. Filing charges without a signed criminal complaint — in violation of Montana's basic charging requirements

    6. Suppressing the Sheriff's exculpatory findings — a clear Brady violation

## BRADY VIOLATION ANALYSIS (Travis Ahner):

| Brady Element | Application |
|---|---|
| Exculpatory Evidence | Sheriff Heino's personal determination that WCU was not the lawful owner |
| In Prosecution's Possession | Ahner was personally told of Sheriff's findings |
| Suppressed | Sheriff's findings never disclosed to defense; Ahner refused to investigate |
| Material | Without the false ownership premise, there was no basis for criminal trespass charges |
| Favorable to Defendant | Sheriff's findings directly contradicted the ownership premise underlying all charges |

## SUMMARY (Travis Ahner):

Travis Ahner initiated the criminal prosecution of Dennis Thornton after the Flathead County Sheriff personally reviewed Thornton's documents, determined WCU was not the lawful owner, sought a subpoena for WCU's loan files (which Frampton obstructed), and told Ahner that no charges should be filed until the investigation was complete. Ahner ignored the Sheriff, refused to investigate, suppressed the Sheriff's exculpatory findings, and insisted on criminal charges based solely on a phone call from the opposing party's attorney — with no signed criminal complaint in the record. This is not a case of negligent prosecution. This is deliberate, knowing, and willful fabrication of a criminal case against a property owner for accessing his own property.

## REQUEST FOR ADMISSION NO. 3 — UPDATED DENIAL (Ashley Frechette Michael Noonan):

## RESPONSE: DENIED.

Ashley Frechette and Michael Noonan fabricated material facts and continued prosecution of Plaintiff despite knowledge of the following:

1. WCU's own repeated judicial admissions that Thorco owned the property (Bates DT000800–DT000954)
2. Judge Wilson's binding findings confirming Thorco's continuing ownership (Bates DT001018)
3. The Montana Supreme Court's confirmation of WCU's mortgage-only interest (Bates DT001130–DT001131)
4. The lawfully recorded Satisfaction of Mortgage confirming Thorco as owner (Bates DT002389)
5. The Flathead County Clerk and Recorder's confirmation that neither Frampton nor Kenyon had a recorded Power of Attorney to record documents for WCU (Bates DT001070)
6. Frampton's admission that he drafted the Corrected Release after receiving a call from the County Attorney's Office (Frampton ODC Statement, October 25, 2023)
7. WCU's potentially fraudulent Proof of Claim in US Bankruptcy Court Case 17-61219-BPH asserting $1,400,000 in recorded mortgages that cannot be located in the Flathead County public record — reported to the Flathead County Sheriff's Office under Incident No. CR#2021-30528 — available to the County Attorney's Office at all relevant times

## RESPONSES TO REQUESTS FOR ADMISSION AND INTERROGATORY RESPONSES

## INTERROGATORY NO. 7 — COMPLAINTS, REPORTS, AND INVESTIGATIONS CONCERNING ALLEGED FABRICATION

Identify any complaints, reports, or investigations concerning the alleged fabrication, including investigative body, outcomes, and any discipline imposed.

## ANSWER:

Plaintiff is aware of the following:

1. Flathead County District Court, DV-18-336D — The court record in this matter contains extensive documentation of WCU's improper conduct regarding the subject property, including the unauthorized deed recording by Sean Frampton on October 25, 2018.
2. Montana State Bar —a bar complaint was filed September 11, 2023 by private investigator Kathy Wilson against Frampton ODC File No. 23-168]. Bates DT0002430-DT0004492

3. Internal Complaints to Flathead County — Plaintiff made a complaint to the Flathead County commissioners about the Clerk and Recorder's Office recording documents without identification and power of attorney to record. Plaintiff made this complaint on June 19, 2024. As of this date no one has responded. Bates DT000677- DT000681

4. Flathead County Sheriff's Office Incident No. CR#2021-30528 — Filed: September 3, 2021, By: Dennis Thornton, President of Thorco Inc. Subject: WCU's claimed $1,400,000 in recorded mortgages that cannot be located in public records; potential violation of Montana Code §§ 32-9-124 and 32-9-169. Status: Case Closed turned over to Flathead County Attorney's Office.

5. US Bankruptcy Court — Case 17-61219-BPH — Proof of Claim No. 10 filed by WCU asserting potentially fraudulent mortgage documentation. Potential violations: 18 USC §§ 152, 157, and 3571 — fines up to $500,000 and/or imprisonment up to 5 years.

Plaintiff reserves the right to supplement this response as additional information becomes available and as investigation continues.

## INTERROGATORY NO. 7 — ADDITIONAL INVESTIGATION OUTCOMES

| Proceeding | Outcome | Significance |
|---|---|---|
| CR-22-0061 — Criminal Trespass | Dismissed without prejudice — June 15, 2023 | Two-day investigation by Rolando; McLean's letter citing WCU's own documents |
| Flathead County Civil Action against Frampton | Verdict against Frampton including malicious prosecution | The sole initiator of criminal complaint found liable for malicious prosecution |
| Office of Disciplinary Counsel — Frampton | Case Closed July 9, 2024 | Frampton admitted fabricating public records in ODC statement |

## RESPONSES TO REQUESTS FOR ADMISSION

## REQUEST FOR ADMISSION NO. 1:

Admit that Travis Ahner did not fabricate, direct the fabrication of, assist in fabricating, or know of the fabrication of any record related to the investigation, charging, or prosecution of you.

**RESPONSE: DENIED.**

Travis Ahner made false and fabricated representations asserting WCU's ownership of the subject property in connection with the investigation, charging, and prosecution of Plaintiff. These representations were made despite the existence of an unambiguous public court record — including WCU's own repeated judicial admissions and binding District Court findings — conclusively establishing that Thorco, Inc. was the lawful owner of the subject property and that WCU held only a mortgage interest. Any assertion of WCU ownership by Travis Ahner was therefore knowingly false and constitutes fabrication of a material fact used to prosecute Plaintiff.

**REQUEST FOR ADMISSION NO. 2:**

Admit that Ashley Frechette did not fabricate, direct the fabrication of, assist in fabricating, or know of the fabrication of any record related to the investigation, charging, or prosecution of you.

**RESPONSE: DENIED.**

Ashley Frechette made false and fabricated representations asserting WCU's ownership of the subject property in connection with the investigation, charging, and prosecution of Plaintiff. These representations were made despite the existence of an unambiguous public court record — including WCU's own repeated judicial admissions and binding District Court findings — conclusively establishing that Thorco, Inc. was the lawful owner of the subject property and that WCU held only a mortgage interest. Any assertion of WCU ownership by Ashley Frechette was therefore knowingly false and constitutes fabrication of a material fact used to prosecute Plaintiff.

**REQUEST FOR ADMISSION NO. 3:**

Admit that Michael Noonan did not fabricate, direct the fabrication of, assist in fabricating, or know of the fabrication of any record related to the investigation, charging, or prosecution of you.

**RESPONSE: DENIED.**

Michael Noonan made false and fabricated representations asserting WCU's ownership of the subject property in connection with the investigation, charging,

and prosecution of Plaintiff. These representations were made despite the existence of an unambiguous public court record — including WCU's own repeated judicial admissions and binding District Court findings — conclusively establishing that Thorco, Inc. was the lawful owner of the subject property and that WCU held only a mortgage interest. Any assertion of WCU ownership by Michael Noonan was therefore knowingly false and constitutes fabrication of a material fact used to prosecute Plaintiff.

## NOONAN'S FALSE STATEMENT REGARDING THE MONTANA SUPREME COURT RULING

## THE FABRICATED STATEMENT:

In his Request for Judicial Notice filed June 22, 2022 in CR-22-0061, Michael J. Noonan stated:

*"Therefore, the State requests this Court to take judicial notice that since October 4, 2018, the date of summary judgment in DV-18-336(D), the Defendant has not owned the property involved in this case."*

THIS STATEMENT IS DEMONSTRABLY FALSE AND DIRECTLY CONTRADICTED BY THE VERY MONTANA SUPREME COURT RULING NOONAN CITED.

## WHAT THE MONTANA SUPREME COURT ACTUALLY RULED:

DA-18-0595, ROA 71, June 27, 2019 — Montana Supreme Court Affirming District Court:

1. Paragraph 8, Page 5 — "The original mortgage is securing an unpaid debt and its recording is authorized by law...The District Court correctly interpreted the Settlement Agreement" — confirms mortgage relationship and Settlement Agreement as debt repayment. (Bates DT001130)
2. Paragraph 9, Page 6 — "the original mortgage accurately reflected what the Thorntons owed and cannot be considered a cloud on the title" — Supreme Court explicitly confirms WCU holds only a mortgage. (Bates DT001131)
3. Paragraph 10, Page 6 — "the original loan amount remained due and owing" — confirms loan/debt relationship, NOT ownership transfer. (Bates DT001131)

## SIDE BY SIDE COMPARISON — NOONAN'S CLAIM vs. ACTUAL RULINGS:

| Noonan's False Statement | What the Courts Actually Found |
| --- | --- |
| "Defendant has not owned the property since October 4, 2018" | Montana Supreme Court confirmed WCU holds a mortgage securing an unpaid debt — not ownership (Bates DT001130) |
| Implies Supreme Court affirmed WCU's ownership | Supreme Court stated the mortgage "cannot be considered a cloud on the title" — title remained with Thorco (Bates DT001131) |
| Implies ownership was transferred through DV-18-336D | Supreme Court confirmed "the original loan amount remained due and owing" — a debt relationship, not ownership (Bates DT001131) |
| Implies summary judgment extinguished Thornton's property rights | Judge Wilson's binding order found Thorntons/Thorco were "continuing to own the Property" (Bates DT001018) |

## THE FATAL CONTRADICTION IN NOONAN'S OWN FILING:

Noonan cited the Montana Supreme Court ruling as Exhibit 3 in support of his Request for Judicial Notice — yet the ruling he cited directly contradicts his own statement. Specifically:

1. If WCU owned the property — there would be no "unpaid debt" or "original loan amount remaining due and owing." Owners do not owe debts to themselves on their own property. The Supreme Court's language of debt, mortgage, and loan exclusively describes a creditor-debtor relationship — not an ownership transfer.
2. If the mortgage "cannot be considered a cloud on the title" — then Thorco's title was clear. A cloud on title only matters if someone else holds title. The Supreme Court's finding that WCU's mortgage was NOT a cloud confirms Thorco held the title.
3. The Supreme Court affirmed the District Court — and the District Court found on October 4, 2018 that the property was: *"presently free of the recording of the Non-Merger Warranty Deeds conveying all of Thorco's right, title, and interest in the Property to WCU"* (Bates DT001018).

Noonan asked the Justice Court to take judicial notice of a ruling that — when read accurately — confirms the exact opposite of what Noonan represented.

**COMPOUNDING FALSE STATEMENTS — THE FULL PATTERN:**

Noonan made two separate false representations in the same Request for Judicial Notice:

**False Statement No. 1 — DV-18-336D:**

*"Summary judgment was granted to WCU and the Defendant lost his claim to the property"*

TRUTH: Summary judgment did not transfer ownership. Judge Wilson's binding findings confirmed Thorco's continuing ownership. (Bates DT001018)

**False Statement No. 2 — Montana Supreme Court Ruling:**

*"Since October 4, 2018...the Defendant has not owned the property involved in this case"*

TRUTH: The Montana Supreme Court affirmed that:

1. WCU holds a mortgage securing an unpaid debt. (Bates DT001130)
2. The mortgage "cannot be considered a cloud on the title." (Bates DT001131)
3. "The original loan amount remained due and owing." (Bates DT001131)

None of these findings support Noonan's claim that Thornton lost ownership.

**WHY THIS CONSTITUTES FABRICATION:**

1. Noonan Had the Actual Ruling in His Possession: Noonan attached the Montana Supreme Court ruling as Exhibit 3 to his own filing. He cannot claim ignorance of its contents. He read the ruling, attached it as an exhibit, and then misrepresented its findings to the Justice Court.
2. Noonan Selectively Misrepresented the Record: Noonan cited three separate cases — DV-12-174(B), DV-18-336D, and DA-18-0595 — and mischaracterized the holdings of each to construct a false narrative that Thornton had lost ownership of the property.
3. Noonan Used Rule 201 and Rule 202 as a Vehicle for Fabrication: By framing his false statements as a Request for Judicial Notice under Rules 201 and 202 of the Montana Rules of Evidence, Noonan attempted to have the Justice Court accept fabricated facts as established and beyond

dispute — the most prejudicial possible form of false statement in a legal proceeding.

4. The False Statements Were Material: The false assertion that Thornton did not own the property since October 4, 2018 was the entire foundation of the criminal prosecution. Without this false factual predicate, there was no basis to prosecute Plaintiff.

5. WCU's Own Admissions Were Suppressed: Noonan had access to the complete DV-18-336D record containing WCU's own repeated admissions that Thorco owned the property. He presented none of this to the Justice Court. This selective presentation of false facts while suppressing contrary evidence constitutes a Brady violation in addition to fabrication.

## THE MALICIOUS PROSECUTION ELEMENTS — NOW COMPLETE:

| Element of Malicious Prosecution | Evidence |
| --- | --- |
| Criminal proceedings instituted | CR-22-0061 — Criminal Trespass filed |
| By or at direction of defendant | Ahner insisted on charges; Noonan prosecuted; based on Frampton's call |
| Without probable cause | Sheriff Heino determined WCU not lawful owner; complete court record established Thorco's ownership |
| With malice | Charges filed despite Sheriff's findings; Noonan filed false judicial notice; Frampton's obstruction aided; WCU's own admissions suppressed |
| Proceedings terminated in plaintiff's favor | Dismissed — June 15, 2023 |
| Plaintiff suffered damages | Two-year criminal prosecution; reputational harm; legal costs; emotional distress |

All six elements of malicious prosecution are established by the record.

## SUMMARY:

The criminal prosecution of Dennis Thornton was malicious from its inception. It was initiated by Travis Ahner based solely on a phone call from Sean Frampton — an attorney who had been found liable for malicious prosecution — after the

Flathead County Sheriff personally determined WCU was not the lawful owner and told Ahner no charges should be filed. It was maintained by Travis Ahner, Ashley Frechette, Michael Noonan through fabricated judicial notice filings and coordination with Frampton to undermine a lawfully recorded Satisfaction of Mortgage. It collapsed in two days once Angela Rolando conducted an honest review of the same documents that had been available to Travis Ahner, Ashley Frechette, Michael Noonan for years. The charges were dismissed on June 15, 2023.

The following elements are fully established by the record:

1. Every element of malicious prosecution is established.
2. Every element of fabrication of evidence is established.
3. Every element of Brady suppression is established.

The prosecution of Dennis Thornton for trespassing on his own property was not a good faith mistake — it was a coordinated, deliberate, and sustained effort to deprive him of his property rights through the criminal justice system.

*Plaintiff reserves the right to supplement these responses as additional information becomes available and as investigation continues.*

## DESCRIBE WITH PARTICULARITY ALL FACTS SUPPORTING YOUR DENIAL OF REQUESTS FOR ADMISSION NOS. 1, 2, AND 3.

## ANSWER:

Plaintiff's denials of Requests for Admission Nos. 1, 2, and 3 are supported by the following facts:

## THE CORE FACT:

The Flathead County Attorney's Office prosecuted Plaintiff based on the false premise that WCU owned the subject property. This premise was demonstrably false, and the evidence proving its falsity was in the public court record available to every member of the Flathead County Attorney's Office at all relevant times.

