# EXHIBIT A

## (ORDER BEING APPEALED)
### ECF #60

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DENNIS THORNTON, | CV 25–83–M–DWM |
| Plaintiff, | |
| vs. | OPINION |
| | and ORDER |
| FLATHEAD COUNTY, et al., | |
| Defendants. | |

Plaintiff Dennis Thornton, proceeding without counsel, has filed a civil

rights complaint under 42 U.S.C. § 1983, alleging Defendant Flathead County and

Individual Defendants Flathead County Attorney Travis Ahner and Deputy County

Attorneys Ashley Frechette, Michael Noonan, and Angela Rolando violated his

constitutional rights and state law in bringing a criminal proceeding against him.

(Doc. 12.) Although Thornton initially alleged nine causes of action, (*see id.*),

most of his claims are barred by absolute prosecutorial immunity, (*see* Doc. 38).

As a result, only two of Thornton's claims remain: his Fourteenth Amendment

fabrication of evidence claim and his state law negligence claim premised on the

same conduct insofar as those claims are brought against Defendants Ahner,

Frechette, and Noonan (collectively, "Defendants"). (*Id.* at 26.) Those claims

survived on the narrow ground that Thornton's pleading could be construed to

1

show that Defendants "fabricated documents" or "engaged in police-type investigation activity prior to the leveling of charges" that would take their conduct outside the protective scope of prosecutorial immunity. (*Id.* at 9–11); *see Genzler v. Longanbach*, 410 F.3d 630, 636–37 (9th Cir. 2005). Defendants then moved for summary judgment. (Doc. 55.) Because Defendants have now presented undisputed facts showing that their conduct fell within the scope of their prosecutorial duties and they are therefore entitled to absolute immunity, *see Imbler v. Pachtman*, 424 U.S. 409, 420 (1976), summary judgment is granted in their favor.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See Soto*

2

*v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018) (explaining that while pro se parties are exempted from "*strict* compliance with the summary judgment rules," they are "not exempt[ed] . . . from *all* compliance," such as the requirement to identify or submit competent evidence in support of their claims).

## ANALYSIS

Instead of showing that Defendants fabricated evidence or performed investigative duties that fell outside their prosecutorial role, the very premise of Thornton's claims continues to be that Defendants failed to engage in an independent investigation of the case. Because that alleged failure falls within the bounds of absolute prosecutorial immunity, Defendants are entitled to summary judgment.

## I. Facts

On January 18, 2022, Frechette filed a criminal complaint against Thornton for criminal trespass, a misdemeanor under Montana state law. (Doc. 57 at ¶ 3.)[1] According to that complaint, law enforcement was notified of the trespass at 890 Boon Road in Somers (the "Property") on September 29, 2021, and that the Property "is owned by Whitefish Credit Union." (Doc. 57 at 9.) Whitefish Credit Union provided law enforcement with a video of Thornton cutting the lock and

---

[1] Citations to the Statement of Undisputed Facts itself refer to the paragraph number within that document. Exhibits attached to the Statement of Undisputed Facts are cited by their page number.

entering the Property, and "Commander Buls [had] personally spoke[n] with THORNTON on August 26, 2021 and advised him he was not authorized to access the [Property]." (*Id.*) The relevant "witnesses" were listed as Commander Buls, Sergeant Stahlberg, Whitefish Credit Union, and Sean Frampton, a lawyer for Whitefish Credit Union. (*Id.*) According to Thornton, there was no basis to believe that that Whitefish Credit Union owned the Property, (*see generally id.* at 10–105), and it was Frampton reported the trespass, (*see id.* at 15, 24.) As it relates to the remaining defendants, Thornton alleges that Ahner initiated charges based "solely on Frampton's phone call" and refused to otherwise investigate the matter. (*Id.* at 23.) He alleges that Frechette "made false representations regarding [Whitefish Credit Union]'s ownership in direct contradiction of the established court record." (*Id.* at 24.) And he alleges that Noonan mispresented related court matters regarding Whitefish Credit Union's ownership and had direct contact with Frampton in fabricating a subsequent mortgage document. (*Id.*) On June 15, 2023, the criminal charge was dismissed without prejudice in the interest of justice. (*Id.* ¶ 13.) Further facts are discussed in the context of the substantive analysis below.