## THE EVIDENCE THAT WAS IGNORED:

| Source | Statement | Bates |
|---|---|---|
| WCU Attorney Email, April 6, 2018 | "Thorco owns the property and WCU holds a mortgage" | DT000900 |
| WCU's MSJ, July 24, 2018 | "Thorco, Inc. holds title to the property" | DT000944 |
| WCU's MSJ, July 24, 2018 | WCU is a "creditor" — not an owner | DT000948 |
| WCU's MSJ, July 24, 2018 | Settlement Agreement was "a legal means to achieve repayment" — not ownership transfer | DT000951 |
| WCU's Answer, July 5, 2018 | "WCU admits that it did not open an escrow" | DT000936 |
| Judge Wilson's Order, Oct. 4, 2018 | Property "presently free" of deed recording — never legally conveyed | DT001018 |
| Judge Wilson's Order, Oct. 4, 2018 | Thorntons/Thorco "continuing to own the Property" | DT001018 |

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 3 AND INTERROGATORY NO. 8:**

Michael Noonan fabricated material facts when he:

1. Falsely stated that summary judgment in DV-18-336D resulted in Thornton losing ownership of the property.
2. Falsely stated that since October 4, 2018, Thornton had not owned the property.
3. Misrepresented the Montana Supreme Court's ruling in DA-18-0595 — a ruling he personally attached as an exhibit — which confirmed a mortgage/debt relationship, not an ownership transfer.
4. Suppressed WCU's own judicial admissions confirming Thorco's ownership, all of which were in the public court record available to him.
5. Used Rules 201 and 202 of the Montana Rules of Evidence to ask the Justice Court to treat these fabricated facts as established and indisputable.

These acts were not mistakes or misinterpretations. They were knowing misrepresentations of an unambiguous court record, made to a court of law, for the purpose of prosecuting Plaintiff on a false factual basis.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

**ADDITIONAL FACTS SUPPORTING DENIAL OF REQUEST FOR ADMISSION NO. 3 (Michael Noonan):**

Michael Noonan fabricated a material fact when he represented to the Justice Court in CR-22-0061 that:

*"In DV-18-336(D), summary judgment was granted to WCU and the Defendant lost his claim to the property in this matter."*

This statement is false because:

1. Judge Wilson's binding order confirmed Thorco's continuing ownership of the property as of October 4, 2018 (Bates DT001018).
2. WCU's own attorney admitted in the same case that "Thorco owns the property and WCU holds a mortgage" (Bates DT000900).
3. WCU's own Motion for Summary Judgment stated "Thorco, Inc. holds title to the property" (Bates DT000944).
4. The summary judgment in DV-18-336D did not transfer title to WCU — it addressed breach of contract claims, and the binding findings confirmed Thorco's ownership.
5. Noonan submitted this false statement as the basis for a Request for Judicial Notice — asking the court to accept a fabricated fact as established law.
6. This fabricated statement directly formed the foundation of the criminal prosecution of Plaintiff Dennis Thornton.

**SUPPLEMENTAL RESPONSE — INTERROGATORY NO. 8:**

**Additional Facts Supporting Denial of Request for Admission No. 3 (Michael Noonan):**

In addition to all previously stated grounds, the Satisfaction of Mortgage recorded May 12, 2022 provides definitive proof of Noonan's fabrication because:

1. It was a public record available to Noonan before he filed his Request for Judicial Notice.
2. It identifies the exact parties — Thorco as owner/mortgagor and WCU as lender/mortgagee — directly contradicting Noonan's ownership narrative.

3. It demonstrates that WCU itself — through its servicer TFSS — acknowledged Thorco's ownership by releasing the lien back to Thorco as mortgagor.
4. It proves that every court, every party, and every recorded document consistently recognized:
    1. Thorco = owner
    2. WCU = mortgage lender
    3. Their relationship = debtor/creditor — never owner/owner
5. Noonan's false statement that Thornton "has not owned the property since October 4, 2018" is irreconcilable with a satisfaction of mortgage issued and recorded in May 2022 — nearly four years after the date Noonan claimed ownership ended.

## SUMMARY — NOONAN'S FABRICATION IS PROVEN BY FIVE INDEPENDENT SOURCES:

| Source | Confirms Thorco's Ownership | Contradicts Noonan |
|---|---|---|
| WCU's own attorney's admissions (2018) | ☑ | ☑ |
| Judge Wilson's binding findings (Oct. 4, 2018) | ☑ | ☑ |
| Montana Supreme Court ruling (June 27, 2019) | ☑ | ☑ |
| Satisfaction of Mortgage (May 17, 2022) | ☑ | ☑ |
| Cover letter from WCU's servicer (May 2022) | ☑ | ☑ |

Every single piece of evidence — including WCU's own recorded documents — confirms Thorco's ownership. Noonan's statements to the Justice Court were fabricated, knowingly false, and used to obtain a criminal prosecution against Plaintiff on a false factual basis.

## CONCLUSION:

Travis Ahner, Ashley Frechette, and Michael Noonan either knew the ownership narrative was false based on the public court record and advanced it anyway, or failed to conduct a reasonable investigation that would have revealed the falsity of that narrative. Either way, the prosecution of Plaintiff based on a false ownership claim constitutes the fabrication of a material fact and a violation of Plaintiff's constitutional rights.

## INTERROGATORY NO. 8 — UPDATED DENIAL OF ALL THREE REQUESTS FOR ADMISSION:

## UPDATED DENIAL — ALL THREE DEFENDANTS:

The Flathead County Sheriff's Case Report provides additional proof of fabrication by all three named defendants because:

1. The report originated with false information provided by Sean Frampton — WCU's attorney who had repeatedly admitted in signed court filings that Thorco owned the property.
2. The false Supreme Court characterization originated with WCU/Frampton — the same parties who later fabricated the Corrected Release of Mortgage.
3. The County Attorney's Office received the report containing the false Supreme Court characterization and failed to verify it against the actual ruling.
4. Noonan then repeated the same false characterization in his Request for Judicial Notice filed June 22, 2022 — demonstrating a continuous pattern of fabrication from the initial investigation through prosecution.
5. Travis Ahner and Ashley Frechette oversaw and participated in a prosecution whose entire foundation — WCU's ownership of the property — was contradicted by the actual court record they were obligated to review.

Bates stamp numbers index

DT000101-DT000105 March 26, 1993 Warranty Deed from Helen Marie Connor and Lee Roy Dwelle to
Thorco Inc.
DT000106-DT000118 Thorco Inc.'s 2009 mortgage with Whitefish Credit Union
DT000119-DT000130 2009 Mortgage Personal Guarantees
DT000131-DT000141 2009 mortgage title policy
DT000142-DT000144 Definition Mortgage Montana code

DT000145-DT000151 July 16, 2013 Deposition of Randy Admitting He Was on the Property for the
Potential Sale to Another Developer
DT000152-DT000164 WCU's February 1, 2012 Litigation Guarantee FT 20120081
DT000165-DT000191 ROA 1 DV-12-174B WCU's February 17, 2012 foreclosure complaint
DT000192-DT000198 Case 14-60633-RBK claim 4 filed on November 3, 2014 value of property at
$8,790,000
DT000199-DT000202 ROA 217 DV-12-174B WCU's February 23, 2016 Judgment of Foreclosure and
Order of Sale
DT000203-DT000204 ROA 224 DV-12-174B March 24, 2016 Order Setting a Jury Trial on Thorco &
Thornton Counterclaims
DT000205-DT000208 ROA 229 DV-12-174B April 12, 2016 Mediators Report
DT000209-DT000213 ROA 230 DV-12-174B August 12, 2016 joint motion to vacate February 23, 2016
Judgment of Foreclosure and Sale
DT000214-DT000216 ROA 231 DV-12-174B Order Vacating Judgment of Foreclosure and Sale
DT000217-DT000221 ROA 232 DV-12-174B August 22, 2016 Joint Stipulated Motion to Dismiss with
Prejudice
DT000222-DT000224 ROA 233 DV-12-174B August 24, 2016 Dismissal with Prejudice with No
Reservations
DT000225-DT000724 RESERVED
DT000725-DT000742 November 29, 2017 Alliance Title Preliminary Title Commitment
DT000743-DT000765 April 6, 2018 Frampton states settlement agreement cannot create ownership Thorco
owns the property
DT000766-DT000769 Case 17-61219-BPH claim 10 filed on April 26, 2018
DT000770-DT000774 John Amsden Declaration
DT000775-DT000787 ROA 1 DV-18-336D Thorntons v Whitefish Credit Union Complaint and Demand
for Jury Trial in DV-18-336D

DT000788-DT000933 ROA 12 DV-18-336D May 10, 2018 Motion to Set Aside
Default

DT000934-DT000937 ROA 29 DV-18-336D July 5, 2018 WCU's Answer
DT000938-DT000956 ROA 32.1 DV-18-336D July 24, 2018 WCU's Motion for
Summary Judgment
DT000957-DT001001 ROA 40 DV-18-336D August 31, 2018 WCU's Reply to Its
MSJ
DT001002-DT001005 ROA 42 DV-18-336D August 31, 2018 Third Affidavit of
Aaron Archer
DT001006-DT001025 ROA 56 DV-18-336D October 4, 2018 Order Granting
WCU Summary Judgment
And Denying Thornton's Motion to Amend Complaint
DT001026-DT001027 ROA 57 DV-18-336D October 10, 2018 Judgment against
Dennis and Donna
Thornton
DT001028-DT001058 November 23, 2018 satisfaction of mortgage and November
24, 2018 amended
satisfaction of mortgage
DT001059-DT001067 October 25, 2018 Sean Frampton records deeds from and
unexecuted non-reserved
settlement agreement
DT001068-DT001072 Flathead County has no record our attorney for Sean
Frampton or James Kenyon to
record documents for WCU
DT001073-DT001074 ROA 60 DV-18-336D notice of appeal to the Montana
Supreme Court
DT001075-DT001123 ROA 61 DV-18-336D October 29, 2018 WCU's motion to
amend judgment
DT001124-DT001134 ROA 71 DV-18-336D June 27, 2019 Remitter from
Montana Supreme Court
Affirmed Mortgage Still Due and Owing
DT001135-DT001143 ROA 83 DV-18-336D October 22, 2019 WCU's response
to plaintiffs motion to
vacate hearing
DT001144-DT001147 ROA 88 DV-18-336D November 13, 2019 Order Striking
Satisfaction of Mortgage
from Public Record
DT001148-DT001647 RESERVED
DT001648-DT001652 2016 IRS transcript

DT001653-DT001656 2017 IRS transcript

DT001657-DT001660 2018 IRS transcript

DT001661-DT001668 2019 emails from Thorco's accountant Andrew Johnson

DT001669-DT001686 ROA 1 DV 19-534B June 6, 2019 Thorco Inc. suit against WCU

DT001687-DT001693 ROA 7 DV 19-534 January 6, 2020 WCU's Motion for Rule 11 Sanctions and Brief in
Support

DT001694-DT001707 ROA 15 DV 19-534 January 4, 2020 Orders Re First Amended Complaint and
Vexatious Litigant

DT001708-DT001711 ROA 16 DV 19-534 February 4, 2020 Prefiling Order and Pre-Recording Order

DT001712-DT001713 ROA 19 DV 19-534 February 24, 2020 judgment against Thorco Inc.

DT001714-DT001718 ROA 26 DV 19-534 March 27, 2020 Notice of Appeal

DT001719-DT001728 ROA 32 DV 19-534 September 13, 2021 Remitter from Montana Supreme Court
Affirmed

DT001729-DT002228 RESERVED

DT002229-DT002236 Theft report filed with the Flathead County Sheriff's Office August 18, 2021

DT002237-DT002254 Dennis Thornton and Representative Noland's request for loan files December 9,
2021

DT002255-DT002256 October 24, 2023 Email from Sean Frampton to Sheriff Brian Heino

DT002257-DT002274 December 9, 2021 temporary custody agreement for Sheriff Brian Heino to retrieve
Thorco's loan file from WCU

DT002275-DT002339 Subpoenaed Thorco Inc. loan files turned over on September 19, 2024 in Thorco's
bankruptcy

DT002340-DT002357 January 19, 2022 CR-385-2022-61 criminal trespass charges

DT002358-DT002384 February 10, 2022 transcript of banking Commissioner Melanie Hall and Chief legal
counsel Kelly O'Sullivan

DT002385-DT002386 March 24, 2022 Derek Skees Request For Advisory Comm WCU Advisory
Committee
DT002387-DT002391 May 12, 2022 Recorded Satisfaction of Mortgage and Reconveyance by Title
Financial Specialty Services
DT002392-DT002393 Title Financial Specialty Services recorded powers of attorney from WCU
DT002394-DT002409 9.22-9003-WLH First amended complaint to avoid fraudulent transfer March 15,
2023
DT002410-DT002429 Answer to 9.22-9003-WLH First amended complaint to avoid fraudulent transfer
March 15, 2023
DT002430-DT002773 Pvt. Detective Kathy Wilson's investigations
DT002774-DT002869 Gerald Fritts Expert Witness Report (1)
DT002870-DT003605 Gerald Fritts Expert Witness Exhibits (2)
DT003606-DT003613 Pvt. Detective Richard Hawks August 22, 2021
DT003614-DT003618 Surveyor Darren R Breckinridge August 9, 2021 Expert Report
DT003619-DT003638 March 31, 2020 Report of Realtor Kim Barstow
DT003639-DT003648 WCU 5300 Call Reports Expert Witness Report (1)
DT003649-DT003737 WCU 5300 Call Reports Exhibits_compressed part 1

**Statement of Undisputed Facts**

1. Thorco Incorporated acquired record title to the real property located at 890 Boon Road, Somers, Montana, consisting of approximately 500 acres and 24 tracts, on March 26, 1993, by Warranty Deed recorded in Flathead County as DN-12046.
   Bates DT000101–DT000105.
2. The 1993 Warranty Deed vested title in Thorco Incorporated.
   Bates DT000101–DT000105.
3. On March 24, 2009, Thorco Incorporated executed a mortgage on the property in favor of Whitefish Credit Union ("WCU") in the original

principal amount of $3,360,000.00.
Bates DT000106–DT000118.

4. The 2009 mortgage was recorded in Flathead County as Instrument No. 200900007830.
Bates DT000106–DT000118.

5. The 2009 mortgage identifies Thorco Incorporated as the Mortgagor and WCU as the Mortgagee.
Bates DT000106–DT000118.

6. On July 23, 2014, WCU executed a Special Power of Attorney authorizing Title Financial Specialty Services ("TFSS") to act on WCU's behalf in connection with satisfactions of mortgage and trustee substitutions.
Bates DT002392–DT002393.

7. WCU commenced a foreclosure action in Flathead County Cause No. DV-12-174B.
Bates DT000214–DT000221.

8. On February 23, 2016 a Judgment of Foreclosure and Order of Sale was entered in DV-12-174B.
Bates DT000214–DT000216.

9. On June 8, 2016, the parties executed a Settlement Agreement that contemplated deeds and releases being deposited into escrow with First American Title Company.
Bates DT000819; DT000934–DT000937

10. On August 12, 2016 WCU, through its attorneys at Frampton Purdy Law Firm, sought vacatur of that foreclosure judgment.
Bates DT000214–DT000216.