## II. Prosecutorial Immunity

"[A] prosecutor enjoys absolute immunity from [§] 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Imbler*, 424 U.S. at 420 (1976); *see also id.* at 430–31. This is so even if the prosecutor has violated a

4

plaintiff's constitutional rights, *Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003), or acted with malicious intent, *Genzler v. Longanbach*, 410 F.3d 630, 637 (9th Cir. 2005). Courts use a "functional approach" to "decide whether absolute immunity attaches to a particular kind of prosecutorial activity." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009); *see Burns v. Reed*, 500 U.S. 478, 486 (1991). The focus is therefore on "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988). "To qualify as advocacy, an act must be 'intimately associated with the judicial phase of the criminal process.'" *Genzler*, 410 F.3d at 637 (quoting *Imbler*, 424 U.S. at 430). Consistently, such immunity has been found "when a prosecutor prepares to initiate a judicial proceeding or appears in court to present evidence in support of a search warrant application." *Van de Kamp*, 555 U.S. at 343 (internal citations omitted). However, "[p]rosecutors are entitled to qualified immunity, rather than absolute immunity, when they perform administrative functions, or 'investigative functions normally performed by a detective or police officer.'" *Genzler*, 410 F.3d at 636 (quoting *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997)). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns*, 500 U.S. at 486. "[T]he Supreme Court has 'been quite sparing in its recognition of absolute immunity, and has refused to extend it any further than its justification would warrant.'" *Genzler*, 410

5

F.3d at 636–37 (alterations omitted) (quoting *Burns*, 500 U.S. at 487).

**A.    Ahner**

Thornton alleges that Ahner "[a]uthorized [the] use of false ownership claims in charging documents," (Doc 12 at ¶ 35), and was negligent by "[p]reparing, approving, or promulgating false or misleading documents," (*id.* ¶ 56(c)). Defendants have presented evidence that the decision to charge Thornton with criminal trespass was based on the report provided by Commander Buls with the Flathead County Sheriff's Office. (*See* Doc. 57 at 8.) While Thornton speculates that there are "disputed facts on whether Ahner approved false certifications despite knowledge of their falsity," (Doc. 59 at 8), there is no record evidence to support his claim. To the contrary, the very premise of Thornton's claim is that Ahner failed to engage in an independent investigation of the case before charges were brought. (*See id.* (explaining that Ahner ignored "Sheriff Heino's contrary findings and pending email communications").) That alleged failure means that Ahner stayed within his role as a prosecutor, and did not act as an investigator. He is therefore entitled to absolute prosecutorial immunity on Thornton's remaining claims.

**B.    Frechette**

Thornton alleges that Frechette was negligent by "[p]reparing, approving, or promulgating false or misleading documents." (Doc. 12 at ¶ 56(c).) Defendants

6

have presented evidence that Frechette's only involvement with the case was to draft the criminal complaint. (*See* Doc. 57 at 8–9.) Thornton has presented no evidence that Frechette stepped outside of her prosecutorial role in doing so or that the complaint was based on any information beyond that provided by the Sheriff's Department. To the contrary, he reasserts that she "use[d] false certifications." (Doc. 59 at 9.) As this Court previously explained, a prosecutor's mere reliance on false information—as opposed to the creation of or investigation into such information—is conduct protected by prosecutorial immunity. (*See* Doc. 38 at 8.)

## C.   Noonan

Finally, Thornton alleges that Noonan was negligent by "[p]reparing, approving, or promulgating false or misleading documents." (Doc. 12 at ¶ 56(c).) Unlike Ahner and Frechette, the evidence provided by Defendants indicates that Noonan did have direct contact with witnesses/parties in the case. "Between May 17, 2022 and June 6, 2022, Noonan or someone acting under his direction engaged in a phone conversation with Sean Frampton to discuss the impact that a recorded 'Satisfaction of Mortgage' may have on the criminal prosecution." (Doc. 57 at ¶ 6.) Following this call, Frampton, at the direction of Whitefish Credit Union, drafted a Corrected Release of Mortgage ("Corrected Release"). (*Id.* ¶ 7.) On June 6, 2022, James Kenyon of Whitefish Credit Union signed the Corrected Release, and it was recorded with the Flathead County Clerk and Recorder. (*Id.* ¶ 8.)

7

Noonan did not direct anyone at Whitefish Credit Union to draft or record the Corrected Release, nor did he participate in drafting or recording the Corrected Release. (*Id.* ¶ 9.)

Contrary to Thornton's characterization, these facts do not amount to independent investigative conduct beyond the prosecutorial sphere. Noonan's conversation with Frampton occurred after the charges were filed against Thornton and as part of Noonan's effort to prepare the case to proceed to trial. The record does not show or support the reasonable inference that Noonan directed or participated in the fabrication of evidence.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendants' motion for summary judgment (Doc. 55) is GRANTED. The jury trial set for June 15, 2026 and all deadlines are VACATED. The Clerk is directed to enter judgment in favor of Defendants and against Thornton.

IT IS FURTHER ORDERED that Defendants' motion in limine (Doc. 52) is DENIED as MOOT.

DATED this _11th_ day of May, 2026.

Donald W. Molloy, District Judge
United States District Court

8