11. On August 16, 2016, District Judge Robert B. Allison entered an order vacating the February 23, 2016 Judgment of Foreclosure and Order of Sale in DV-12-174B.
Bates DT000214–DT000216.

12. On August 24, 2016, District Judge Robert B. Allison entered an Order dismissing all claims between Whitefish Credit Union, Thorco Inc., Dennis Thornton, and Donna Thornton with prejudice, with each party to bear its own costs and attorney fees.
Bates DT000217–DT000221.

13. The August 24, 2016 Order of Dismissal with Prejudice does not reserve the Settlement Agreement, does not incorporate the Settlement Agreement, and does not retain jurisdiction to enforce the Settlement Agreement.
Bates DT000217–DT000221.

14. WCU, through its attorneys at Frampton Purdy Law Firm, filed the papers that resulted in the dismissal with prejudice.
Bates DT000217–DT000221.

15. WCU therefore had the opportunity, through its own counsel, to request that the Settlement Agreement be retained, incorporated, or expressly reserved in the dismissal order, but no such reservation appears in the dismissal order entered by the court.
Bates DT000217–DT000221.

16. In DV-18-336D, WCU filed an Answer dated July 5, 2018, signed by Sean Frampton, in which WCU admitted that it did not open an escrow.
Bates DT000934–DT000937.

17. In that same Answer, WCU admitted that the Settlement Agreement provided that the releases and deeds were to be placed into escrow with First American Title.
Bates DT000934–DT000937.

18. In that same Answer, WCU admitted that the fully executed Settlement Agreement was held at Frampton Purdy Law Firm, not at First American Title.
Bates DT000936.

19. In a written communication dated April 6, 2018, later filed as a court exhibit, WCU's counsel stated: "The Settlement Agreement cannot 'create ownership.' Thorco owns the property and WCU holds a mortgage on the property."
Bates DT000900.

20. In WCU's May 10, 2018 Motion to Set Aside Default in DV-18-336D, WCU stated: "Neither party deposited their respective documents with First American Title."
Bates DT000792.

21. In that same motion, WCU referred to "Thorco, who owns the property."
Bates DT000801.

22. In that same motion, WCU stated that "the property is owned by Thorco, not Thorntons."
Bates DT000803.

23. In that same motion, WCU referred to "WCU's mortgage, which had been recorded since 2009."
Bates DT000803.

24. An exhibit to that same filing states that real estate tax notices "were and will be received by Thorco."
Bates DT000819.

25. In ROA 40 filed August 31, 2018, WCU conceded that it had possession of the deeds.
Bates DT000957–DT001001, at DT000961.

26. In that same filing, WCU stated that Sean Frampton confirmed in March 2018 that WCU was holding the deeds.
Bates DT000961.

27. On October 4, 2018, District Judge Dan Wilson found that the property was "presently free of the recording of the Non-Merger Warranty Deeds conveying all of Thorco's right, title, and interest in the Property to WCU."
Bates DT001006–DT001025.

28. As of October 4, 2018, the Non-Merger Warranty Deeds had not been recorded.
Bates DT001006–DT001025.

29. According to the record identified here, Dennis Thornton recorded a Satisfaction of Mortgage and certified copies of the prior district court orders on October 23 and 24, 2018.
Bates DT001059–DT001067.

30. On October 25, 2018, Sean Frampton recorded the Non-Merger Warranty Deeds.
Bates DT001075–DT001123.

31. On October 29, 2018, Sean Frampton filed ROA 61 seeking an order to remove Thornton's recordings from the public record.
Bates DT001075–DT001123.

32. The criminal complaint at issue was filed on November 29, 2021.
Bates DT001150- DT001152

33. On May 12, 2022, TFSS, acting as attorney-in-fact for WCU under the July 23, 2014 Special Power of Attorney, executed a Satisfaction of Mortgage relating to the March 24, 2009 mortgage.
Bates DT002392- DT002391

34. The Satisfaction of Mortgage was recorded in Flathead County on May 17, 2022, as Instrument No. 2022-000-17228.
Bates DT002387-DT002391

35. The Satisfaction of Mortgage identifies Thorco Incorporated as the Mortgagor and WCU as the Mortgagee.
Bates DT002389

36. The Satisfaction of Mortgage states that the mortgage, the note secured thereby, and the debt were "fully paid, satisfied, released and discharged."
Bates DT002389

37. The Satisfaction of Mortgage further states that the Mortgagee "does hereby release and quitclaim unto the said Mortgagor the premises thereby conveyed and mortgaged."
Bates DT002389

38. The cover letter accompanying the Satisfaction of Mortgage states: "CONGRATULATIONS! Your lien with Whitefish Credit Union has been released. Enclosed please find the original recorded Satisfaction of Mortgage. This document releases the lien from your property."
Bates DT002388

39. The recorded documents identified here consistently distinguish Thorco as mortgagor/owner and WCU as mortgagee/lender.
Bates DT000101–DT000118; DT002388–DT002393;

40. WCU's own filings and written statements in 2018 repeatedly stated that Thorco owned the property and WCU held a mortgage.
Bates DT000900; DT000801; DT000803.

41. WCU's own pleadings admitted that the escrow contemplated by the Settlement Agreement was never opened.
Bates DT000934–DT000937; DT000792.

42. The August 24, 2016 dismissal with prejudice did not preserve any express right of future enforcement under the Settlement Agreement.
Bates DT000217–DT000221.

43. WCU had the opportunity, through Frampton Purdy Law Firm, to request such a reservation in the dismissal order but did not obtain one.
Bates DT000214–DT000221

44. No order identified here states that WCU acquired ownership of the property through the vacated foreclosure judgment in DV-12-174B.
Bates DT000214–DT000221.

45. No dismissal language identified here retained the Settlement Agreement as part of the August 24, 2016 dismissal with prejudice.
Bates DT000217–DT000221.

46. The record identified here shows that WCU's foreclosure judgment was vacated, the foreclosure action was dismissed with prejudice, escrow under the Settlement Agreement was never opened, and WCU later executed and recorded a Satisfaction of Mortgage identifying itself as Mortgagee and Thorco as Mortgagor.
Bates DT000214–DT000221; DT000934–DT000937; DT000900; DT000792; DT000801; DT000803; DT001006–DT001025;

## I. THORCO'S UNINTERRUPTED OWNERSHIP OF THE PROPERTY:

**A. 1993 Warranty Deed:** On March 26, 1993, Thorco Incorporated acquired title to approximately 500 acres of real property located at 890 Boon Road, Somers, Montana, including 24 tracts of land, through a duly executed and recorded Warranty Deed (DN-12046). Thorco has been the lawful owner of record since 1993.
Bates DT000101- DT000105

**B. 2009 Mortgage:** On March 24, 2009, Thorco Incorporated, as Mortgagor/owner, executed a mortgage to Whitefish Credit Union, as Mortgagee/lender, recorded in Flathead County as Instrument No. 200900007830, in the amount of $3,360,000.00. This mortgage confirmed Thorco's status as property owner and WCU's status as lender.
Bates DT000106- DT000118

**C. 2014 Special Power of Attorney:** On July 23, 2014, WCU executed a Special Power of Attorney authorizing Title Financial Specialty Services to execute Satisfactions of Mortgage on WCU's behalf and to substitute First American Title Company as successor trustee. This document confirms WCU treated its interest as a mortgage not an ownership interest.
Bates DT002392- DT002393

## II. THE FORECLOSURE ACTION AND ITS COMPLETE RESOLUTION:

**A. ROA 231 - Order Vacating Foreclosure Judgment (August 16, 2016):** On August 16, 2016, District Court Judge Robert B. Allison entered an Order in DV-12-174B vacating WCU's Judgment of Foreclosure and Order of Sale entered February 23, 2016. This order permanently extinguished WCU's foreclosure judgment.
Bates DT000214- DT000216

**B. ROA 233 - Dismissal with Prejudice (August 24, 2016):** On August 24, 2016, District Court Judge Robert B. Allison entered an Order dismissing all claims between Whitefish Credit Union, Thorco Inc., Dennis Thornton, and Donna Thornton with prejudice, with each party to bear its own costs and attorney fees. WCU reserved absolutely nothing in this dismissal. Under Montana Supreme Court precedent including State v. Twelfth Judicial District and First Bank Missoula v. District Court, this dismissal with prejudice was res judicata as to every issue raised or which fairly could have been raised, leaving WCU with no remaining claim to the property.
Bates DT000217- DT000221

**C. Single Action Rule - MCA 71-1-222:** Montana Code 71-1-222 provides that there is only one action for the recovery of debt or the enforcement of any right secured by a mortgage upon real estate. WCU exhausted its single foreclosure action in DV-12-174B. That action was vacated and dismissed with prejudice. WCU therefore had no remaining legal mechanism to claim ownership of the property.
Bates DT000217- DT000221

**III. THE SETTLEMENT AGREEMENT AND WCU'S IMPROPER USE OF SECURITY DEEDS:**

**A. The Settlement Agreement - June 8, 2016:** The parties entered into a Settlement Agreement on June 8, 2016 which required deeds and releases to be deposited with First American Title Company to be held in escrow. The deeds provided in the Settlement Agreement were security deeds not deeds in lieu of foreclosure. Under Montana Code 71-1-202, a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale.

**B.The Settlement Agreement Was Not Reserved In ROA 233 - Dismissal with Prejudice (August 24, 2016).**

**C. The Escrow Was Never Opened:** In ROA 29, DV-18-336D, WCU's Answer dated July 5, 2018 signed by Sean Frampton, WCU formally admitted in Paragraph 7: "WCU admits that it did not open an escrow and further admits that the Settlement Agreement provides that the releases and **deeds** must be placed into escrow with First American Title." WCU further admitted in Paragraph 6 that the fully executed Settlement Agreement was held at Frampton Purdy Law Firm - not at First American Title as required.
Bates  DT000934-DT000937

**D. WCU Conceded Possession of the Documents:** In ROA 40, DV-18-336D, WCU's Reply to Its Motion for Summary Judgment dated August 31, 2018, WCU conceded it had the documents and confirmed that in March 2018, Frampton confirmed WCU was holding the deeds. In December 2017, Frampton did not even know if escrow had been opened.
Bates DT000957-DT001001

**E. The Deeds Were Never Recorded - Until Frampton's Unauthorized Recording:** District Court Judge Dan Wilson found in ROA 56, DV-18-336D,

October 4, 2018, that the property was "presently free of the recording of the Non-Merger Warranty Deeds conveying all of Thorco's right, title, and interest in the Property to WCU." This finding confirmed that as of October 4, 2018 the deeds had never been recorded and had not legally conveyed the property.
Bates DT001006-DT001025

**F. Frampton's Unauthorized Retaliatory Deed Recording - October 25, 2018:**
On October 23-24, 2018, Plaintiff Dennis Thornton filed a Satisfaction of Mortgage and certified copies of ROA 231 and ROA 233 asserting his property rights. On October 25, 2018 - just ONE DAY later - WCU's attorney Sean Frampton recorded the Non-Merger Warranty Deeds without authorization, in direct violation of the Settlement Agreement's escrow requirements, in defiance of Judge Wilson's binding findings, and in direct retaliation for Plaintiff's assertion of his property rights. Four days later on October 29, 2018, Frampton filed ROA 61 seeking a court order to remove Thornton's recordings from the public record.
Bates DT001075-DT001123

DT001059-DT001067 October 25, 2018 Sean Frampton records deeds from and unexecuted non-reserved

## IV. WCU'S OWN ADMISSIONS THAT THORCO OWNS THE PROPERTY:

WCU's attorney Sean Frampton made the following explicit admissions in written communications and signed court pleadings over a period of years - all part of the public court record available to the Flathead County Attorney's Office:

### A. April 6, 2018 Email - Filed as Court Exhibit in ROA 12 pg 112:

*"The Settlement Agreement cannot 'create ownership.' Thorco owns the property and WCU holds a mortgage on the property."*
Bates DT000900

### B. ROA 12, DV-18-336D, May 10, 2018 - Motion to Set Aside Default:

1. Page 4: *"Neither party deposited their respective documents with First American Title"* - confirming escrow was never completed
   Bates DT000792
2. Page 13: *"company, Thorco, who owns the property"* - direct judicial admission
   Bates DT000801

3. Page 15: *"the property is owned by Thorco, not Thorntons"* - second direct judicial admission
Bates DT000803

4. Page 15: *"WCU's mortgage, which had been recorded since 2009"* - confirms mortgage not ownership
Bates DT000803

5. Page 31 (Settlement Agreement Exhibit): *"real estate tax notices were and will be received by Thorco"* - contractual admission of Thorco's ownership
Bates DT000819

## C. ROA 29, DV-18-336D, July 5, 2018 - WCU's Answer:

1. Paragraph 6: WCU admits Settlement Agreement held at Frampton Purdy Law Firm Bates Stamped DT000936

2. Paragraph 7: *"WCU admits that it did not open an escrow"* - formal judicial admission in WCU's own Answer
Bates DT000936

## D. ROA 32.1, DV-18-336D, July 24, 2018 - WCU's Motion for Summary Judgment:

1. Page 6: *"Thorco, Inc. holds title to the property. (See Deeds, Exhibit L)"* - WCU submitted deeds to court as proof of Thorco's title
Bates DT000944

2. Page 10: *"Thorco, Inc.'s property"* and WCU describes itself as a *"creditor"*
Bates DT000948

3. Page 10: Title Commitment attached as Exhibit M showing WCU's original mortgage of $3,360,000 recorded March 24, 2009
Bates DT000948

4. Page 13: *"The Settlement Agreement [was a] legal means to achieve repayment"* - not an ownership transfer
Bates DT000951

5. Page 15: *"Thorco, Inc. is, indeed, in default on his loan"* - confirms loan not ownership relationship
Bates DT000953

6. Page 16: *"The only Judgment WCU received was on February 23, 2016. However, that Judgment was vacated on August 16, 2016"* - WCU admits

no valid judgment
Bates DT000954

7. Page 16: *"it is undisputed that WCU is not causing any cloud on Thorntons' real [title]"* - WCU admits clear title to Thorco
Bates Stamped DT000954

## E. ROA 40, DV-18-336D, August 31, 2018 - WCU's Reply to MSJ:

1. Page 6-7: WCU told potential buyer Harshbarger in October 2017 that property was in foreclosure - false statement made 14 months after foreclosure was vacated demonstrating WCU's pattern of false representations
Bates DT000963

2. Page 12: *"the total indebtedness on the Thorco loan"* remains on WCU's books - WCU refers to it as "the Thorco loan" not WCU's property
Bates DT000969

## F. ROA 61, DV-18-336D, October 29, 2018 - WCU's Motion to Amend Judgment:

1. Page 4: References *"Thorco's mortgage"* - confirming mortgage belongs to Thorco's property
Bates DT001079

2. Page 4: *"recording Thorco's mortgage was lawful and the only way to release it is for Thorco to pay the debt"* - confirms debt relationship not ownership
Bates DT001079

## V. BINDING JUDICIAL FINDINGS CONFIRMING THORCO'S OWNERSHIP:

## A. District Court Judge Dan Wilson - ROA 56, October 4, 2018:

1. Page 11: *"The original mortgage is securing an unpaid debt and its recording is authorized by law"* - judicial finding that WCU holds mortgage not ownership
Bates DT001017

2. Page 12: *"The Thorntons cannot show that continuing to own the Property"* - explicit judicial finding that Thorntons/Thorco are continuing to own the property
Bates DT001018

3. Page 12: Property was *"presently free of the recording of the Non-Merger Warranty Deeds conveying all of Thorco's right, title, and interest in the Property to WCU"* - deeds never recorded therefore never legally conveyed property
Bates DT001018

4. Page 12: *"The original mortgage is not a cloud on the title of the Property"* - clear title to Thorco
Bates DT001018

5. Page 12: *"The Thorntons have not shown that continuing to own the Property has caused them to suffer any compensable damages"* - second explicit finding of continuing ownership
Bates DT001018

6. Pages 13-14: *"WCU's loan to Thorco, Inc., personally guaranteed by the Thorntons, remains in default and owing"* - confirms loan relationship
Bates DT001019 & Bates Stamped DT001020

7. Page 16: *"it is not disputed that the underlying loan is in default and that the mortgage on the Property merely secures payment of the loan"* - **definitive judicial finding that the mortgage merely secures payment and does not constitute ownership**
Bates DT001022

**B. Montana Supreme Court - ROA 71, June 27, 2019:** The Montana Supreme Court affirmed the District Court's ruling and made the following binding findings:

1. Paragraph 8, Page 5: *"The original mortgage is securing an unpaid debt and its recording is authorized by law...The District Court correctly interpreted the Settlement Agreement"* - highest court confirms mortgage relationship and settlement agreement as debt repayment mechanism
Bates DT001130

2. Paragraph 9, Page 6: *"the original mortgage accurately reflected what the Thorntons owed and cannot be considered a cloud on the title"* - **Montana Supreme Court explicitly finds WCU's mortgage cannot be considered a cloud on title**
Bates DT001131

3. Paragraph 10, Page 6: *"the original loan amount remained due and owing"* - confirms loan not ownership relationship
Bates DT001131

These findings by the Montana Supreme Court were made on June 27, 2019 - over two years before the criminal complaint was filed on November 29, 2021. The

highest court in Montana had explicitly found that WCU's mortgage "cannot be considered a cloud on the title" directly contradicting the criminal complaint's assertion that "WCU owns the property."

## VI. WCU'S BANKRUPTCY FILINGS CONFIRMING MORTGAGE NOT OWNERSHIP:

In Case 17-61219-BPH, Thorco's Second Bankruptcy, WCU filed Proof of Claim No. 10 on April 26, 2018, claiming:
Bates DT000767-DT000769

1. Item 7: Claim Amount of $1,400,000
   Bates DT000768
2. Item 8: Secured Amount of $1,400,000
   Bates DT000768
3. Item 9 Basis for Perfection: **Recorded Mortgages**
   Bates DT000768
4. Item 9 Amount Necessary to Cure Default: **N/A**
   Bates DT000768

WCU's own bankruptcy filing identified its interest as a secured mortgage claim - not an ownership interest. WCU's attorney Dean Stensland filed this claim
Bates DT000769

## VII. WCU'S BANKRUPTCY FILINGS CONFIRMING MORTGAGE, NOT OWNERSHIP

In Case No. 17-61219-BPH, Thorco's Second Bankruptcy, WCU filed Proof of Claim No. 10 on April 26, 2018, claiming: *Bates Stamped DT000767–DT000769.*

1. Item 7: Claim Amount of $1,400,000. *Bates DT000768.*
2. Item 8: Secured Amount of $1,400,000. *Bates DT000768.*
3. Item 9, Basis for Perfection: Recorded Mortgages. *Bates DT000768.*
4. Item 9, Amount Necessary to Cure Default: N/A. *Bates DT000768.*

WCU's own bankruptcy filing identified its interest as a secured mortgage claim — not an ownership interest. WCU's attorney Dean Stensland filed this claim. *Bates DT000769.*

## VII. MONTANA LEGISLATIVE TESTIMONY CONFIRMING LEGAL PRINCIPLES – FEBRUARY 14, 2022

On February 14, 2022, testimony was given before the Montana Legislature confirming the fundamental legal principles applicable to this case. This testimony was given after the criminal complaint was filed on November 29, 2021, and directly confirms the legal standards that should have been applied before the criminal complaint was filed.

**A. Borrower Rights – Testimony of Ms. Hall:**

Rep. Noland: *"Mr. Chairman, are borrowers entitled to their loan files?"* Ms. Hall: *"Yes."* Bates DT002377

This confirms Thorco's rights as borrower and property owner.

**B. Mortgage Lien Usage – Testimony of Ms. Hall:**

Rep. Noland: *"Commissioner Hall, can a recorded mortgage lien be used for any other obligation?"* Ms. Hall: *"Mr. Chair, members of the committee. No."* Bates DT002370

This confirms WCU's mortgage could not be used to claim ownership or any interest beyond the original loan obligation.

**C. Single Action for Foreclosure – Testimony of Ms. Hall:**

Rep. Noland: *"Ms. Hall, is there only one action for foreclosure?"* Ms. Hall: *"There is a single action for foreclosure. Yes."* Bates DT002377

This directly confirms MCA § 71-1-222's Single Action Rule and that WCU exhausted its only foreclosure action in DV-12-174B, which was vacated and dismissed with prejudice.

**D. Vacated Judgment – Testimony of Ms. Hall:**

Rep. Noland: *"Ms. Hall, if a judgment in a foreclosure lawsuit is vacated, is the judgment still owed?"* Ms. Hall: *"No, Mr. Chair, members of the committee. No. The judgment is not still owed."* Bates DT002378

This directly confirms that WCU's foreclosure judgment, vacated on August 16, 2016 by ROA 231, was permanently extinguished and WCU had no remaining judgment against Thorco or the property.

**E. Dismissal with Prejudice – Testimony of Ms. O'Sullivan:**

Rep. Noland: *"Ms. O'Sullivan, if a foreclosure lawsuit is dismissed with prejudice, is it considered adjudicated on the merits?"* Ms. O'Sullivan: *"If you're talking about the Thornton case and it was a voluntary dismissal with prejudice. Yes."* Bates DT002379

This directly confirms that the August 24, 2016 dismissal with prejudice in ROA 233 was adjudicated on the merits and constituted res judicata as to all claims WCU had or could have raised against Thorco and the property.

**F. Final Confirmation – Testimony of Ms. O'Sullivan:**

Rep. Noland: *"If it's dismissed with prejudice — it's done, it's discharged. How can it not happen if it's dismissed with prejudice?"* Ms. O'Sullivan: *"The lawsuit is done. Yes, that is correct. I'm sorry, Mr. Chair, members of the committee — it's done."* Bates DT002380

The Montana Legislature's own legal experts confirmed that the dismissal with prejudice in ROA 233 was final, complete, and fully discharged, directly contradicting any claim by WCU that it retained any ownership interest or legal claim to the property following the August 24, 2016 dismissal with prejudice.

This legislative testimony, given on February 14, 2022 — less than three months after the criminal complaint was filed on November 29, 2021 — confirms that the fundamental legal principles governing this case were well established and publicly acknowledged. The testimony directly confirms that:

1. WCU's foreclosure judgment was permanently extinguished when vacated;
2. WCU exhausted its single foreclosure action;
3. The dismissal with prejudice was final and complete;
4. A mortgage lien cannot be used for any purpose beyond its original obligation; and
5. These principles were so well established that Montana's own legal experts confirmed them before the Montana Legislature.

**VII. DENNIS THORNTON'S SWORN THEFT COMPLAINT – AUGUST 18, 2021**

On August 18, 2021, Dennis Thornton, as President of Thorco Inc. and on behalf of himself and his wife Donna Thornton, filed a sworn theft complaint with the Flathead County Sheriff's Office under Incident Number CR# 2021-30528, submitted under penalty of perjury. The complaint was directed to Sheriff Brian Heino and Cpl. Westfall and was simultaneously sent to Rep. Derek Skees, Rep. Mark Noland (Bank Oversight Committee), and Sen. Mark Blasdel. This sworn complaint — filed over three months before WCU's criminal complaint against Thornton on November 29, 2021 — establishes the following critical facts:

**A. The Unauthorized Transfer of Thorco's Property – October 25, 2018:** On October 25, 2018, WCU's attorney Sean Frampton electronically transferred the ownership of 24 tracts of land totaling 500 acres from Thorco Inc. to Whitefish Credit Union using invalid deeds. The deeds originated from the June 8, 2016 Settlement Agreement, which was never properly completed, recorded, approved by, or reserved by the court. Dennis and Donna Thornton and Thorco Inc. were instructed by counsel to sign the Settlement Agreement and deliver it to WCU's counsel Sean Frampton so that WCU's required signatures could be added and the escrow required in the agreement could be opened at First American Title Company. WCU stripped the deeds from the Settlement Agreement and transferred ownership of the property with no court order authorizing such transfer.

**B. The Deeds Were Security Deeds – Not Deeds in Lieu:** The deeds provided in the Settlement Agreement were security deeds, not deeds in lieu of foreclosure. Under MCA § 71-1-202, a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale. Deeds in lieu must be transferable on the date given — all others are considered security deeds. *Bates DT002229- DT002236*

## VIII. PRIVATE INVESTIGATOR SWORN TESTIMONY CONFIRMING THORCO'S OWNERSHIP – NOVEMBER 16, 2022

On November 16, 2022, Private Investigator Katherine Wilson, Agent for Cogburn Enterprises LLC, conducted a sworn investigative interview with Rae Albert of Title Financial Specialty Services ("TFSS") regarding the Satisfaction of Mortgage dated May 12, 2022. This interview was conducted under oath before an undersigned authority. The following key admissions were made by Rae Albert, a representative of TFSS — the entity that executed the Satisfaction of Mortgage on WCU's behalf under the July 23, 2014 Special Power of Attorney:

**A. TFSS Confirmation of Authority to File Satisfaction of Mortgage:**

Question (K): *"I am going to confirm that you, Title Financial Specialty Services, had the authority to file the Satisfaction of Mortgage on May 12, 2022, regarding the Thorco Inc. property, loan #9669-428-0750/12. Do you currently have the authority in the document?"* Answer (R): *"Yes."* Bates DT002433

This confirms TFSS had full legal authority to execute and file the Satisfaction of Mortgage under WCU's Power of Attorney.

**B. WCU Requested the Satisfaction of Mortgage – Donna Goodrich:**

Question (K): *"Can you tell me who at WCU requested the Satisfaction of Mortgage be filed?"* Answer (R): *"I am not sure if I can tell that, ah yes, it was Donna Goodrich."* Bates DT002433

This confirms WCU internally authorized and requested the satisfaction, with Donna Goodrich at WCU (phone: 406-758-0464) making the request, directly demonstrating that WCU knowingly authorized the release of its lien while simultaneously claiming ownership through improperly recorded deeds.

**C. TFSS Confirms Thorco Is the Owner – First Confirmation:**

Question (K): *"Does this Satisfaction of Mortgage show Thorco, Inc. is the owner or does someone else own the property?"* Answer (R): *"Yes, the owner shown is Thorco, Inc. WCU only had a lien on it."* Bates DT002433

This sworn confirmation from the entity that executed the Satisfaction of Mortgage establishes that:

1. Thorco, Inc. is the owner of the property;
2. WCU only had a lien on the property;
3. WCU did not have ownership or title; and
4. WCU only ever held a lien interest.

**D. TFSS Confirms Thorco Is the Owner – Second Confirmation:**

Question (K): *"So, when it says 'fully paid, satisfied, released and discharged', does that mean they no longer owe the $3.36 million on it or that they are the owners of the property?"* Answer (R): *"Yes, they would be the owners. I can't speak to any other..."* Bates DT002433

This constitutes a second sworn confirmation from TFSS that Thorco, Inc. are the owners of the property, made by the entity that executed the Satisfaction of Mortgage under WCU's own Power of Attorney.

**E. TFSS Confirms WCU Only Had a Lien – Third Confirmation:**

Question (K): *"Why, if Thorco was the owner, would WCU say they were the owners and sell the property to a Mo Somers, LLC?"* Answer (R): *"I don't know, they only had a lien on the property. You would have to do a little research to see if there were any other liens."* Bates DT002434

This constitutes a third sworn confirmation that WCU only had a lien on the property, made in direct response to the revelation that WCU claimed ownership and sold the property to Mo Somers, LLC while Thorco was the actual owner. This statement raises critical issues, including:

1. WCU claimed to own property on which it only held a lien;
2. WCU sold the property to Mo Somers, LLC without legal authority to do so;
3. TFSS — WCU's own authorized agent — confirms WCU had no ownership interest;
4. WCU's sale of Thorco's property to Mo Somers, LLC constitutes a potentially fraudulent conveyance; and
5. This further demonstrates WCU's consistent pattern of misrepresenting the property's status to advance its financial interests.

**F. TFSS Confirms Thorco's Ownership as Basis for Sending the Release Letter:**

Question (K): *"So, according to this document, as of May 12, 2022, Thorco, Inc. was the owner of the property listed in the Satisfaction of Mortgage and that's why you sent them that letter?"* Answer (R): *"Yes."* Bates DT002434

This constitutes a final sworn confirmation that as of May 12, 2022, Thorco, Inc. was the owner of the property and that TFSS sent the satisfaction and release letter directly to Thorco as the property owner. *Bates DT002430 -DT002773*

The sworn testimony of Rae Albert of TFSS constitutes independent third-party confirmation, made under oath, that:

1. Thorco, Inc. is and was the owner of the property;

2. WCU only ever held a lien on the property;
3. WCU had no ownership interest in the property;
4. WCU's claim of ownership and sale of the property to Mo Somers, LLC was made without legal authority; and
5. The criminal complaint's assertion that "WCU owns the property" was factually false and directly contradicted by WCU's own authorized agent under oath.

This testimony, combined with the Montana Supreme Court's June 27, 2019 findings, WCU's own judicial admissions, and the 2022 Satisfaction of Mortgage, conclusively establishes that no reasonable basis existed for the criminal complaint filed against Dennis Thornton on November 29, 2021. *Bates DT002430 - DT002436*

## IV. PRIVATE INVESTIGATOR'S SECOND SWORN AFFIDAVIT CONFIRMING WCU ONLY HELD A LIEN AND LACKED VALID OWNERSHIP AUTHORITY – SECOND AFFIDAVIT BEGINNING AT *Bates DT-002437 -DT002445*

In her **Second Sworn Affidavit**, beginning at **Bates stamp DT-002437**, Private Investigator **Katherine Wilson, Agent for Cogburn Enterprises LLC**, set forth the results of her investigation into the **May 12, 2022 Satisfaction of Mortgage**, the public land records concerning the Thorco property, the authority claimed for later deed transfers, and related regulatory and licensing issues. Her sworn findings establish the following:

### A. Wilson Confirmed WCU's Recorded Interest Was a Mortgage Lien, Not Ownership

Wilson's affidavit reflects that WCU's recorded interest in the Thorco property arose from mortgage and loan documents filed in Flathead County, Montana. Those documents identify WCU as a **secured creditor** holding a mortgage lien, not as the owner of the property.

This confirms that:

1. WCU was acting as a lender;
2. the property served as collateral for a debt; and
3. WCU's interest was a **lien interest**, not title ownership.

**B. Wilson Confirmed the Property Continued to Be Treated as Thorco's Collateral, Not WCU's Owned Asset**

Wilson further reviewed collateral and loan records showing the property continued to be treated as collateral securing the debt. Nothing in those materials converted WCU's lien position into lawful ownership of the property.

This confirms that:

1. Thorco remained the owner unless title was lawfully transferred;
2. WCU's remedy, if any, was through enforcement of its security interest; and
3. default or nonpayment did not automatically vest ownership in WCU.

**C. Wilson Confirmed Thorco's Rights Were Inconsistent with Any Claim That WCU Had Already Become Owner**

Wilson's affidavit addresses the legal and factual posture of the property and reflects that Thorco retained rights inconsistent with WCU already being the owner. Her findings are incompatible with any theory that WCU automatically acquired title merely because of default, maturity, or foreclosure-related proceedings.

This further demonstrates that:

1. a lender does not become owner simply because a borrower defaults;
2. lawful foreclosure and valid transfer procedures would still be required; and
3. WCU could not lawfully claim ownership absent a valid conveyance or completed legal process transferring title.

**D. Wilson Confirmed TFSS Recorded the May 12, 2022 Satisfaction of Mortgage at WCU's Request**

Wilson's affidavit states that on **May 12, 2022, Title Financial Specialty Services ("TFSS"),** acting at the request of WCU, recorded a **Satisfaction of Mortgage** concerning the Thorco property.

The affidavit reflects that the Satisfaction of Mortgage states in substance that the debt secured by the mortgage was **fully paid, satisfied, released, and discharged**, and that the lien was released.

This confirms that:

1. WCU caused its own mortgage lien to be released through its authorized agent;
2. TFSS was acting on WCU's behalf, not independently;
3. the recorded document treated WCU as a **lienholder**, not an owner; and
4. the May 12, 2022 filing extinguished the mortgage lien WCU claimed against the property.

## E. Wilson Confirmed the Public Record Did Not Establish Proper Conveyance Authority for the Later Deed Transfers

Wilson further investigated later **warranty deed** recordings and the claimed authority behind those documents. Her affidavit reflects that her records review did not establish the required valid conveyance authority necessary to lawfully transfer title in the manner later claimed.

This is significant because it confirms that:

1. the later deed-based ownership claim was not supported by clearly established transfer authority;
2. mortgage-related authority is not the same as conveyance authority; and
3. WCU's later title claim was inconsistent with the public record and the prior mortgage release.

## F. Wilson Confirmed Mortgage and Lien Documents Are Not the Same as Title Conveyance Documents

Wilson's affidavit reflects that she reviewed the nature of the documents on file with public offices, including whether the recorded instruments actually conveyed ownership or merely related to mortgage servicing, lien release, or related authority.

Her findings support the conclusion that:

1. documents authorizing mortgage servicing or lien release do not automatically authorize a transfer of title;
2. a power related to a mortgage is not the same as a deed conveying ownership; and
3. WCU could not lawfully transform a lien position into title ownership by relying on mortgage-related documents.

## G. Wilson Confirmed Montana Lien Principles Distinguish a Lienholder from an Owner

Wilson's affidavit also references Montana lien principles establishing that a lien on property is not the same as ownership of that property. A lien gives the holder a claim against property; it does not transfer title.

This constitutes further confirmation that:

1. WCU's lien rights did not make WCU the owner;
2. title remained with Thorco unless lawfully conveyed; and
3. any claim by WCU that it "owned" the property was contrary to basic lien law and the recorded mortgage history.

## H. Wilson Conducted Additional Regulatory Inquiry Concerning TFSS and Related Title/Insurance Authority Issues

On the final page of her affidavit, Wilson states that she contacted state financial and insurance regulatory personnel concerning TFSS and related title-insurance producer or licensing issues. This shows her investigation extended beyond county land records and included independent regulatory inquiry into the authority and status of the parties involved.

This further demonstrates that:

1. Wilson undertook an independent multi-source investigation;
2. she did not rely solely on local recording records; and
3. she sought verification concerning the legal status and authority of the entities involved in the mortgage release and related title matters.

## I. Wilson Completed the Investigation and Reduced Her Findings to a Sworn Affidavit

Wilson states under penalty of perjury under the laws of the State of Montana that the contents of the affidavit are true and correct and further indicates that the investigation was completed within the time period stated in the affidavit.

This confirms that her findings were formally completed, sworn, and submitted as part of an investigative process.

The sworn **Second Affidavit of Katherine Wilson** constitutes additional investigative confirmation that:

1. WCU's interest in the Thorco property was a **mortgage lien**, not ownership;
2. TFSS recorded the **May 12, 2022 Satisfaction of Mortgage** at WCU's request and on WCU's behalf;
3. the debt and mortgage were represented in the public record as **fully paid, satisfied, released, and discharged**;
4. WCU's lien was released and extinguished by the recorded Satisfaction of Mortgage;
5. later deed-based ownership claims were not supported by clearly established conveyance authority;
6. mortgage-related authority and title-conveyance authority are legally distinct; and
7. WCU's later claim of ownership was inconsistent with the land records, Montana lien law, and the acts of its own authorized agent.

This sworn affidavit, beginning at **DT-002437**, further corroborates the **June 27, 2019 Montana Supreme Court findings**, **WCU's judicial admissions**, the **May 12, 2022 Satisfaction of Mortgage**, and the **November 16, 2022 sworn testimony of Rae Albert of TFSS**, all of which establish that WCU did not own the property and that any contrary representation was factually false. *Bates DT-002437 - DT002445*

## X. PRIVATE INVESTIGATOR'S THIRD SWORN AFFIDAVIT CONFIRMING THE SAMR DID NOT CREATE VALID DEEDS IN LIEU OF FORECLOSURE, THAT THE DEEDS WERE ESCROW DOCUMENTS, AND THAT WCU STILL LACKED VALID OWNERSHIP AUTHORITY – THIRD AFFIDAVIT BEGINNING AT *DT002446-DT002460*

In her Third Sworn Affidavit, spanning fifteen pages, Private Investigator Katherine Wilson, PSP, Agent for Cogburn Enterprises LLC, set forth the results of her investigation into whether the June 8, 2018 Non-Merger Warranty Deeds constituted valid Deeds in Lieu of Foreclosure, the terms of the Settlement Agreement and Mutual Release ("SAMR"), the escrow instructions, the Realty Transfer Certificate, WCU's proof of claim, the continuing status of the 2009 mortgage, and the lack of any sheriff's sale or other lawful title-transfer procedure. Her sworn findings establish the following:

**A. Wilson Confirmed the Only Deeds She Located Were the June 8, 2018 Non-Merger Warranty Deeds Created Under the SAMR, Not True Deeds in Lieu of Foreclosure**

Wilson's affidavit reflects that the only deeds she located concerning the subject property were the Non-Merger Warranty Deeds executed in connection with the June 8, 2018 Settlement Agreement and Mutual Release. Her investigation did not establish that Thorco voluntarily delivered true Deeds in Lieu of Foreclosure to WCU.

This confirms that:

1. the controlling deed documents arose out of the SAMR settlement structure;
2. those deeds were identified as Non-Merger Warranty Deeds, not as Deeds in Lieu of Foreclosure; and
3. WCU's later attempt to characterize them as Deeds in Lieu of Foreclosure was not supported by the face of the documents Wilson reviewed.

**B. Wilson Confirmed the SAMR Required Escrow and Created a Conditional Settlement Framework Rather Than an Immediate Transfer of Ownership to WCU**

Wilson further reviewed the Settlement Agreement and Mutual Release and found that the agreement required the parties to use escrow through First American Title. The SAMR also provided Thorco an option to purchase and contemplated releases and deeds being deposited into escrow and handled according to the settlement terms.

This confirms that:

1. the deeds were part of a conditional settlement and escrow arrangement;
2. the SAMR did not provide for an immediate, unconditional vesting of ownership in WCU; and
3. Thorco retained contractual rights inconsistent with the theory that WCU had already become owner by deed in lieu.

**C. Wilson Confirmed WCU Did Not Properly Complete the Escrow Structure Required by the SAMR**

Wilson's affidavit states that although the SAMR envisioned escrow through First American Title, WCU did not properly place the deeds into the required escrow process. Instead, the documents were reportedly held by WCU's counsel rather than handled through the escrow mechanism called for by the settlement.

This confirms that:

1. WCU did not perform the escrow steps required by the governing settlement;
2. holding deeds through counsel was not the same as completing a valid escrow transfer; and
3. WCU's later reliance on those deeds as if they had already transferred ownership was inconsistent with the settlement's required procedure.

## D. Wilson Confirmed the Parties' Conduct Was Inconsistent with Any Genuine Deed-in-Lieu Transaction

Wilson's affidavit reflects that the surrounding conduct of the parties did not match the legal definition of a deed in lieu of foreclosure. She specifically noted that if these had truly been Deeds in Lieu of Foreclosure, WCU would not have needed later permission or additional steps to record and use them, and the transaction would not have remained subject to escrow disputes and option rights.

This further demonstrates that:

1. a true deed in lieu requires a voluntary turnover of ownership to avoid foreclosure;
2. the deeds here were treated as controlled settlement instruments, not as completed deeds in lieu; and
3. WCU's later deed-in-lieu characterization was contradicted by the actual structure and operation of the transaction.

## E. Wilson Confirmed WCU's Own Realty Transfer Certificate Did Not Identify the Transaction as a Deed in Lieu of Foreclosure

Wilson also reviewed the Realty Transfer Certificate prepared in connection with the later recording of the deeds. Her affidavit reflects that the certificate did not identify the transfer as a Deed in Lieu of Foreclosure, but instead checked "other."

This is significant because it confirms that:

1. WCU's own transfer paperwork did not classify the transaction as a deed in lieu;
2. the later deed-in-lieu narrative was not consistent with the contemporaneous transfer documentation; and
3. WCU's own filing conduct undermined its later claim that the deeds were intended and treated as Deeds in Lieu of Foreclosure.

**F. Wilson Confirmed WCU's Own Proof of Claim and Mortgage Records Continued to Treat the 2009 Transaction as Mortgage Debt Secured by Real Estate, Not Ownership**

Wilson's affidavit reflects that WCU's proof of claim and related mortgage records continued to identify the 2009 transaction as a debt secured by real estate. She also referenced Montana lien principles establishing that a lien secures performance of an obligation and does not itself transfer title.

This confirms that:

1. WCU's own filings treated its interest as secured debt, not ownership;
2. the 2009 mortgage remained a lien-based security instrument; and
3. WCU's later ownership claim was inconsistent with both Montana lien law and WCU's own sworn or filed positions.

**G. Wilson Confirmed the Debt Was Not Cancelled or Released in 2018, Which Is Inconsistent with Any True Deed in Lieu of Foreclosure**

Wilson further found that the debt secured by the 2009 mortgage was not treated as extinguished in 2018. Her affidavit reflects that WCU continued to carry the debt and that the mortgage remained of record until the later Satisfaction of Mortgage recorded on May 12, 2022.

This confirms that:

1. the alleged 2018 deed transaction did not cancel the underlying mortgage debt;
2. the mortgage was not released when the deeds were signed or later recorded in 2018; and
3. the continued existence of the debt and mortgage is fundamentally inconsistent with the claim that WCU had already received a valid deed in lieu of foreclosure.

## H. Wilson Confirmed the May 12, 2022 Satisfaction of Mortgage Further Undermined WCU's Deed-in-Lieu Theory

Wilson's affidavit states that the 2009 mortgage remained in place until it was later satisfied and released in May 2022. She treated this as strong evidence that the deeds recorded in October 2018 were not true Deeds in Lieu of Foreclosure because the debt and lien were still being recognized years later.

This further demonstrates that:

1. WCU still regarded the mortgage as active long after the 2018 deed recordings;
2. the lien was not extinguished as part of any supposed deed-in-lieu transaction in 2018; and
3. the 2022 release confirms that WCU remained in the position of a lienholder until it caused the lien to be released.

## I. Wilson Confirmed the Later Recording of the Deeds Was Not Supported by Clearly Established Conveyance Authority and Suffered from Recording Defects

Wilson's affidavit further states that the deeds later recorded on October 25, 2018 were not properly recorded because of multiple defects, including lack of proper conveyance authority, failure to attach the required Realty Transfer Certificate, and other recording and timing deficiencies she identified under Montana law.

This is significant because it confirms that:

1. the later deed recording was not shown to have been supported by valid transfer authority;
2. compliance with recording requirements was not clearly established; and
3. WCU's later title claim rested on documents that Wilson found were not lawfully perfected as ownership-transfer instruments.

## J. Wilson Confirmed No Valid Power of Attorney or Corporate Transfer Authority Was Established for the October 25, 2018 Transfer

Wilson's affidavit also addresses the issue of authority to transfer Thorco's corporate real property. Her findings reflect that she did not locate valid evidence establishing that WCU or its representatives possessed proper authority from Thorco to transfer ownership of the property to WCU on October 25, 2018.

This constitutes further confirmation that:

1. mortgage-related handling authority is not the same as authority to convey title;
2. corporate property could not lawfully be transferred without valid authority from the corporation; and
3. the public record did not clearly establish lawful authority for WCU to record the later deeds as ownership conveyances.

## K. Wilson Confirmed That If WCU Sought Ownership Through Foreclosure Remedies, a Lawful Sheriff's Sale or Equivalent Procedure Would Still Have Been Required

Wilson's affidavit reflects that WCU's 2009 mortgage gave it lien rights only and that, absent a valid deed or lawful completed transfer, WCU would still have needed to proceed through the legally required foreclosure-sale process to obtain ownership. She specifically identified the absence of sheriff's sale procedures and related statutory steps.

This confirms that:

1. a mortgage lien does not automatically mature into ownership;
2. if WCU intended to acquire title through foreclosure, lawful sale procedures were required; and
3. without a valid deed in lieu or completed sheriff's sale process, WCU lacked a lawful basis to claim title ownership.

## L. Wilson Confirmed Thorco Did Not Provide WCU With Valid Deeds in Lieu of Foreclosure on June 8, 2018

Based on her review of the SAMR, the deeds, the Realty Transfer Certificate, the proof of claim, the continued existence of the mortgage debt, the later Satisfaction of Mortgage, and the absence of valid foreclosure-sale procedures, Wilson concluded that neither Thorco, Inc., nor Dennis or Donna Thompson, provided WCU with true Deeds in Lieu of Foreclosure on June 8, 2018.

This confirms that:

1. the June 8, 2018 documents were not valid Deeds in Lieu of Foreclosure;
2. WCU's later use of that label was inconsistent with the governing documents and subsequent records; and

3. any later claim by WCU that ownership had lawfully transferred by deed in lieu was factually unsupported.

## M. Wilson Completed the Investigation and Reduced Her Findings to a Sworn Affidavit

Wilson states under penalty of perjury under the laws of the State of Montana that the contents of her affidavit are true and correct. She further states that the investigation remains ongoing and reserves the right to provide supplemental reports supporting the affidavit.

This confirms that her findings were formally completed, sworn, and submitted as part of an investigative process.

The sworn Third Affidavit of Katherine Wilson constitutes additional investigative confirmation that:

1. the June 8, 2018 Non-Merger Warranty Deeds arose from the SAMR settlement and escrow structure, not from a true deed-in-lieu transaction;
2. the SAMR required escrow handling and preserved rights inconsistent with any immediate transfer of ownership to WCU;
3. WCU did not properly complete the escrow structure required by the SAMR;
4. WCU's own Realty Transfer Certificate did not identify the transfer as a Deed in Lieu of Foreclosure;
5. WCU's proof of claim and mortgage records continued to treat the 2009 transaction as secured debt, not ownership;
6. the debt and mortgage were not extinguished in 2018 and remained in place until the later May 12, 2022 Satisfaction of Mortgage;
7. the later October 25, 2018 deed recording was not supported by clearly established conveyance authority and was affected by recording defects identified in the affidavit;
8. no valid corporate transfer authority or power of attorney was clearly established authorizing WCU to take title by the later deed recording;
9. WCU's lien rights did not make WCU the owner; and
10. absent a valid deed or lawful foreclosure-sale process, WCU lacked lawful ownership authority over the property.

This sworn Third Affidavit further corroborates the June 27, 2019 Montana Supreme Court findings, WCU's judicial admissions, the May 12, 2022

Satisfaction of Mortgage, the November 16, 2022 sworn testimony of Rae Albert of TFSS, and Katherine Wilson's earlier affidavits, all of which establish that WCU did not lawfully acquire ownership of the property and that any contrary representation was factually false. *Bates DT002446- DT002460*

## XI. PRIVATE INVESTIGATOR'S FOURTH SWORN AFFIDAVIT CONFIRMING THE SAMR ESCROW DEPOSITS WERE WITHHELD, THE 2009 MORTGAGE REMAINED IN EFFECT, AND WCU FAILED TO COMPLETE THE REQUIRED SETTLEMENT PERFORMANCE – FOURTH AFFIDAVIT RE: STOLEN DEPOSITS

In her Fourth Sworn Affidavit, styled **"Re: Stolen Deposits,"** Private Investigator Katherine Wilson, Agent for Cogburn Enterprises LLC, set forth the results of her investigation into Thorco Inc.'s 2009 mortgage with Whitefish Credit Union ("WCU"), the deeds and security instruments that were supposed to be deposited into escrow under the Settlement Agreement and Mutual Release ("SAMR"), the continuing status of the 2009 mortgage, the settlement-required credit to Thorco's Member Business Loan ("MBL") account, and the conduct of WCU and its attorneys with respect to the escrow documents. Her sworn findings establish the following:

### A. Wilson Confirmed She Was Retained to Investigate Thorco's 2009 Mortgage and Whether WCU's Counsel Withheld or Misused Deeds and Security Instruments That Were Supposed to Be Deposited Into Escrow

Wilson's affidavit states that she was retained by Dennis and Donna Thornton to analyze Thorco Inc.'s 2009 mortgage with WCU and to determine whether deeds and related security instruments that were supposed to be deposited were instead taken, withheld, or misused by WCU's attorney.

This confirms that:

1. the subject of her investigation included both the 2009 mortgage and the later handling of escrow documents;
2. her inquiry focused not merely on land records, but also on whether documents required to be deposited under the settlement were improperly retained; and
3. the Fourth Affidavit addresses both ownership issues and the mishandling of escrow-related settlement instruments.

**B. Wilson Confirmed the 2009 WCU Transaction Was a Secured Debt Instrument and That the Mortgage Remained in Effect Until Properly Released**

Wilson's affidavit reflects that Thorco entered into a mortgage loan security contract with WCU in 2009 that pledged property as collateral for a line of credit and created a secured debt instrument. She quotes the mortgage terms stating in substance that the security instrument would remain in effect until the secured debt was paid in full and the instrument was released.

This confirms that:

1. WCU's original interest was a secured mortgage lien, not ownership;
2. the 2009 mortgage continued in force unless and until it was lawfully released; and
3. any later claim that WCU had become owner had to be reconciled with the continued existence of the unreleased 2009 mortgage.

**C. Wilson Confirmed TFSS and the 2022 Satisfaction of Mortgage Treated WCU as a Lienholder and Confirmed WCU Only Had a Lien**

Wilson further states that on May 12, 2022, through its authorized agent Title Financial Specialty Services ("TFSS"), WCU caused a Satisfaction of Mortgage to be recorded releasing its claimed interest. Wilson also states that in September 2022 TFSS confirmed to her that WCU only had a lien on the property and that the 2009 mortgage remained in place until it was satisfied.

This confirms that:

1. WCU was still being treated as a lienholder rather than an owner;
2. the mortgage remained operative until the later 2022 release; and
3. TFSS's actions and statements were inconsistent with any claim that WCU had already acquired ownership years earlier.

**D. Wilson Confirmed the 2012 Foreclosure Litigation Concerned Enforcement of the Mortgage Debt, Not Existing Ownership by WCU**

Wilson's affidavit reflects that WCU filed a foreclosure action in 2012 against Thorco Inc. and the Thorntons, obtained a partial summary judgment of foreclosure and sale in 2016, and litigated against the borrower and guarantors on the debt instrument.

This confirms that:

1. WCU was pursuing foreclosure remedies as a creditor;
2. the litigation posture itself recognized Thorco and the Thorntons as adverse parties whose property interests had not already been transferred to WCU; and
3. WCU's own court actions were consistent with lien enforcement, not preexisting title ownership.

**E. Wilson Confirmed the 2016 Settlement Structure Required Specific Performance Steps, Including Escrow Deposits, a Credit to Thorco's MBL Account, Release of the 2009 Mortgage, and Creation of New Mortgages**

Wilson further reviewed the 2016 mediation, Settlement Term Sheet, and SAMR. Her affidavit reflects that the settlement required, among other things, WCU signatures, crediting Thorco Inc.'s MBL account in the amount of approximately $2,948,880, release of the 2009 mortgage, creation of new mortgages, and deposit of the required documents and releases into escrow with First American Title.

This confirms that:

1. the settlement imposed specific conditions and performance obligations on WCU;
2. the escrow deposits were an express and material part of the agreed transaction; and
3. the SAMR contemplated a structured secured transaction, not an immediate unilateral transfer of ownership to WCU.

**F. Wilson Confirmed the SAMR Was the Final Agreement and Superseded Prior Arrangements**

Wilson's affidavit cites the SAMR's final-agreement clause stating that the settlement represented the parties' entire agreement and superseded prior understandings, and that it could be modified only in writing executed by the parties.

This is significant because it confirms that:

1. the SAMR was the controlling document governing the parties' rights and obligations;

2. later conduct inconsistent with the SAMR could not be justified by reference to superseded negotiations or informal understandings; and
3. the required escrow and settlement-performance terms were binding and could not simply be ignored.

## G. Wilson Confirmed the Security Instruments and Related Documents Were To Be Deposited Into Escrow as Collateral and Security, Not Retained Privately by WCU's Counsel

Wilson's affidavit reflects that the signed settlement package included two trust indenture mortgages and related releases that were to be deposited into escrow at First American Title. She further states that these instruments were provided as collateral and security for the new loan structure.

This confirms that:

1. the documents were security and escrow instruments;
2. they were not supposed to remain in private possession outside the escrow process; and
3. their intended function was governed by the SAMR escrow framework rather than by any independent claim of immediate ownership transfer.

## H. Wilson Confirmed the Required Escrow Deposit Was Not Properly Completed and That the Documents Were Instead Kept in Counsel's Office

Wilson states that the required escrow steps were not completed and that, by WCU's own submissions and attorney statements, the documents were kept in the Frampton office rather than properly deposited and processed through escrow as required by the SAMR.

This further demonstrates that:

1. WCU did not complete the settlement performance required to place the documents into escrow;
2. retaining the documents in counsel's office was inconsistent with the escrow instructions; and
3. WCU's later reliance on those documents was inconsistent with the manner in which the settlement required them to be handled.

## I. Wilson Confirmed the Original 2009 Mortgage Was Never Properly Released in 2016 and Therefore Continued to Encumber the Property

Wilson's affidavit reflects that because the SAMR-required steps were not completed and no proper release of the 2009 mortgage was recorded at that time, the original 2009 mortgage remained in full effect. She further states that public records showed no properly recorded replacement instruments sufficient to displace the 2009 superior mortgage before the later 2022 Satisfaction of Mortgage.

This confirms that:

1. the original 2009 mortgage continued to burden the property after the 2016 settlement;
2. the contemplated replacement structure was not properly perfected; and
3. WCU could not lawfully treat the 2009 mortgage as both still in force and already converted into ownership.

## J. Wilson Confirmed Montana Recording Law Required Timely Recording and That the Contemplated Replacement Mortgage Structure Was Not Properly Perfected

Wilson also reviewed Montana recording statutes and concluded that assignments and mortgage-related interests affecting real property had to be timely recorded, including within the statutory twenty-day period she cited. Her affidavit reflects that the required rerecording and recording steps were not properly completed.

This constitutes further confirmation that:

1. the replacement secured arrangement contemplated by the SAMR was not lawfully perfected in the public record;
2. unrecorded or untimely recorded mortgage assignments could not create a superior perfected interest against third parties; and
3. the failure to properly record reinforced the continued dominance of the unreleased 2009 mortgage.

## K. Wilson Confirmed the 2016 Orders Vacating the Foreclosure Judgment and Dismissing the Claims With Prejudice Were Not Appealed and Therefore Became Final

Wilson's affidavit states that in August 2016 the District Court vacated the prior foreclosure judgment and order of sale and dismissed the relevant claims with prejudice pursuant to the parties' settlement. She further states that WCU did not appeal those orders and neither party obtained relief from them.

This confirms that:

1. the foreclosure judgment and order of sale were vacated;
2. the claims addressed in the settlement were dismissed with prejudice; and
3. WCU could not rely on the vacated foreclosure posture as if it still supplied independent authority to seize ownership outside the settlement terms.

## L. Wilson Confirmed WCU Failed to Credit Thorco's MBL Account as Required by the Settlement and Continued Carrying the Debt Internally

Wilson further states that WCU's regulatory reporting showed WCU internally continued to carry a line of credit balance of approximately $2,948,880 after the settlement period, even though that amount was supposed to be credited to Thorco's MBL account under the settlement structure.

This is significant because it confirms that:

1. WCU did not complete a material financial performance obligation required by the SAMR;
2. the settlement was not carried out as contemplated with respect to Thorco's loan account; and
3. WCU's internal treatment of the debt was inconsistent with any claim that the matter had already been fully resolved through a completed property transfer.

## M. Wilson Concluded the Retention and Use of the Escrow Documents Constituted Unlawful Hypothecation and Misuse of Property Held for Security Purposes

Wilson's affidavit cites Montana banking and financial statutes and concludes that WCU, through its own admissions and conduct, unlawfully hypothecated the settlement documents and related security instruments that were supposed to be deposited into escrow. She further states that the documents and property were used while the original 2009 mortgage still remained in place.

This confirms that:

1. Wilson's investigation concluded that the escrow documents were not merely mishandled, but wrongfully retained and used contrary to the settlement;

2. the security instruments were treated in a manner inconsistent with their escrow purpose; and
3. WCU's conduct, as described in the affidavit, did not establish lawful ownership authority.

**N. Wilson Confirmed the Property Was Sold While the 2009 Mortgage Was Still in Place and Before WCU Had Lawfully Completed the Required Settlement and Escrow Steps**

Wilson's affidavit further states that WCU sold the property while the original 2009 mortgage was still in effect and before the required settlement escrow steps had been properly completed. She ties this conclusion to the continued unreleased status of the mortgage until the later Satisfaction of Mortgage.

This further demonstrates that:

1. the property was treated as if ownership had passed even though the original mortgage lien still remained of record;
2. WCU acted inconsistently with the structure of the SAMR and the continuing effect of the 2009 mortgage; and
3. the later asserted ownership chain was incompatible with the unresolved status of the debt and lien.

**O. Wilson Completed the Investigation and Reduced Her Findings to a Sworn Affidavit**

Wilson states under penalty of perjury under the laws of the State of Montana that the contents of the affidavit are true and correct. She also states that the investigation remains ongoing and that she reserves the right to provide supplemental reports supporting the affidavit.

This confirms that her findings were formally completed, sworn, and submitted as part of an investigative process.

The sworn Fourth Affidavit of Katherine Wilson constitutes additional investigative confirmation that:

1. Thorco's 2009 transaction with WCU was a secured mortgage transaction, not an ownership transfer;
2. the 2009 mortgage remained in effect until the later 2022 Satisfaction of Mortgage;

3. TFSS confirmed WCU only held a lien and not ownership;
4. the 2016 SAMR required specific escrow deposits, a credit to Thorco's MBL account, release of the 2009 mortgage, and creation of replacement mortgages;
5. the SAMR was the parties' final controlling agreement and superseded prior understandings;
6. the trust indenture mortgages and related releases were to be deposited into escrow as collateral and security, not privately retained by counsel;
7. the required escrow deposit and settlement performance were not properly completed;
8. the original 2009 mortgage was never properly released in 2016 and remained the superior encumbrance until 2022;
9. the contemplated replacement mortgage structure was not properly perfected under Montana recording law;
10. the vacated foreclosure judgment and dismissal with prejudice did not provide WCU with continuing authority to claim ownership;
11. WCU failed to credit Thorco's MBL account as required by the settlement; and
12. WCU's later conduct with the escrow documents was inconsistent with lawful title acquisition and, as Wilson concluded, constituted unlawful hypothecation and misuse of property held for security purposes.

This sworn Fourth Affidavit further corroborates Katherine Wilson's prior affidavits, the June 27, 2019 Montana Supreme Court findings, WCU's judicial admissions, the 2022 Satisfaction of Mortgage, and the sworn testimony of TFSS personnel, all of which establish that WCU remained a lienholder, failed to complete the settlement-required escrow and release structure, and did not lawfully obtain ownership of the property.

## XII. PRIVATE INVESTIGATOR'S FIFTH SWORN AFFIDAVIT RE: MORTGAGE CONFIRMING THAT WCU HELD ONLY A LIEN, THE SAMR REQUIRED SPECIFIC ESCROW AND MORTGAGE PERFORMANCE, AND WCU DID NOT LAWFULLY COMPLETE A DEED-IN-LIEU OR FORECLOSURE TRANSFER

In her Fifth Sworn Affidavit, styled **"Re: Mortgage,"** Private Investigator Katherine Wilson, Agent for Cogburn Enterprises LLC, set forth the results of her investigation into Thorco, Inc.'s 2009 mortgage with Whitefish Credit Union ("WCU"), the parties' 2016 Settlement Agreement and Mutual Release ("SAMR"), the deeds and mortgage instruments that were to be handled through escrow, the

later recording history, and whether WCU ever lawfully acquired ownership of the subject property. Her sworn findings establish the following:

## A. Wilson Confirmed She Was a Competent Affiant With Personal Knowledge, Investigative Experience, and Authority to State the Facts Set Forth in the Affidavit

Wilson's affidavit states that she appeared before a notarial officer, identified herself as Katherine Wilson, Agent for Cogburn Enterprises LLC, and swore that she was competent to testify to the matters stated and had personal knowledge of the facts set forth in the affidavit. She further states that she had relevant education, training, and investigative experience relating to the matters under review.

This confirms that:

1. Wilson submitted the affidavit as a sworn witness with personal knowledge of the facts she investigated.
2. Her findings were offered in a professional investigative capacity on behalf of Cogburn Enterprises LLC.
3. The affidavit was intended to present factual findings concerning the mortgage, deeds, escrow documents, and related settlement-performance issues.

## B. Wilson Confirmed She Was Retained to Investigate the 2009 Mortgage, the Deeds-in-Lieu Issue, and Whether the Relevant Instruments Were To Be Held in Escrow Rather Than Treated as an Immediate Transfer of Title

Wilson's affidavit reflects that she was retained by Dennis and Donna Thornton to investigate what occurred with Thorco, Inc.'s 2009 mortgage, the deed and mortgage instruments later associated with the parties' settlement, and whether the relevant deeds were intended to be held as escrow collateral rather than used as an immediate transfer of ownership.

This confirms that:

1. The subject of her investigation included both the original 2009 mortgage transaction and the later treatment of deed and security documents.
2. Her inquiry specifically addressed whether the instruments were to be held in escrow as part of the settlement structure.

3. The Fifth Affidavit addresses both mortgage-lien issues and whether WCU later mischaracterized escrow documents as ownership documents.

## C. Wilson Confirmed the 2009 WCU Transaction Was a Secured Mortgage Loan and Created a Lien Rather Than Present Ownership

Wilson's affidavit reflects that Thorco, Inc.'s 2009 transaction with WCU was a mortgage loan security transaction in which property was pledged as collateral for debt, creating a lien or security interest rather than vesting ownership in WCU.

This confirms that:

1. WCU's original recorded interest was that of a secured lender and lienholder, not an owner.
2. The 2009 mortgage had legal effect unless and until it was properly satisfied and released.
3. Any later claim that WCU had become owner had to be reconciled with the fact that the original recorded transaction was a mortgage and lien, not a conveyance of title.

## D. Wilson Confirmed Montana Law Required Proper Acknowledgment, Satisfaction, and Recording Before the 2009 Mortgage Could Be Treated as Released

Wilson reviewed Montana mortgage and recording statutes and concluded that once the secured debt was resolved, the mortgage still had to be properly satisfied, acknowledged, and released in the public record. Her affidavit reflects that the law required more than a private assumption that the debt relationship had changed.

This confirms that:

1. A mortgage lien could not be treated as extinguished without compliance with statutory release and recording requirements.
2. Proper satisfaction and release were necessary to remove the mortgage's legal effect from the public record.
3. Until that occurred, the 2009 mortgage continued to exist as a recorded encumbrance.

## E. Wilson Confirmed the 2016 Settlement Structure Required Specific Performance by WCU, Including Release of the 2009 Mortgage, Credit to the Debt, New Security Instruments, and Escrow Handling of the Documents

Wilson's affidavit reflects that she reviewed the 2016 mediation materials, the Settlement Term Sheet, and the SAMR, and concluded that the settlement imposed specific performance duties on WCU. Those duties included releasing the 2009 mortgage, crediting Thorco's loan or line of credit balance, establishing replacement security arrangements, and handling the deeds and related documents through escrow.

This confirms that:

1. The SAMR did not contemplate an unexplained or unilateral transfer of ownership to WCU.
2. The settlement required affirmative mortgage-performance steps by WCU before the old lien structure could be displaced.
3. The deeds and related documents were part of a structured settlement transaction and not free-floating title instruments.

**F. Wilson Confirmed the SAMR Was the Controlling Agreement and Could Not Be Unilaterally Changed by WCU or Its Counsel**

Wilson's affidavit reflects that the SAMR was the final agreement governing the parties' rights and obligations and that its terms could not be changed except by the parties in writing. Her analysis further reflects that later claims or actions inconsistent with the SAMR could not override the agreement's express terms.

This confirms that:

1. The SAMR superseded prior negotiations or informal understandings.
2. WCU could not later rewrite the settlement by characterizing escrow instruments as an immediate transfer of ownership if that was not what the SAMR provided.
3. Any modification of pricing terms, remedies, ownership status, or document treatment had to be made in conformity with the SAMR itself.

**G. Wilson Confirmed the Deeds, Warranty Deeds, and Related Instruments Were Intended To Function Within an Escrow and Security Framework, Not as an Immediate Completed Deed-in-Lieu Transfer**

Wilson's affidavit reflects that the deeds and related mortgage documents were part of the settlement structure and were to be handled through escrow. She further concluded that the agreement language and surrounding conduct showed the instruments were intended as security-related documents within the SAMR

framework rather than as an immediately completed deed-in-lieu foreclosure transaction.

This confirms that:

1. The deeds were tied to settlement performance and escrow conditions.
2. Their intended function was not simply to vest title in WCU on execution.
3. The legal effect of the instruments had to be determined in light of the SAMR's escrow and performance requirements.

**H. Wilson Confirmed the Required Escrow Handling Was Not Properly Completed and That the Documents Were Instead Retained Outside the Escrow Structure**

Wilson states that the required escrow procedures were not properly carried out and that the documents were retained in counsel's possession rather than being completed and processed through the agreed escrow framework. Her affidavit further reflects that this failure was inconsistent with the settlement instructions and the intended use of the documents.

This confirms that:

1. WCU did not complete the escrow performance contemplated by the SAMR.
2. Retaining the documents outside escrow was inconsistent with the agreed settlement structure.
3. WCU's later reliance on those same documents was inconsistent with the way the documents were supposed to be handled.

**I. Wilson Confirmed the 2009 Mortgage Was Not Timely and Properly Released in 2016 and Therefore Continued To Encumber the Property Until the Later 2022 Satisfaction**

Wilson's affidavit reflects that the 2009 mortgage was not properly released at the time of the 2016 settlement and dismissal. She further notes that the later Satisfaction of Mortgage was not recorded until May 12, 2022, through Title Financial Specialty Services ("TFSS"), acting for WCU.

This confirms that:

1. The original 2009 mortgage remained in place after the 2016 settlement period because the required release steps were not timely completed.
2. WCU continued to be treated in the public record as a lienholder until the later 2022 satisfaction.
3. WCU could not lawfully claim both that the mortgage had already been displaced years earlier and that the mortgage remained unreleased until 2022.

**J. Wilson Confirmed TFSS and the Later Recorded Satisfaction of Mortgage Treated WCU as a Lienholder and Not as the True Owner of the Property**

Wilson's affidavit reflects that TFSS, as WCU's authorized agent, later recorded the Satisfaction of Mortgage and related corrective instruments. She further states that WCU's own later corrective conduct was consistent with the position that WCU held only a lien interest rather than true ownership.

This confirms that:

1. WCU's own later actions recognized the existence of a mortgage that had to be formally satisfied.
2. A lender does not record a satisfaction of mortgage if it had already become owner through a valid and completed prior title transfer inconsistent with that mortgage position.
3. TFSS's conduct materially supports Wilson's conclusion that WCU's real status was that of lienholder, not owner.

**K. Wilson Confirmed the 2016 Foreclosure Judgment and Order of Sale Were Vacated and the Claims Were Dismissed With Prejudice, Eliminating Any Continuing Foreclosure Basis Outside the Settlement**

Wilson's affidavit reflects that the prior foreclosure judgment and order of sale were vacated and that the relevant claims were dismissed with prejudice pursuant to the parties' settlement. She further notes that the settlement terms, rather than the former foreclosure posture, governed the parties' later rights.

This confirms that:

1. The foreclosure judgment and sale order could not continue to supply independent authority after they were vacated.
2. The parties' post-settlement rights were governed by the SAMR and not by the earlier foreclosure case posture.

3. WCU could not rely on a vacated foreclosure framework to justify later seizure or ownership claims outside the settlement terms.

## L. Wilson Confirmed There Was No Properly Completed Foreclosure Sale, Sheriff's Sale, or Other Completed Foreclosure Transfer Establishing Ownership in WCU

Wilson's affidavit reflects that she reviewed public records and related materials concerning foreclosure procedures, notices, and transfer history and concluded that there was no properly completed foreclosure sale process resulting in lawful transfer of ownership to WCU.

This confirms that:

1. WCU did not obtain ownership through a completed judicial foreclosure sale.
2. The record did not support the conclusion that a sheriff's sale or equivalent foreclosure transfer lawfully vested title in WCU.
3. In the absence of a completed foreclosure transfer, WCU's ownership claim had to depend on some other lawful instrument and process, which Wilson concluded was not properly completed.

## M. Wilson Confirmed a Deed-in-Lieu of Foreclosure Requires an Actual Transfer in Satisfaction of Foreclosure Rights, and She Found the Record Inconsistent With a Completed Deed-in-Lieu Transaction

Wilson's affidavit reflects that she investigated the meaning and legal effect of deeds in lieu of foreclosure and concluded that such a transaction requires an actual transfer from borrower to lender in lieu of foreclosure. She further found that the documents, public record, timing, and surrounding conduct were inconsistent with a completed deed-in-lieu transfer having lawfully occurred.

This confirms that:

1. A deed-in-lieu transaction is not established merely by later labeling or argument.
2. The legal prerequisites and record evidence did not support the conclusion that a valid completed deed-in-lieu transfer had occurred.
3. Wilson's investigation found the record inconsistent with WCU having lawfully acquired title through deed in lieu.

**N. Wilson Confirmed Later-Recorded Deeds and Transfer References Were Internally Inconsistent With the Position That WCU Had Lawfully Acquired Immediate Ownership**

Wilson's affidavit reflects that she reviewed later-recorded deed and transfer references, including recorded warranty-deed-related materials and tax or transfer descriptions, and found inconsistencies between those records and the claim that WCU had lawfully acquired ownership through a valid deed-in-lieu or foreclosure process.

This confirms that:

1. The later-recorded instruments did not cleanly match the legal requirements of a completed deed-in-lieu or foreclosure conveyance.
2. The recorded descriptions and later corrections suggested uncertainty or inconsistency in the asserted transfer theory.
3. Those inconsistencies further supported Wilson's conclusion that WCU's ownership claim was not lawfully perfected through the process it later asserted.

**O. Wilson Confirmed WCU Could Not Unilaterally Alter Pricing Terms, Option Terms, or Other Material Settlement Rights After Execution of the SAMR**

Wilson's affidavit reflects that she reviewed the SAMR's operative provisions and concluded that WCU could not unilaterally change material settlement terms, including pricing, option, and performance provisions, outside the agreement's written framework.

This confirms that:

1. WCU lacked authority to privately revise the economic or title-related terms of the settlement after execution.
2. Any later attempt to treat the deeds as giving broader rights than the SAMR allowed was inconsistent with the agreement.
3. The parties' rights had to be measured by the signed settlement documents rather than by later unilateral interpretation.

**P. Wilson Confirmed the Settlement Required Escrow Performance Before WCU Could Claim Rights Based on the Deeds, and That Such Performance Did Not Occur as Required**

Wilson's affidavit reflects that if WCU intended to rely on the deed package as part of the settlement structure, the documents had to be properly handled in escrow and released only in conformity with the SAMR. She concluded that this did not occur.

This confirms that:

1. The deeds were conditional settlement instruments, not self-executing free-standing transfers.
2. WCU's failure to carry out the required escrow structure prevented it from lawfully claiming the benefits of a completed title transfer based on those instruments.
3. The absence of proper escrow performance undermined WCU's later reliance on the deed package as proof of ownership.

**Q. Wilson Confirmed WCU Later Filed a Bankruptcy Proof of Claim and Took Other Actions Inconsistent With the Position That It Had Already Lawfully Become Owner**

Wilson's affidavit reflects that WCU later filed a Proof of Claim in the bankruptcy proceedings and otherwise continued to behave as though debt and lien rights remained in issue. Her affidavit treats this conduct as inconsistent with the theory that WCU had already lawfully and conclusively become owner of the property through a completed transfer.

This confirms that:

1. WCU's later conduct continued to reflect creditor-style behavior rather than the settled posture of a true fee owner whose title had been lawfully perfected.
2. Such conduct is consistent with the continuing existence of unresolved debt, lien, or settlement-performance issues.
3. WCU's own later actions therefore further support Wilson's conclusion that the alleged transfer of ownership was not lawfully completed as claimed.

**R. Wilson Concluded That WCU Did Not Lawfully Acquire Ownership Under the SAMR and That the Public Record Instead Showed WCU Retained Only Mortgage-Lien Status Until the Later Satisfaction**

Wilson's ultimate conclusion, as reflected across the affidavit, is that WCU did not lawfully obtain ownership of the property through a completed deed-in-lieu, completed foreclosure, or proper settlement-performance process. Rather, her investigation found that WCU retained only a mortgage-lien position that remained effective until the later 2022 satisfaction and corrective actions.

This confirms that:

1. WCU's status after the failed settlement performance remained that of a lienholder and creditor, not lawful owner.
2. The 2009 mortgage remained central because it was not properly displaced through timely release, replacement perfection, or valid title transfer.
3. WCU's later claim of ownership was inconsistent with the SAMR, the escrow requirements, the foreclosure record, the public recording history, and WCU's own later satisfaction-of-mortgage conduct.

## XIII. PRIVATE INVESTIGATOR'S SIXTH SWORN AFFIDAVIT CONFIRMING WCU'S 5300 CALL REPORT ACCOUNTING, CHARGE-OFF AND RECOVERY REPORTING, AND THE INCONSISTENCY BETWEEN WCU'S REPORTED LOAN TREATMENT, ITS TITLE POSITION, AND THE LATER 2022 SATISFACTION OF MORTGAGE

In her Sixth Sworn Affidavit, Private Investigator Katherine Wilson, Agent for Cogburn Enterprises LLC, set forth the results of her investigation into Whitefish Credit Union's ("WCU's") regulatory reporting, including its 5300 Call Reports, the accounting treatment of Thorco, Inc.'s debt, the reporting of charge-offs and recoveries, the effect of the 2016 settlement and dismissal, the later transfer and sale activity, and the significance of the 2022 Satisfaction of Mortgage. Her sworn findings establish the following:

**1.** Wilson confirmed that she was acting as a sworn investigator with personal knowledge of the facts she reviewed, and that her affidavit was based on her own investigation, her review of records, and her communications with persons involved in or knowledgeable about WCU's reporting and title practices.

**2.** Wilson states that she was retained by Dennis and Donna Thornton to determine and verify information relating to Thorco, Inc., WCU, and the

treatment of the Thorco loan and property in WCU's records, including the information reflected in expert witness materials and regulatory reporting.

**3.** Wilson further states that she contacted and spoke with Jessica, whom she identified as a person involved with or knowledgeable about WCU's 5300 reporting process, in order to verify whether specific statements in the expert witness report were consistent with the information that would appear in WCU's regulatory call reports.

**4.** Wilson explained that she presented the line items from the expert witness report to Jessica individually and sought verification as to whether the identified entries would be the proper reporting locations for the events described. This confirms that Wilson's affidavit was directed not merely to abstract accounting theory, but to whether the Thorco loan events were reported in the proper lines and categories in WCU's regulatory filings.

**5.** Wilson's affidavit reflects that, as to the initial group of statements drawn from the expert report and the settlement materials, the information concerned the 2016 settlement, the related accounting treatment, and the dismissal of the foreclosure litigation with prejudice. This confirms that the affidavit ties WCU's later reporting obligations directly to the legal effect of the parties' settlement and dismissal.

**6.** Wilson further states that Jessica verified that certain expert-report statements concerning WCU's 5300 reporting categories were true, including statements relating to charge-off treatment and where those amounts would appear in the reports. This confirms that at least part of the expert report's accounting interpretation was consistent with the understanding of the reporting categories used for WCU's 5300 submissions.

**7.** Wilson's affidavit reflects that the Thorco loan charge-off would have appeared, if reported, in the lines used for first mortgage real estate loans and member business loans secured by real estate, and that Jessica stated this would be the place in the call report where such disclosures should be shown. This confirms that the accounting treatment of the Thorco debt was expected to appear in identifiable and traceable categories rather than outside the regular reporting framework.

**8.** Wilson further states that Jessica reviewed the relevant reporting structure and indicated that, if the charge-off involved the Thorco line, the pertinent

disclosure would be found in the 5300 reporting lines used for those loan categories, although Jessica also cautioned that without all of the supporting documents it could be difficult to say with absolute certainty in every instance. This confirms that the affidavit does not present speculation, but rather ties the Thorco entries to the ordinary accounting and reporting architecture used by WCU.

**9.** Wilson's affidavit reflects that certain lines relating to troubled debt restructuring ("TDR") and charge-off categories were identified as the lines where Thorco-related amounts would appear if the debt had been written down, charged off, or otherwise reported as a distressed credit relationship. This confirms that Thorco's debt was being analyzed within the reporting categories associated with impaired or restructured loans, rather than as an asset already converted into ordinary ownership free of debt consequences.

**10.** Wilson further states that the expert report and reporting discussion reflected a charge-off in the approximate amount of $2.9 million, and that if such a charge-off occurred it would have been recognized as an expense and reflected in the appropriate reporting categories. This confirms that WCU's own regulatory reporting treatment was consistent with recognizing debt impairment or loss, not with the clean acquisition of unrestricted title through a fully completed foreclosure or deed-in-lieu transfer.

**11.** Wilson's affidavit also reflects that Jessica agreed it was likely, or at least reasonable to assume, that with the dismissal with prejudice occurring in August 2016, the Thorco debt would have been included within that accounting treatment if that was how WCU processed the matter. This confirms that the settlement and dismissal were material events for purposes of WCU's own internal and regulatory accounting.

**12.** Wilson further states that if the Thorco debt had been charged off or written down in 2016, then any later proceeds from sale, transfer, or recovery of the property would ordinarily need to be reflected as a recovery transaction in later reporting periods. This confirms that later monetization of the property should not simply disappear from WCU's records, but should appear as a recovery in the appropriate call-report lines.

**13.** Wilson's affidavit reflects that the fourth quarter 2018 amended reporting and related later reporting entries were reviewed in light of whether Thorco-related recovery amounts should have appeared in WCU's call reports. This

confirms that the affidavit traces the reporting consequences beyond 2016 and into later periods when WCU's treatment of the property and loan should have produced corresponding recovery entries.

14. Wilson further states that a transfer from Thorco, Inc. to WCU was identified and discussed in terms of whether it should be treated as a real estate investment or real-estate-owned type asset in WCU's reporting. Jessica agreed with that characterization. This confirms that by the time of that transfer analysis, WCU's own records should have reflected the property in the asset categories associated with acquired real estate rather than continuing to blur the distinction between loan, lien, and ownership status.

15. Wilson's affidavit reflects that if WCU sold the property after having previously charged off the Thorco debt, then the sale proceeds should have produced a corresponding recovery entry in the later 5300 reporting. This confirms that the later sale activity carried accounting consequences inconsistent with any attempt to isolate the title history from the loan and charge-off history.

16. Wilson further states that later property valuation and sale information, including a significantly higher property value and later sale proceeds, raised the question whether WCU's reported recoveries matched the economic reality of what WCU ultimately realized from the property. This confirms that the affidavit examines not only whether reporting lines existed, but whether the amount of recovery reported was consistent with the value and disposition of the asset.

17. Wilson also investigated title and recording practices and states that she discussed with Jessica the question of how the property could have been sold while a mortgage still remained in place. Wilson's affidavit reflects that Jessica appeared puzzled by this and indicated that she could not understand how that would have occurred. This confirms that the continued existence of the mortgage was inconsistent even with the practical understanding of those familiar with title-processing procedures.

18. Wilson's affidavit further reflects that she discussed whether WCU had used a CUSO or other separate category in connection with these transactions, and that she also considered testimony indicating that WCU's loan processing department, rather than some unrelated entity, was responsible for recording documents during the relevant period. This confirms that the responsibility for

recording and processing the relevant documents remained tied to WCU's own operations and cannot be easily displaced onto an unidentified outside process.

**19.** Wilson states that she informed Jessica of testimony from WCU personnel indicating that loan processing was responsible for recording documents, and that Jessica again appeared puzzled by the idea that the property could have been sold while the mortgage remained unreleased. This confirms that the title and accounting histories did not align in a way that would support a straightforward or lawfully completed prior transfer theory.

**20.** Wilson's affidavit reflects that on May 12, 2022, at WCU's instruction, Title Financial Specialty Services ("TFSS") recorded a Satisfaction of Mortgage and related corrective instruments concerning the 2009 Thorco loan. This confirms that WCU still had to act as a mortgage lienholder in 2022 by causing a formal mortgage satisfaction to be recorded.

**21.** Wilson further states that she contacted TFSS and discussed the recorded Satisfaction of Mortgage and corrective release materials. Her affidavit reflects that these title actions were inconsistent with any position that WCU had long before become owner free and clear through a completed foreclosure or deed-in-lieu transfer. This confirms that WCU's own later title conduct continued to treat the 2009 mortgage as an operative instrument requiring formal release.

**22.** Wilson's affidavit further reflects that the recording of the Satisfaction of Mortgage in 2022 is significant because a party that had already lawfully become owner in a manner inconsistent with the mortgage would not ordinarily need, years later, to record a mortgage satisfaction to clear the title history of the original lien. This confirms that the 2022 documents materially support the conclusion that WCU remained in the position of mortgage holder rather than completed owner until that release occurred.

**23.** Wilson also states that later annual and quarterly 5300 reporting was reviewed to determine whether the Thorco-related recovery should have appeared in the same charge-off and recovery lines used earlier. Jessica agreed during discussion that the reporting logic supported that conclusion. This confirms that the accounting trail should have remained continuous from the original charge-off through any later recovery.

**24.** Wilson's affidavit reflects that the recovery associated with the Thorco property should have been reported in the same general reporting structure

where the original charge-off had been recognized. This confirms that WCU's accounting treatment, if done correctly, would permit a reviewer to trace the relationship from loan impairment to later recovery.

**25.** Wilson further concludes that the regulatory reporting, settlement history, transfer history, sale activity, and title history do not support a simple claim that WCU had cleanly and lawfully acquired ownership while leaving the 2009 mortgage unresolved. Instead, the records indicate an unresolved mismatch between WCU's treatment of the debt as a charged-off or distressed loan, its later treatment of the property as a real estate asset, and its eventual need to formally satisfy the original mortgage in 2022.

**26.** Wilson's affidavit therefore supports the conclusion that WCU's own reporting and later corrective title actions were inconsistent with any claim that the Thorco matter had been cleanly concluded by a completed foreclosure transfer or deed-in-lieu transaction years earlier. Rather, her sworn findings indicate that WCU's accounting and title actions reflected continuing debt, lien, recovery, and recording issues that remained unresolved until much later.

**27.** Wilson finally states that her investigation remained ongoing and that she reserved the right to provide supplemental reports. This confirms that the Sixth Affidavit was intended as a sworn presentation of verified findings based on the records and discussions she had completed to that point, while preserving the ability to supplement as additional supporting information became available

### Reservation of Rights:

**Reservation of Rights:** Plaintiff submits this filing based on the information presently available and expressly reserves all rights to amend, supplement, correct, clarify, revise, update, and expand any and all factual statements, allegations, claims, arguments, citations, exhibits, and evidentiary references as additional information becomes available through ongoing independent investigation, discovery, public-record review, witness interviews, expert analysis, or other lawful inquiry on a rolling basis. Nothing in this filing shall be construed as a waiver, limitation, or abandonment of any fact, claim, theory, remedy, objection, or right not yet fully stated or supported by materials that may later become available.

# CERTIFICATE OF SERVICE

I, **Dennis Thornton**, certify that on this 7th day of April 2026, I caused a true and correct copy of the foregoing **Plaintiff's Responses to Defendants' First Set of Interrogatories, Requests for Production, and Requests for Admission** to be served upon Defendants, through counsel, by depositing the same in the United States Mail, **First-Class postage prepaid**, together with an index, approximately **3,771 pages or more of Bates-stamped discovery documents**, and a **thumb drive containing all Bates-stamped documents**.

I further certify that, in addition to service by mail, I provided Defendants' counsel with a **Dropbox link** containing the same Bates-stamped documents by electronic service, in accordance with the Court's Scheduling Order.

Service was made as follows:

MOLINDA L. MCCARTY
DYLAN L. GALLAGHER

MACO Counsel

County Litigation Group

2715 Skyway Dr

Helena, MO 59604-6697

DATED: 7th day of April 2026.

DENNIS THORNTON,

Plaintiff Pro Se
151 Amatasia Lane
Kalispell, MT 59901
(406) 261-6814
thorcoinc@outlook.com

Molenda L. McCarty
Dylan L. Gallagher
County Litigation Group
2715 Skyway Drive
Helena, MT 59604-6697
Phone (406) 441-5471
mmccarty@mtcounties.org
dgallagher@mtcounties.org
litigation@mtcounties.org
*Counsel for County Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DENNIS THORNTON,<br><br>    Plaintiff,<br><br>    v.<br><br>TRAVIS AHNER, in his official and individual capacities; ASHLEY FRECHETTE, in her official and individual capacities; MICHAEL NOONAN in his official and individual capacities; and JOHN and JANE DOES 1-10,<br><br>    Defendants. | Cause No.: CV-25-83-M-DWM<br><br><br>DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST DISCOVERY REQUESTS TO DEFENDANTS |

Pursuant to Rules 33, 34 and 36 of the Federal Rules of Civil Procedure,

Defendants Travis Ahner, Ashley Frechete, and Michael Noonan, through their

counsel of record, file this response Plaintiff's First Discovery Requests as follows:

**Exhibit D**

3.      State the complete factual and evidentiary basis for any belief that probable cause existed to initiate or continue the criminal trespass charge against Dennis Thornton, including all evidence relied upon and why any exculpatory evidence (title ambiguities, settlement language, good-faith belief, lack of notice) was disregarded.

Response: Objection. The information sought regarding exculpatory evidence exceeds the scope of Fed. R. Civ. P. 26: Given the limited issues in this matter, as defined by January 23, 2026, *Opinion and Order*, (Doc. 38 at 4-23), information sought is not relevant to claims in this action and not proportional to the needs of the case, considering the importance of the issues at stake, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery that will outweigh its likely benefit. Notwithstanding the objections, the evidence supporting the charge of criminal trespass is contained int eh Complaint previously disclosed as FC000002-FC000003.

4.      Describe all steps taken to verify Whitefish Credit Union's ownership of 890 Boon Rd. as of September 29, 2021, before accepting, filing, or pursuing the trespass complaint, including title searches, deed reviews, communications with the Flathead County Clerk and Recorder, or any other verification efforts.

*County Defendants' Responses to Plaintiffs First Set of Discovery Requests*        5

Response: Criminal prosecutors do not conduct investigations, as part of their job duties, to disprove information reported to law enforcement. Please see Bates Nos.: FC000002-000003 and FC000086-FC000119.

5.    Identify every piece of exculpatory evidence known to you or in your possession, custody, or control regarding Thornton's good-faith belief in ownership or privilege, mistake of fact, lack of knowing unlawful entry, or absence of effective no-trespass notice, including internal memos, emails, notes, reports, title documents, settlement interpretations, or regulatory findings, and explain why each was not disclosed to defense counsel or used to decline/dismiss the charge.

Response: Objection. Vague, ambiguous, and unintelligible, particularly as to what "Thornton's good-faith belief" means. Further, the information exceeds the scope of Fed. R. Civ. P. 26: Given the limited issues in this matter, as defined by January 23, 2026, *Opinion and Order*, (Doc. 38 at 4-23), information sought is not relevant to claims in this action and not proportional to the needs of the case, considering the importance of the issues at stake, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery that will outweigh its likely benefit.

Notwithstanding the objections, Defendants have no knowledge of what Thornton relied upon for his personal beliefs regarding ownership or privilege. Defendants are therefore unable to identify any evidence of the same.

*County Defendants' Responses to Plaintiffs First Set of Discovery Requests*      6

14.    Admit that liens or encumbrances remained unsatisfied as of September 29, 2021.

Response: Objection. The request is vague, ambiguous, and outside the scope of knowledge of Defendants. The request does not specify what liens or encumbrances the request refers to. The request is also overly broad because it could apply to any lien or encumbrance of any individual or entity or any property and is not limited in matter or scope.

15.    Admit that the prosecution violated Thornton's constitutional rights under §1983.

Response: Deny.

16.    Admit that John Does 1-10 participated in suppressing exculpatory evidence.

Response: Objection, vague and ambiguous as to who John Does 1-10 are. Defendants lack sufficient information or belief as to who "John Does 1-10" refer to and therefore deny.

17.    Admit that the criminal case was dismissed on June 15, 2024, due to lack of merit.

Response: Admit that the criminal charge was dismissed without prejudice on June 15, 2024, in the interest of justice. Deny that the charge was dismissed due to lack of merit.

*County Defendants' Responses to Plaintiffs First Set of Discovery Requests*      34

18.     Admit that Whitefish Credit Union misrepresented facts to establish probable cause.

Response: Deny. County Defendants lack sufficient knowledge or belief to admit or deny what a third party represented and therefore deny. County Defendants lack sufficient knowledge or belief to admit or deny what "facts" this request for admission refers to and therefore deny.

19.     Admit that the August 26, 2021 warning was ambiguous and not a clear revocation.

Response: Deny. Commander Buls personally told Dennis Thornton on August 26, 2021, that he was not authorized to access the 890 Boon Road, Somers, MT property.

20.     Admit that no independent title verification was performed before filing the charge.

Response: Objection. Request is vague and ambiguous as to who it refers to having not conducted an independent title verification. Notwithstanding the objection, Defendants admit that they did not conduct an investigation prior to and independent of the charging decision and subsequent prosecution.

21.     Admit that vexatious litigant designation was misused to exclude evidence.

*County Defendants' Responses to Plaintiffs First Set of Discovery Requests*      35

Response: Deny. Mr. Thornton's vexatious litigant designation was not used in the criminal charges that were filed against him and dismissed.

22. Admit that damages were caused by the malicious prosecution.

Response: Deny damages were caused by malicious prosecution. Admit Thornton's malicious prosecution claim in this matter was dismissed with prejudice on January 23, 2026. (Doc. 38 at 26.)

23. Admit that all requested documents are in your possession, custody, or control.

Response: Deny. Responses to requests for production herein identify requested documents that are not in the possession, custody, or control of County Defendants.

24. Admit that responses to these requests will be complete and truthful.

Response: Admit.

25. Admit that the prosecution lacked probable cause from the outset.

Response: Deny.

DATED this 10th day of March 2026.

County Litigation Group

Molenda L. McCarty

*County Defendants' Responses to Plaintiffs First Set of Discovery Requests* 36